DJ # 204-23-245

**IMPLEMENTATION PLAN: ACCESSIBILITY PROVISIONS OF AGREED ORDER**
*U.S. v. Cook County, Illinois, et al.*, Civ. No. 10 C 2946 (D. ND IL)

## I. INTRODUCTION

A. In May 2010, Cook County entered into an Agreed Order in *U.S. v. Cook County, Illinois, et al.*, Civ. No. 10 C 2946 (D. ND IL) which requires, *inter alia*, that Cook County Department of Corrections house inmates with disabilities in appropriate housing.

B. Specifically, Agreed Order ¶ 52(e) provides: "CCDOC shall house inmates with disabilities…in appropriate facilities…." ¶ 52(g) provides that "Cook County shall build out, remodel, or renovate clinical space as needed to provide appropriate housing for inmates with disabilities…."

C. In order to comply with these provisions of the Agreed Order and to address the violations noted in the United States Department of Justice letter of findings dated May 10, 2012, Cook County has taken, and will continue to take, the actions required under this Implementation Plan.

## II. BACKGROUND

A. In connection with implementation of the Agreed Order, at the request of the Cook County Department of Corrections (CCDOC), Chicago, Illinois, the Civil Rights Division of the United States Department of Justice (Department) conducted a review of the Cook County Jail to determine the jail's compliance with Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131 - 12134 (Title II), and the Department's implementing regulation, 28 C.F.R. Part 35. The review was also conducted under the authority of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), and the Department's implementing regulation, 28 C.F.R. Part 42, Subpart G.

B. On February 7-9, 2011, representatives from the Department toured the Cook County Jail with a consultant in the field of architecture.

C. On May 10, 2012, the Department issued a letter of findings which concluded that certain conditions relating to architectural issues, and access to services, programs, and activities by detainees with disabilities violated the ADA. The letter recommended modifications to remedy the identified violations consistent with the requirements of Title II of the ADA.

D. As defined below, CCDOC, Cermak, Facilities Management, and Capital Planning (collectively referred to as the "Agencies") represent that, following the

Exhibit 3 Page 1

February 2011 onsite tour and the Department's May 10, 2012 letter, many accessibility improvements have been undertaken to implement changes recommended by the Department. Specifically, the Agencies represent that they have significantly renovated portions of the Cook County Jail, and more renovations are planned. CCDOC has constructed an $86,256,405 medical division which has 66 wheelchair-accessible beds. CCDOC has hired a full-time ADA Compliance Officer who provides ADA training to all correctional staff, evaluates ADA issues on a daily basis, and has revised applicable policies and procedures for the CCDOC in accordance with the recommendation of the Department. CCDOC has also purchased shower chairs for inmates who need them, revised its inmate grievance process to promote more timely and thorough responses to ADA-related grievances, issued a comprehensive ADA policy, provided extensive training on that policy, and instituted procedures that promote more effective communication with inmates with hearing and vision disabilities. In addition, Capital Planning hired an ADA Compliance Officer who has been and will continue to be responsible for evaluating and addressing ADA issues.

E.    Cook County has been cooperative with the Department throughout this compliance review.

F.    The Implementation Plan shall not be construed as an admission of liability by the Agencies of any wrongdoing or liability.

## III. DEFINITIONS

A.    The term "Cermak" shall refer to Cermak Health Services, a division of the Cook County Health and Hospitals System, and its employees, agents, contractors, or successors who are responsible for the medical care of detainees confined at the Cook County Jail.

B.    The term "Cook County Department of Corrections" (CCDOC) shall refer to the Cook County Jail or Cook County Sheriff's Office employees, agents, contractors or successors, who are responsible for the custody and safety of detainees confined at the Cook County Jail.

C.    The term "Capital Planning" shall refer to the employees, agents, contractors or successors, who are wholly or partially responsible for the capital improvements, renovation, and construction of the facilities on the Cook County Jail compound.

D.    The term "Facilities Management" shall refer to the employees, agents, contractors, or successors, who are wholly or partially responsible for the maintenance of the facilities on the Cook County Jail compound.

Exhibit 3 Page 2

E.   The term "detainee with a disability" shall refer to any detainee who meets the definition of "disability" as set forth in the ADA, 42 U.S.C. §12102, and 28 C.F.R § 35.104.

F.   The term "new construction" shall mean each facility or part of a facility constructed by, on behalf of, or for the use of the Cook County Jail where the construction commenced after January 26, 1992. 28 C.F.R. § 35.151(a).

G.   The term "alterations" means a change to the Cook County Jail that affects or could affect the usability of the facility or any part thereof where the alteration was commenced after January 26, 1992. 28 C.F.R. § 35.151(b).

H.   The "effective date of this Implementation Plan" is the date of the last signature below.

## IV. COMPLIANCE MEASURES

A.   Architectural Issues

1.   Within two (2) years of the effective date of this Implementation Agreement, the Agencies shall modify the Cook County Jail facility as specified in Attachment A, using the 2010 Standards for Accessible Design, 28 C.F.R. § 35.104 ("2010 Standards"). Capital Planning has retained an Independent Licensed Architect, as set forth in Section VI, to monitor compliance with the provisions of Attachment A.

2.   For facilities constructed or altered on or after March 15, 2012, the CCDOC, Facilities Management, and Capital Planning shall provide a minimum of 3%, but no fewer than one, of the total number of cells in a facility to be accessible, and shall provide cells with mobility features for each classification level and special housing areas. 28 C.F.R. § 35.151(k).

3.   In the medical infirmary at least 10%, but no fewer than one, of the patient sleeping rooms must be accessible. 28 C.F.R. § 35.151(h); 2010 Standards §§ 223.2, 805.

B.   Services, Programs, and Activities

1.   To provide access to services, programs, and activities for detainees with disabilities at the Cook County Jail, CCDOC and Cermak, consistent with their respective responsibilities, shall:

a.   Ensure that detainees with disabilities are not housed in the designated medical infirmary unless they are actually receiving medical care or treatment. 28 C.F.R § 35.152(b)(2)(ii).

Exhibit 3 Page 3

    b.    Ensure equal access to showering for inmates who cannot ambulate. To that end, Cermak has provided shower chairs that are capable of being propelled by the user and pushed by an attendant. The chairs have padded seats, a minimum load capacity of 300 pounds, removable or swing clear armrests and foot rests, wheel locks, and designed with rust or corrosion resistant material designed for use in a shower. The CCDOC and Cermak will ensure that staff is trained to provide safe operation of the shower chair with inmates, including assisted transfer, as needed. 28 C.F.R. §§ 35.130, 35.130(b)(7).

    c.    Ensure that wheelchairs and other adaptive equipment provided to detainees with disabilities at the Cook County Jail are routinely cleaned, repaired, maintained, and generally kept in safe, operable condition.

    d.    Ensure that medically necessary equipment is provided as required to meet the needs of detainees with disabilities. 28 C.F.R. § 35.130.

C.    Effective Communication

    1.    The CCDOC and Cermak, consistent with their respective responsibilities, shall ensure that communications with detainees with disabilities are as effective as communications with other detainees. 28 C.F.R. §§ 35.130, 35.160. To that end, the CCDOC has adopted and is implementing, with the Department's approval, a General Order entitled "POLICY OF NONDISCRIMINATION ON THE BASIS OF DISABILITY" (General Order). Cermak will implement effective communication policies consistent with the General Order within three months of the effective date of the Implementation Plan. The General Order includes provisions and procedures to ensure effective communication with detainees at the Cook County Jail who are deaf or are hard of hearing or have a speech disability. The General Order requires, *inter alia*:

    a.    The provision of auxiliary aids and services on an as-needed basis, 24 hours a day, seven days a week.

    b.    Qualified sign language interpreters and interpretation services for assistance with critical communications. Critical communications may include, but are not limited to, communications at intake, orientation, counseling, educational and vocational programming, medical and mental health services, religious services, due process hearings, including disciplinary hearings, pre-release instructions or when another service is unavailable or insufficient.

    c.    Access to TTY/TDD devices and for a minimum of three times the

Exhibit 3 Page 4

length of time permitted for voice communications.

    d.    Access to Telecommunications Relay Service, Illinois Relay Service, or Video Relay Service as needed to connect persons with speech or hearing disabilities with others.

    e.    If any inmate or detainee who is deaf, hard of hearing, or who has a speech disability prefers a different method of communication, such as a captioned telephone or computer, the Cook County Jail will make reasonable efforts to provide the communication device requested.

2.    The General Order also includes written policies and procedures to ensure effective communication with detainees at the Cook County Jail who are blind or have low vision. These include policies and procedures ensuring:

    a.    Access to auxiliary aids including, but not limited to, Braille reading material, large print material, screen reader devices, audio books and other audio players. Verbal updates regarding schedules and activities.

    b.    Assistance in moving about the facility.

3.    The General Order provides that, consistent with legitimate security concerns, detainees who are deaf or hard of hearing are cuffed or restrained in a manner that permits effective communication for such detainees (*e.g.*, cuffing detainees in the front so they can sign). Similarly, the General Order provides that detainees who are blind or have low vision are cuffed or restrained in a manner that permits safe mobility for such detainees, including the use of a cane or sighted guide. 28 C.F.R. §§ 35.130, 35.160.

D.    Training

1.    The General Order requires ADA training of designated current and new employees. The County Sheriff's Training Institute shall maintain a list that includes the date of the training and the name and job titles of all employees who have received ADA training. At a minimum, training includes instruction on how to ensure equal access to inmates with disabilities to all Cook County Jail programs, services and activities; instruction on the use of auxiliary aids and services available for all types of disabilities; and steps to be taken to ensure effective communication in both routine and unplanned activities as provided in the General Order. Cermak will provide this ADA training to designated current and new employees and maintain a list that includes the date of the training and the names and job titles of all the employees who have received ADA training.

Exhibit 3 Page 5

2.  For all training required by the General Order, twice yearly, the CCDOC and Cermak shall submit written reports to the Department that document the date and time of the training and the persons who attended.

## V.    ADA COMPLIANCE OFFICER AND GRIEVANCE PROCEDURE

A.  In February 2014, the CCDOC hired an ADA Compliance Officer with responsibilities for the Cook County Jail. The County shall provide the ADA Compliance Officer with sufficient authority and resources to perform the tasks required by this Implementation Plan, including coordinating requests for accommodations from detainees with disabilities. 28 C.F.R. § 35.107. The ADA Compliance Officer shall maintain records of requests for auxiliary aids and services, and records of the auxiliary aids and services provided, with or without a specific inmate request. The ADA Coordinator shall maintain records of detainee ADA complaints and their resolution. 28 C.F.R. § 35.107.

## VI.   INDEPENDENT LICENSED ARCHITECT

A.  Capital Planning has retained LCM Architects (LCM) as an Independent Licensed Architect (ILA) knowledgeable about the architectural accessibility requirements of the ADA and Section 504. LCM, paid by the County without regard to outcome, has been approved by the Department. LCM must act independently to certify whether remediation of the violations identified in Attachment A during the term of this Implementation Plan comply with the applicable standard pursuant to 28 C.F.R. § 35.151(c) and the Appendix to 28 C.F.R. § 35.151(c).

B.  In issuing certifications pursuant to this Implementation Plan, LCM will impartially prepare reports with photographs identifying that the violation has been remediated and will use the certification form at Attachment B. LCM will be considered a neutral inspector for purposes of issuing certifications of compliance and will be reasonably available to the Department to discuss findings in the reports, photographs, and certifications. The Department may also, in its discretion, provide technical assistance to LCM throughout the term of this Implementation Plan. Upon request by the Department, the County will provide prior notice to the Department of inspections by LCM to allow representatives of the Department to be present.

D.  The County will submit LCM certifications along with its reporting requirements as set forth in this Implementation Plan.

## VII.  MONITORING

A.  The CCDOC, Cermak, and Capital Planning agree that, within six (6) months of the effective date of this Implementation Plan, the CCDOC, Cermak, and Capital Planning will provide the Department with a single and comprehensive written

Exhibit 3 Page 6

status report, including any supporting documentation, delineating all steps taken during the reporting period to comply with each substantive provision of this Implementation Plan. Thereafter, for the duration of this Implementation Plan, the CCDOC, Cermak, and Capital Planning will send a status report every six months to the Department. All reports shall be sent to:

> Disability Rights Section
> Civil Rights Division
> U.S. Department of Justice
> 1425 New York Ave., NW
> Washington, DC 20005
> [DJ # 204-23-245]

B.    As stated in Sec. VII ¶ A, CCDOC, Cermak, and Capital Planning will provide this semi-annual written status report and LCM certifications to the Corrections Monitor appointed by the United States District Court for the Northern District of Illinois to monitor compliance with the Agreed Order in the matter of *United States v. Cook County*, Civ. No. 10-C-2946 (entered May 26, 2010) (ECF No. 13). The written status report, LCM certifications, and any response to the reports by the Department will inform the Corrections Monitor's determination of compliance with paragraphs 52.e-g of the Agreed Order.

C.    In order to monitor compliance with this Implementation Plan, the Department shall have full and complete access to the Cook County Jail, relevant jail records, relevant detainee records, medical records, staff, and detainees. The Department shall have the right to conduct confidential interviews with detainees.

## VIII.  IMPLEMENTATION AND TERMINATION

A.    The Agencies shall ensure that all relevant current and future staff, including contractors, understand and implement the terms of this Implementation Plan.

B.    The Agencies shall implement all reforms necessary to effectuate this Implementation Plan and shall revise any policy, procedure, or practice, as necessary, to effectuate the terms of this Implementation Plan.

C.    The Agencies agree that they shall not retaliate against any person because that person filed or may file a complaint, provided information or assistance, or participated in any other manner in an investigation or proceeding relating to this Implementation Plan.

D.    This Implementation Plan shall remain in effect for two (2) years from the effective date of the Implementation Plan.

Exhibit 3 Page 7

E.  The Agencies shall maintain sufficient records to document compliance with all of the requirements of this Implementation Plan. During the period of this Implementation Plan, the Agencies shall maintain any and all records required by or developed under this Implementation Plan.

F.  If the Agencies fail to implement the terms of this Implementation Plan within two (2) years of the effective date, the Department reserves the right to institute a civil action to enforce the ADA and obtain remedies for the violations.

G.  This Implementation Plan shall be binding on all successors, assignees, employees, and agents working for or on behalf of the Agencies..

I.  Each of the parties to this Implementation Plan shall bear its own costs and expenses associated with, or arising from, its performance of obligations under this Implementation Plan.

J.  The parties may jointly agree, in writing, to modify this Implementation Plan.

**AGREED AND CONSENTED TO:**

For Cook County, Illinois:

Cara Smith
Director of the Cook County Dept. of Corrections
2650 S. California

For Cermak:

John Raba
Director of Cermak Health Services
2650 S. California,

Exhibit 3 Page 8

For Capital Planning:

James Ro
Project Director
Office of Capital Planning & Policy

Michael Gumm, AIA, LEED AP
ADA Compliance Project Director
Office of Capital Planning & Policy

Dated: _12/16/2014_

For the United States:

ZACHERY T. FARDON
United States Attorney
Northern District of Illinois,
Eastern Division
219 S. Dearborn St., 5th Floor
Chicago, IL 60604

VANITA GUPTA
Acting Assistant Attorney General
EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND, Chief
SHEILA M. FORAN
Special Legal Counsel
JANA ERICKSON, Deputy Chief

MELLIE H. NELSON
Supervisory Trial Attorney
Disability Rights Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington D.C. 20530
(202) 616-3198

Exhibit 3 Page 9