Transcript of the Testimony of
**SABRINA RIVERO-CANCHOLA**

**Date:** June 5, 2017

**Case:** POLLETTA VS. DART

TOOMEY REPORTING
312-853-0648
toomeyrep@sbcglobal.net
www.toomeyreporting.com

---

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
NICHOLAS POLLETTA,          )
                            )
          Plaintiff,        )
                            )
     vs.                    ) No. 16 C 9492
                            )
THOMAS DART SHERIFF OF      )
COOK COUNTY, and COOK       )
COUNTY, ILLINOIS,           )
                            )
          Defendants.       )
```

   The deposition of SABRINA RIVERO-CANCHOLA, called for examination pursuant to the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before EMILY TOMALA, CSR, a notary public within and for the County of Cook and State of Illinois, at 10150 South Western Avenue, Chicago, Illinois, on the 5th day of June, 2017, at the hour of 10:00 o'clock a.m.

TOOMEY REPORTING
312-853-0648

---

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 2

```
 1    APPEARANCES:
 2        THOMAS G. MORRISSEY, LTD.
 3        BY:  MR. THOMAS G. MORRISSEY
             MR. PATRICK W. MORRISSEY
 4        10150 South Western Avenue
          Chicago, Illinois  60643
 5        (773) 233-7900
          tgmassistant@gmail.com
 6
              Representing the Plaintiff;
 7
 8        STATE'S ATTORNEY OF COOK COUNTY, ILLINOIS
 9        BY:  MR. JAMES E. NICHOLS
          50 West Washington Street
10        Room 500
          Chicago, Illinois  60602
11        (312) 603-3474
          james.nichols2@cookcountyil.gov
12
              Representing Sheriff of Cook County;
13
14        STATE'S ATTORNEY OF COOK COUNTY, ILLINOIS
15        BY:  MR. DAVID R. CONDRON
          500 Richard J. Daley Center
16        Chicago, Illinois  60602
          (312) 603-3368
17        David.Condron@cookcountyil.gov
18            Representing Cook County, Illinois.
19
20
21
22
23
24
```

TOOMEY REPORTING
312-853-0648

---

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 3

```
 1             I N D E X
      WITNESS                         EXAMINATION
 2
      SABRINA RIVERO-CANCHOLA
 3
        By Mr. Morrissey:              4-186
 4
 5
 6
 7
 8
 9
10
11           E X H I B I T S
      NUMBER                       MARKED FOR ID
12
      Plaintiff's Exhibit Nos. 1-7        4
13
14
15
16
17
18
19
20
21
22
23
24
```

TOOMEY REPORTING
312-853-0648

Exhibit 11 Page 1

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 4

1 (Whereupon, Plaintiff's
2 Exhibit Nos. 1-7 were marked
3 for identification.)
4 SABRINA RIVERO-CANCHOLA,
5 having been first duly sworn, was examined and
6 testified as follows:
7 DIRECT EXAMINATION
8 BY MR. MORRISSEY:
9 Q. Would you state your full name for the
10 record?
11 **A. Sabrina Rivero-Canchola.**
12 Q. Spell your last name, please.
13 **A. R-i-v-e-r-o, hyphen, C-a-n-c-h-o-l-a.**
14 MR. NICHOLS: Before we get into the
15 deposition, I just want to make something
16 clear for the record. The witness and the
17 counsel for Cook County and Sheriff Dart
18 arrived here at 10:00 a.m. this morning for
19 the deposition which was noticed to begin at
20 10:00 a.m. However, plaintiff's counsel was
21 not prepared to commence the deposition at
22 10:00 a.m., so we are commencing the
23 deposition at approximately 10:42 a.m.
24 MR. MORRISSEY: And just for the

TOOMEY REPORTING
312-853-0648

---

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 5

1 record, plaintiff about 6 weeks ago noticed
2 up Matthew Burke to be deposed. This matter
3 was addressed by Judge Shadur on the status.
4 Defense counsel asked Judge Shadur if they
5 could substitute Ms. Canchola in place of
6 Matt Burke, and the judge provisionally
7 allowed that based upon certain
8 representation by defense counsel at status.
9 We reserve the right to depose Matt Burke if
10 necessary. And, additionally, Judge Shadur
11 made it quite clear that to the extent that
12 Ms. Canchola cannot speak for the sheriff's
13 office, we certainly reserve the right to
14 depose Mr. Burke who is apparently the chief
15 of staff of the sheriff's office.
16 BY MR. MORRISSEY:
17 Q. Will you please tell us, Ms. Canchola,
18 what, if anything, you reviewed prior to today's
19 deposition in regards to this litigation?
20 **A. I reviewed the documents that were**
21 **tendered to your office.**
22 Q. What documents were those?
23 **A. All the ones sitting right here on the**
24 **table, Mr. Morrissey, so grievances, orders, my**

TOOMEY REPORTING
312-853-0648

---

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 6

1 **emails. Everything that had a Bates stamp, I**
2 **reviewed.**
3 Q. Did you also review Mr. Polletta's
4 deposition transcript?
5 **A. No, I did not.**
6 Q. What are your responsibilities with the
7 sheriff's office?
8 **A. My responsibility is to make sure the**
9 **sheriff's office complies with the Americans**
10 **With Disabilities Act.**
11 Q. Is there an interagency accommodation
12 plan committee at the Cook County Department of
13 Corrections?
14 **A. There is.**
15 Q. Who currently is on that committee?
16 **A. The makeup of the members depends on**
17 **the issue that will be discussed.**
18 Q. What different -- Strike that.
19 Have there been meetings in the last
20 6 months of the interagency accommodation plan
21 committee?
22 **A. There have been.**
23 Q. How many meetings in the last 6 months
24 have there been?

TOOMEY REPORTING
312-853-0648

---

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 7

1 **A. I don't recall.**
2 Q. Are there minutes kept of those
3 meetings?
4 **A. There are not.**
5 Q. In the last 6 months, what issues have
6 been discussed at the interagency accommodation
7 plan committee meetings?
8 MR. NICHOLS: Objection only to the
9 extent that the question may call for the
10 witness to speculate. You can answer if you
11 have any personal knowledge.
12 BY THE WITNESS:
13 **A. Any ADA issues that we were**
14 **experiencing along with transgender issues.**
15 BY MR. MORRISSEY:
16 Q. In the last 6 months, you mentioned
17 that there have been meetings of this committee.
18 Who has attended those meetings?
19 **A. A variety of different people.**
20 Q. Specifically who?
21 **A. Specifically people from Cermak and**
22 **people from the Department of Corrections.**
23 Q. What members of the Department of
24 Corrections attended meetings of this

TOOMEY REPORTING
312-853-0648

Exhibit 11 Page 2

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 32

```
 1  BY THE WITNESS:
 2      A.   As to what specifically?
 3  BY MR. MORRISSEY:
 4      Q.   When a person enters the jail with a
 5  disability, do you know whether or not the
 6  medical staff places medical alerts in the jail
 7  management system?
 8      A.   I know that a medical staff member
 9  places the alerts.  I do not know at what stage
10  that occurs.
11      Q.   As the ADA coordinator, what, if any,
12  role do you play when a person comes into the
13  jail with a medical alert that he or she has a
14  disability?
15           MR. NICHOLS:  Objection to the extent
16      it mischaracterizes the witness' previous
17      testimony.  You can answer to the extent you
18      know.
19  BY THE WITNESS:
20      A.   With regard to what?
21  BY MR. MORRISSEY:
22      Q.   Assuming a person comes into the Cook
23  County Department of Corrections and is deaf, do
24  you receive any notification of that as the ADA
```

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 33

```
 1  coordinator?
 2           MR. NICHOLS:  Objection, relevance.
 3  BY THE WITNESS:
 4      A.   Define notification.
 5  BY MR. MORRISSEY:
 6      Q.   Do you have any responsibility if a
 7  person comes into the jail and a medical person
 8  at Cermak puts into the system the person has a
 9  disability, namely, let's say, blindness or
10  deafness?
11           MR. NICHOLS:  Objection, form,
12      objection, relevance.
13  BY THE WITNESS:
14      A.   I run a query to find out what inmates
15  recently enter the jail with certain alerts.
16  BY MR. MORRISSEY:
17      Q.   And that's a query in the jail
18  management system?
19      A.   Correct.
20      Q.   How frequently as the ADA coordinator
21  do you run such a query?
22      A.   At a minimum, every day.
23      Q.   What type of query do you run in the
24  jail management system to determine whether or
```

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 34

```
 1  not there are new admitees at the jail that have
 2  disabilities?
 3      A.   What type of query?
 4      Q.   Yeah.
 5      A.   As in?
 6      Q.   What do you actually do?
 7      A.   I hit a button.
 8      Q.   And what does that button pull up?
 9      A.   It pulls up a list of inmates that are
10  deaf, blind, hard of hearing, have a wheelchair,
11  wheelchair for long distance only.
12      Q.   Where is your office at the Cook County
13  Jail?
14      A.   It's in Division 5.
15      Q.   Is that on the second floor?
16      A.   Yes, it is.
17      Q.   What do you do on a daily basis when
18  you run an inquiry to determine if there are any
19  new admitees that are deaf, blind, wheelchair,
20  or wheelchair long distance?
21      A.   I meet with all new detainees with
22  those alerts.
23      Q.   Do you make any entry in any type of
24  spreadsheet or log to reflect that a person
```

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 35

```
 1  who's deaf has been admitted to the jail?
 2           MR. NICHOLS:  Objection, relevance.
 3  BY THE WITNESS:
 4      A.   I keep a log of detainees that fit into
 5  those categories, yes.
 6  BY MR. MORRISSEY:
 7      Q.   What do you call that log?
 8           MR. NICHOLS:  Objection, relevance.
 9           MR. CONDRON:  I'll join.
10  BY THE WITNESS:
11      A.   Detainee list.
12  BY MR. MORRISSEY:
13      Q.   Is there any type of computer program
14  that you place those names in?
15           MR. NICHOLS:  Objection, relevance.
16  BY THE WITNESS:
17      A.   I'm pretty sure you know the answer to
18  these questions, Mr. Morrissey, but, yes, it's
19  an Excel program.
20  BY MR. MORRISSEY:
21      Q.   And in that Excel program, it contains
22  a list only of people that are deaf, blind,
23  wheelchair, or wheelchair long distance; is that
24  correct?
```

TOOMEY REPORTING
312-853-0648

Exhibit 11 Page 9

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 36

1  MR. NICHOLS: Objection, relevance.
2  BY THE WITNESS:
3   A.  I don't recall.
4  BY MR. MORRISSEY:
5   Q.  In addition to -- are there any other
6  categories of prisoners that you list in this
7  log in an Excel program?
8   A.  At times, I've listed prosthetic
9  devices.
10  Q.  What do you call this log or Excel
11 program?
12  MR. NICHOLS: Objection, relevance, and
13   asked and answered.
14 BY THE WITNESS:
15  A.  As I previously stated, it's called
16 detainee list.
17 BY MR. MORRISSEY:
18  Q.  What type of information is in the
19 detainee list?
20  MR. NICHOLS: Objection, relevance.
21 BY THE WITNESS:
22  A.  Name of detainee, booking number,
23 security classification, housing, court minutes,
24 next court date.

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 37

1 BY MR. MORRISSEY:
2   Q.  Why do you keep information in regards
3 to next court date for these inmates?
4   MR. NICHOLS: Objection, relevance.
5 BY THE WITNESS:
6   A.  So that we can notify the respective
7 courthouses that they have a detainee coming
8 that may have an auxiliary aid or a need for
9 accommodation.
10 BY MR. MORRISSEY:
11  Q.  I'm showing you what's been marked as
12 Plaintiff's Exhibit No. 4. It's a group
13 exhibit. Before we get to Exhibit No. 4, do you
14 know a gentleman by the name of Mr. Polletta?
15  A.  I do.
16  Q.  When did you first make contact with
17 Mr. Polletta, if you recall?
18  A.  I don't recall, quite some time ago.
19  Q.  Why did you have contact with
20 Mr. Polletta?
21  A.  For the same reason I have contact with
22 all detainees, it's my job.
23  Q.  On how many occasions have you met with
24 Mr. Polletta?

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 38

1   A.  I don't recall.
2   Q.  When Mr. Polletta first came into the
3 Cook County Jail, did he have a medical alert?
4   A.  I don't know. I wasn't there when he
5 first came in.
6   Q.  Looking at Group Exhibit No. 4, the
7 first sheet is a list of wheelchair-accessible
8 beds at CCDOC. Is this a list that you
9 prepared?
10  A.  No, it's not a list that I prepared.
11  Q.  Do you know who prepared it?
12  A.  I do not.
13  Q.  The second page is inmate alerts, and
14 the name of the inmate is Nicholas Polletta. Do
15 you see that?
16  MR. NICHOLS: I'm just going to ask
17   that the witness be given some time to
18   review this document before you proceed.
19  MR. MORRISSEY: I'm just going through
20   Exhibit No. 4.
21 BY MR. MORRISSEY:
22  Q.  Is that what you consider an inmate
23 alert?
24  A.  There are different types of inmate

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 39

1 alerts. There are some listed on this page,
2 yes.
3   Q.  And the third page looks like various
4 court dates for Mr. Polletta, correct?
5   A.  Correct.
6   Q.  As an ADA coordinator, is this the type
7 of information that you maintain in your Excel
8 program?
9   MR. NICHOLS: Do you understand that
10   question?
11  THE WITNESS: Yes.
12 BY THE WITNESS:
13  A.  Some of it.
14 BY MR. MORRISSEY:
15  Q.  And the fourth page is bed assignment.
16 Do you receive information in regards to bed
17 assignment for certain disabled prisoners?
18  MR. NICHOLS: Objection, vague,
19   objection, relevance.
20 BY THE WITNESS:
21  A.  Do I receive information? No. I can
22 query that data.
23
24

TOOMEY REPORTING
312-853-0648

Exhibit 11 Page 10

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 40

```
 1  BY MR. MORRISSEY:
 2     Q.   And you would query it in the jail
 3  management system?
 4          MR. NICHOLS:  Same objections.  You can
 5     answer.
 6  BY THE WITNESS:
 7     A.   Correct.
 8  BY MR. MORRISSEY:
 9     Q.   Now, looking at the second page of
10  Group Exhibit No. 4 which has been Bates stamped
11  by the sheriff 0011, does this reflect at some
12  point in time there was a medical alert for
13  Mr. Polletta to have a wheelchair?
14     A.   Does this sheet reflect that?  Yes.
15     Q.   And that's on May 14, 2015?
16     A.   Yes.
17     Q.   And then he had a medical alert for a
18  wheelchair through April of 2016?
19     A.   Through April 2016?  This alert says
20  May 14, 2015, through August 6, 2015, and
21  August 12, 2015, through September 9, 2015.
22     Q.   And after August 9, 2015, did he also
23  have a medical alert for some type of assistive
24  device to walk?
```

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 41

```
 1     A.   Yes, a walker as you can see from this
 2  document, Mr. Morrissey.
 3     Q.   So the walker is specified on
 4  December 28; is that correct?  I'm sorry.
 5  September 15, 2015, is the first time he
 6  received a walker?
 7     A.   Is that the first time the alert was
 8  entered?  Yes.
 9     Q.   And then it was entered again
10  December 28, 2015?
11     A.   Correct.  The document speaks for
12  itself.
13     Q.   And on December 29, 2016, he received
14  an alert for a cane long distance only, correct?
15     A.   Correct.
16     Q.   These alerts for a wheelchair, walker,
17  or cane long distance to your understanding are
18  made by the medical personnel at Cermak?
19     A.   Correct.  That's why they're called
20  medical alerts.
21     Q.   As an ADA coordinator, you have access
22  to this information?
23     A.   As I previously stated, yes, I do.
24     Q.   If Mr. Polletta came into the jail on
```

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 42

```
 1  December 29, 2016, as a new prisoner and had an
 2  alert for a cane long distance only, you
 3  wouldn't include that in your detainee list in
 4  the Excel program?
 5          MR. NICHOLS:  Objection.  The question
 6     calls for the witness to speculate,
 7     objection, form to the extent it poses an
 8     incomplete hypothetical.  You can answer to
 9     the extent that you know.
10  BY THE WITNESS:
11     A.   Hypothetically I don't know.
12  BY MR. MORRISSEY:
13     Q.   As a matter of practice, your Excel
14  program detainee list for new inmates who have
15  an alert for a cane, crutch, or walker normally
16  does not include those type of inmates?
17          MR. NICHOLS:  Objection, vague.
18  BY THE WITNESS:
19     A.   Normally it doesn't, but that doesn't
20  mean I can't get that information just like
21  everyone else can.
22  BY MR. MORRISSEY:
23     Q.   During that period of time when
24  Mr. Polletta -- in the summer of 2015, was
```

TOOMEY REPORTING
312-853-0648

SABRINA RIVERO-CANCHOLA
June 5, 2017

Page 43

```
 1  Mr. Polletta transferred at some point to the
 2  RTU?
 3          MR. NICHOLS:  Objection to the extent
 4     that the question calls for the witness to
 5     speculate.
 6          MR. MORRISSEY:  I'm asking her to look
 7     at Exhibit No. 4.
 8  BY MR. MORRISSEY:
 9     Q.   Does that reflect that in the summer of
10  2014, that Mr. Polletta was assigned on June 4,
11  2015, to Division 08-2A-81?
12          MR. NICHOLS:  Objection, form,
13     specifically the question lists 2 different
14     time frames.  Can you rephrase the question,
15     Tom?
16          MR. MORRISSEY:  Mr. Nichols, we're
17     trying to move forward as quickly as
18     possible.
19          THE WITNESS:  You initially said 2014,
20     and then you changed your question.
21          MR. MORRISSEY:  I'm sorry.
22  BY MR. MORRISSEY:
23     Q.   June 11, 2015, was Mr. Polletta
24  assigned to 08-3F-D4-26?
```

TOOMEY REPORTING
312-853-0648

Exhibit 11 Page 11