IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Eugene Westmoreland, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| -vs- ) | No. 23-cv-1851 |
| ) | |
| Thomas Dart, Sheriff of Cook ) | Judge Tharp, Jr. |
| County, and Cook County, Illinois, ) | |
| ) | |
| ) | |
| *Defendants.* ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Eugene Westmoreland seeks to represent a class of wheelchair-users who allege two ramps in the lower level of Cook County Jail's Residential Treatment Unit (RTU) violate the structural standards set by the Americans with Disabilities Act (ADA).

Defendant Dart admits the RTU opened in 2013 and, at this time, was required to comply with the ADA structural standards. Dkt. 14, Sheriff Answer ¶ 8. Defendant also admits this location houses most wheelchair-users. *Id.*

The applicable federal structural standards require a ramp to have handrails if the rise is greater than six inches and that if a run is greater than 30 inches, it must have an "intermediate landing" that "must be at least 60" wide clear and 60" long clear." U.S. Department of Justice, 2010 ADA Standards for Accessible Design, at §405.7, §405.8, §505. Neither

-1-

ramp complies: one ramp has a rise greater than six inches but lacks handrails and the other ramp does not have a landing that complies with the federal accessibility standards. *See* Dkt. 1, Complaint ¶ 9 (alleging one ramp does not have handrails and another ramp does not have an ADA compliant landing area). Indeed, Cook County avers it is "in the process of hiring an ADA consultant to inspect the area." Exhibit 7, Cook County Amended Interrogatory Answers ¶¶ 3-5.

While defendants do not challenge the adequacy of plaintiff Westmoreland or his counsel under Rule 23(a)(4), every other element is vigorously contested. *See* Dkt. 27, Response at 5. The issue in this litigation concerns one common question; namely, whether the ramps comply with the federal accessibility standards. Plaintiff "proposes a class that will win if the Standards apply (and were violated, to detainees' detriment) and otherwise will lose." *Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020). At this stage of the litigation, defendants' claim the litigation turns on an individual review of each class member's ability to traverse the ramps is inconsistent with the holding in *Bennett v. Dart*, 53 F.4th 419 (7th Cir. 2022). Plaintiff requests that the Court reject defendants' arguments for the following reasons.

   I.   **The class is ascertainable**

Defendants argue plaintiff fails to identify an ascertainable class since the proposed class "assumes that every person in custody with a

wheelchair used the RTU ramps on the same basis as Plaintiff" and that plaintiff cannot identify all wheelchair-users who used the RTU ramps. Dkt. 27, Response at 19-20. Plaintiff requests that that the Court reject this argument for the following reasons.

The defendants are able to identify all wheelchair users at Cook County Jail. Indeed, the Sheriff and County are currently litigating *Walker v. Dart*, 20-cv-261, a class certified under Rule 23(b)(2) and (b)(3). *Walker v. Dart*, 2021 WL 809765 (N.D. Ill. 2021); Exhibit 1, *Walker v. Dart*, 20-cv-261, Dkt. 159 (order certifying Rule 23(b)(3) class). In *Walker,* the plaintiff class is comprised of wheelchair-users who have moved up and down a ramp leading the Cermak Infirmary at the Cook County Jail. *Id.* And in *Walker*, the defendants did not challenge ascertainability. *Walker*, 2021 WL 809765, fn. 2. After the district court allowed the case to proceed under Rule 23(b)(3), defendants produced a computer spreadsheet identifying approximately 500 detainees who moved up and down the Cermak ramp in a wheelchair. *See* Exhibit 2, Unopposed Motion to Send Notice in *Walker*.

In *Lacy v. Cook County*, the Seventh Circuit affirmed the certification of a class of wheelchair-users who alleged certain Cook County Courthouse were not accessible. 897 F.3d 847, 869 (7th Cir. 2018). The *Lacy* class, defined as "[a]ll Cook County Jail detainees who have been assigned and currently use a wheelchair," *Lacy v. Dart*, 2015 WL 1995576,

at *7 (N.D. Ill. 2015) (Gettleman, J.), is substantially identical to the *Walker* class and the proposed class here. Defendants' objection that the class is not ascertainable is without merit.

## II. The proposed class satisfies Rule 23(a)(1)

Defendants argue plaintiff cannot satisfy the numerosity requirement of Rule 23(a)(1) because the "proposed class lacks concrete facts or other qualifying metrics, making it inherently speculative" and "fails to identify a particular group, harmed during a particular time, and harmed in a particular way." Dkt. 27, Response at 11. The Court should reject these arguments for the following reason.

First, the Sheriff admits the RTU houses most wheelchair-users. Dkt. 14, Sheriff's Answer ¶ 8. The Sheriff answered discovery identifying 25 wheelchair-users were housed in RTU on May 30, 2023. Exhibit 3, Sheriff's Amended Interrogatory Answers ¶¶ 3-4 (acknowledge there were 16 individuals with an "alert" for a wheelchair and 9 individuals with a "wheelchair long distance alert"). It is reasonable to infer there are hundreds of putative class members in this case. As explained above, the *Walker* case involves more than 500 putative class members and provides persuasive support that the size of this putative class is about 300 individuals.

Importantly, defendants have "not suggested how many of these individuals could not have been injured under the ADA, let alone shown 'a

-4-

great many' who evaded harm." *Lacy*, 897 F.3d at 864. As the Court of Appeals held in *Lacy* when reviewing an allegation of structural barriers for wheelchair-using inmates to navigate non-compliant ramps and inaccessible toilets during court appearances in Cook County, "the class definition is well tailored to reach those individuals who would have suffered the deprivations alleged here." *Id.* For many of the same reasons, the defendants' objection to numerosity is without merit.

### III. Commonality and typicality

Defendants contend plaintiff is unable to demonstrate commonality and typicality as required by Rule 23(a). *See* Dkt. 27, Response at 5-10. The Court should reject these arguments for nearly the same reasons articulated by the district court in *Walker*. 2021 WL 809765, at *3-5.

As an initial matter, defendants are incorrect that plaintiff filed only one grievance about movement up and down a ramp dated December 12, 2022. Dkt. 27, Response at 9; Dkt. 27-3 at 1-3, Grievance Marked Control # 2022x18190. On August 13, 2021, the Sheriff collected a grievance from plaintiff complaining of moving up and down several ramps from the RTU to the courthouse on August 10, 2021. Exhibit 4, Grievance assigned control # 2021 10912 (produced by defense counsel as Westmoreland 000029-00030). Plaintiff complained of difficulty moving up and down these ramps and injuries, including burning hands, fatigue, and body aches. *Id.* Additionally, the Sheriff collected another grievance from plaintiff

on December 20, 2022, where plaintiff complains of navigating "the long steap [sic] non compliance RTU ramp" on December 16, 2022, and that movement caused his "hands (right & left) to burn, upper body pain . . ." Exhibit 5 at 1, Grievance assigned control # NC2204949 (produced by defense counsel as Westmoreland 00073). The Sheriff marked this as a non-compliant grievance on grounds plaintiff submitted a repeat submission of a grievance collected within the last 15 calendar days. *Id.* at 2 (produced by defense counsel as Westmoreland 00074). Defendants' argument plaintiff cannot satisfy typicality due to ambiguity with grievances or that plaintiff's grievances did not identify, with specificity the RTU ramps, is baseless. *See* Dkt. 27, Response at 9; Dkt. 46, Minute entry (defendants' motion for more definite statement is "baseless").

Commonality and typicality are satisfied here because the issue to be resolved on a class-wide basis is whether the ramps comply with the structural standards. For nearly identical reasons explained in *Walker*, "the common questions of law or fact are capable of class-wide resolution." *Walker*, 2021 WL 809765, at *5. In conclusion, plaintiff requests that the Court reject defendants' challenge to commonality and typicality.

### IV. Rule 23(b)(2) elements satisfied

Defendants argue plaintiff is unable to satisfy the requirements of Rule 23(b)(2). *See* Dkt. 27, Response at 12-15. Defendants support this position by attempting to distinguish *Walker* as involving "a ramp in another

Division – Cermak Hospital – without any landing areas for rest (in violation of the ADA) which was so long and steep that detainees were burning their hands on their breaks of their wheelchairs during attempts at self-traversal." Dkt. 27. Response at 13. This position, however, misconstrues the *Walker* allegations since the plaintiff class also alleged the Cermak ramp violated the ADA structural standards because it lacked handrails. *Walker*, 2021 WL 809765, at *2. After the *Walker* class moved for summary judgment seeking injunctive relief, the district court ordered defendant Cook County to install handrails that comply with the ADA. Exhibit 6, *Walker v. Dart*, 20-cv-261, Dkt. 120.

Here, the putative class seeks nearly the same relief as the *Walker* plaintiff class; to bring the two RTU ramps into compliance with the ADA structural standards. All proposed class members used a wheelchair to navigate the RTU ramps "and any variation in ability and experience beyond that does not undermine the conclusion that injunctive relief would address the complaint of all class members in this case." *Walker*, 2021 WL 809765, at *6. "The proposed class members have a common injury – inability to safely use the [] ramp[s] – that would be addressed by the same remedy – bringing the [] ramp[s] into compliance." *Id.* The proposed class therefore satisfied the requirements of Rule 23(b)(2).

**V. Predominance**

Defendants aver plaintiff is unable to satisfy the predominance element of Rule 23(b)(3) due to a need for "an in-depth analysis of individual issues" since the putative class "did not receive the same injuries, nor experience the same incident." Dkt. 27, Response at 15-16. This argument should be rejected for the following reasons.

First, the Seventh Circuit in *Lacy* overruled a similar argument regarding any "need to prove on an individual basis whether each class member is actually disabled under the ADA" because some impairments, such as a mobility impairment requiring the use of a wheelchair "as a factual matter, [will] virtually always be found to impose a substantial limitation on a major life activity." *Lacy*, 897 F.3d at fn. 37 (internal citation omitted).

Defendants next challenge predominance by pointing to an individualized review whether a "reasonable modification[]" was provided to overcome the non-complaint ramps. Dkt. 27, Response at 17. This argument is flawed. Buildings constructed after the passage of the ADA, such as the RTU ramps, must comply with structural accessibility standards adopted by the Department of Justice. *Lacy*, 897 F.3d at 853 (citing 28 C.F.R. § 35.151(c)); *Clemons v. Dart*, 168 F.Supp.3d at 1060, 1066 (N.D. Ill. 2016) (Tharp, J.) ("Thus, if a facility is constructed after 1992 – as was Cermak – it must comply with federal architectural standards.").

The common question, similar to *Bennett*, is whether the facilities at issue here violate the federal accessibility standards. *Bennett*, 53 F.4th at 420.

Defendants attempt to distinguish *Bennett v. Dart*, 53 F.4th 419 (7th Cir. 2022), on grounds the putative class here "did not receive the same injuries nor experience the same incident" and that in *Bennett* the class was certified only "with respect to the *issue* as opposed to the case at whole." *See* Dkt. 27, Response at 16. Defendants misunderstand plaintiff's requested relief; the plaintiff requests to certify an issue, similar to the management of the plaintiff class in *Bennett*. *See* Dkt. 8, Memorandum at 10-11. *Bennett* is controlling and the common question - whether the RTU ramps comply with the accessibility standards - is relevant to every detainee at Cook County Jail. *See Bennett*, 53 F.4th at 420. And "[a] class certified under Rule 23(c)(4) resolves the *issue,* not the whole case" where "[c]lass members would receive the benefit of a declaratory judgment (if the class prevails) on the issue but would need to proceed in individual suits to seek damages; by contrast, if the class loses, every detainee would be bound through the doctrine of issue preclusion." *Bennett*, 53 F.4th at 420 (emphasis in original).

*Bennett* was recently applied in *Walker v. Dart*, 20-cv-261, to certify a class under Rule 23(b)(3), where the plaintiff class, defined as wheelchair-users, alleged the Cook County Jail violated the ADA by

refusing to repair a non-compliant ramp. The district court found predominance satisfied for the following reasons:

> Defendants are also correct that the class members may have different damages (Dkt. 137 at 2), but again *Bennett II* instructs that those can be resolved by individual damage determinations. *Id.*; *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine – if liability is established – the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."); *Otero v. Dart*, 306 F.R.D. 197, 207 (N.D.Ill. 2014) ("Even if damages vary among class members, the Court may hold separate liability and damage trials or appoint a magistrate judge to preside over individual damages proceedings.").
>
> Finally, Defendants argue that Plaintiff failed to indicate that class members suffered a detriment. (Dkt. 137 at 2). That is not accurate. Plaintiff alleged that "structural barriers prevent plaintiff and similarly situated wheelchair users from using the ramp similar to non-disabled inmates[,]" resulting in Plaintiff suffering physical injuries. (Dkt. 34 at ¶ 14 and Dkt. 138 at 4). In addition, Plaintiff highlights four other pending lawsuits where inmates allege physical damages when moving up and down the Cermak ramp that were brought after the Court's certification order. (Dkt. 128 at 3-4). (footnote omitted) While the specific injuries may vary, the issue of the Structural Standards may "be determined class-wide . . . leaving to the future any particular inmate's claim to relief." *Bennett II*, 53 F.4th at 420. Thus, upon reconsideration, the Court finds that Plaintiff has satisfied the predominance requirement.

Exhibit 1, *Walker v. Dart*, 20-cv-261, Order at 3-4.

The analysis in *Walker* applies here in full force. The question of damages for putative class members may be resolved by individual damage determinations where defendant is free to present all applicable

defenses. In short, plaintiff satisfies the predominance inquiry because resolution of the common question whether the ramps comply with the federal structural accessibility standards is a common issue likely to drive resolution.

### VI. Superior

Defendants reraise many of the same argument to suggest a class action is not a superior method of adjudicating the claims regarding the RTU ramps. *See* Dkt. 27, Response at 17-19. Defendants claim a class action would be difficult to manage because "individual questions relating to Plaintiff's claims will require highly tailored and individualized inquiries." Dkt. 27, Response at 18. This position misapplies the Seventh Circuit's holding in *Bennett*, 53 F.4th at 420 ("We do not see – and the district judge did not explain – why the application of the Standards cannot be determined class-wide, while leaving to the future any particular inmate's claim to other relief.").

Additionally, at least one other case has challenged the allegedly non-compliant RTU ramps. This case, *Williams v. Dart*, No. 22-cv-3919, was resolved after the plaintiff accepted defendants' offer of judgment. *See Williams v. Dart*, Case No. 1:22-cv-3919, Dkt. Nos. 29, 31. It is likely other civil cases will challenge the same or substantially similar issues and "proceeding as a class achieves economies of time, effort, and expense

and promotes uniformity of decision." *Bennett v. Dart*, 2020 WL 1812376, at *3 (N.D. Ill. Apr. 9, 2020) (Blakey, J.).

### IX. Conclusion

Plaintiff requests that the Court order that this case proceed as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

        Respectfully submitted,

/s/ Patrick W. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL. 60643
(773) 233-7900
pwm@morrisseylawchicago.com

*Attorneys for Plaintiff*