```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    CORNELIUS WALKER,                  )   Docket No. 20 C 261
                                         )
 4                 Plaintiff,            )   Chicago, Illinois
                                         )   November 30, 2021
 5           v.                          )   10:03 a.m.
                                         )
 6    THOMAS DART, Sheriff of Cook       )
      County, and COOK COUNTY,           )
 7    ILLINOIS,                          )
                                         )
 8                 Defendants.           )

 9
          TRANSCRIPT OF PROCEEDINGS - Telephonic Motion Hearing
10              BEFORE THE HONORABLE MARY M. ROWLAND

11
      APPEARANCES:
12

13    For the Plaintiff:    MR. PATRICK W. MORRISSEY
                            MR. THOMAS G. MORRISSEY
14                          Thomas G. Morrissey Ltd.
                            10257 S. Western Avenue
15                          Chicago, IL 60643

16
      For the Defendants:   MR. JACK E. BENTLEY
17                          Johnson & Bell Ltd.
                            33 W. Monroe Street
18                          Suite 2700
                            Chicago, IL 60603
19

20    Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
                            Official Court Reporter
21                          219 S. Dearborn Street, Room 1224
                            Chicago, IL 60604
22                          312.435.6053
                            laura_renke@ilnd.uscourts.gov
23

24

25
```

Exhibit 5 Page 1

2

```
1            (In open court via telephone.)
2                 THE CLERK:  This court resumes in session.
3                 20 C 261, Walker v. Dart.
4                 THE COURT:  Good morning.  Can we get appearances on
5     the record.  We'll start with the plaintiff.
6                 MR. PATRICK MORRISSEY:  Good morning, your Honor.
7     Patrick Morrissey for the plaintiff.
8                 MR. THOMAS MORRISSEY:  Thomas Morrissey, also for the
9     plaintiff, your Honor.
10                THE COURT:  Okay.
11                And then defense counsel?
12                MR. BENTLEY:  Good morning.  This is Jack Bentley for
13    the defendants.
14                THE COURT:  All right.  Any other defense counsel?
15                MR. BENTLEY:  No, just me.
16                THE COURT:  All right.  Okay.  So we're here on
17    plaintiff's motion regarding the requests for admission.
18                Mr. Bentley, I think the ball is in your court.
19    There's maybe five requests to admit that are at issue.
20                MR. BENTLEY:  I have 5, 14, 15, 16, and 18.
21                So I guess if the ball is in my court, your Honor, I
22    would ask that the objections be sustained.  I think the
23    requests that were -- that are at issue are at the very least
24    premature.  You know, it's an ADA class action case.
25                And so much of the fact discovery is going to be
```

Exhibit 5 Page 2

1 centered around technical engineering measurements and things
2 like that, and we have to be able to investigate those matters
3 thoroughly. We have a witness that will testify to a lot of
4 this stuff. We're in the middle of -- at least with No. 14,
5 we're still in the middle of Ellen Stoner's deposition. We
6 haven't even finished that one yet.
7 　　　　So as I say in my objection, I think a lot of these
8 are facts that are better suited to exploration through a
9 deposition rather than just, you know, admitting these facts
10 now. I think it might be a little bit different once the
11 depositions are all complete and some of these issues are more
12 clearly fleshed out.
13 　　　　But at this point I think answering these requests to
14 admit would just basically admit that they win the case. And
15 that's not an appropriate use of Rule 36.
16 　　　　THE COURT: Mr. Morrissey?
17 　　　　MR. PATRICK MORRISSEY: Yes, your Honor.
18 　　　　THE COURT: Yeah. Who -- which Mr. Morrissey, I
19 guess, is speaking for the record?
20 　　　　MR. PATRICK MORRISSEY: This is Pat Morrissey, your
21 Honor.
22 　　　　THE COURT: Yep.
23 　　　　MR. PATRICK MORRISSEY: So, your Honor, the requests
24 to admit are seeking to narrow down critical issues in the
25 case. And, for example, the date when Cermak was constructed,

Exhibit 5 Page 3

1  we propounded in an interrogatory the County said in or before
2  '98.  They produced documents showing it was built and
3  constructed in 1998.
4        And so in response to a simple request about the date
5  it was constructed, I think they should either admit or deny or
6  say that they cannot truthfully answer it.  That's a fairly
7  straightforward factual matter.
8        THE COURT:  Yeah.
9        Mr. Bentley, what about the date?
10       MR. BENTLEY:  Well, first of all, we didn't answer
11 that in an interrogatory.  We answered about the date of the
12 ramp.  We didn't answer about the date of the building.
13       I know it sounds simple and straightforward, but the
14 fact is that a date of the building construction is a highly
15 relevant issue to ADA analysis.  And we are -- we are entitled
16 through the discovery process to explain when it was designed,
17 when construction was commenced, when certain areas of the
18 building were commenced versus other areas of the building or
19 certain structures of the building were commenced, and when
20 they were all completed.
21       And all of those -- all of those dates and all of
22 those times are relevant to the discussion in an ADA case.  And
23 so to just simply say, "Oh, yeah.  It was constructed in 1998,"
24 without going through all of those specifics, which we intend
25 to do through depositions that remain, is not -- it just -- it

Exhibit 5 Page 4

```
 1   puts a -- it puts a finality on this case, or at least on that
 2   issue, that doesn't need to do that.
 3           THE COURT:  Right.  But if it all -- if the law goes
 4   into effect -- and I'm not saying it does.  But if, in fact, it
 5   goes into effect in 1992 and nothing happened until '98 -- and
 6   I hear you.  It might be that the ramp wasn't added until '99
 7   or 2000 or -- you know, of course there would be different
 8   add-ons in the building and -- you know, just because you start
 9   constructing a building in '98, you know, it's not going to be
10   done in '98 necessarily, you know, depending on how long it
11   takes and stuff.
12           But if the -- if the -- if the starting -- if it has
13   to be in compliance as of '92 and you don't start it until
14   2000, what do all those machinations that you're talking
15   about -- why do they matter?
16           MR. BENTLEY:  Well, the fact of the matter is that,
17   you know, we -- I -- we have to do the investigation to know
18   when the building was constructed.  There's documents that have
19   been produced that say that.  This is just what I've gotten
20   from my client and what I've turned over to counsel.
21           THE COURT:  I totally agree.  I totally agree.  But
22   does it matter?  Is it material if the -- if the critical
23   date -- and I'm not saying it is, and maybe you're telling me
24   it isn't.
25           But if the critical date is 1992, do all the dates
```

Exhibit 5 Page 5

6

1  that you're looking at -- the myriad of dates I'm sure that
2  you're looking at in terms of when money was approved, when
3  ground was broken, when the ramp was developed, when the ramp
4  was actually, you know, put in.  Do any of those dates matter
5  if the ADA was passed, you know, in 1950 or 1992 or 1988?  Or
6  if it -- if the ADA predates all of your dates, what does all
7  your minutiae matter?
8              MR. BENTLEY:  Well, I guess -- I mean, the direct
9  answer to your question would be that it wouldn't.
10             My point is that, you know, at this stage of the
11 litigation where we have yet to go through a specific timeline
12 of construction and, you know, go through each issue about this
13 particular ramp and its design and its measurements that --
14 that to remove that issue from contention without giving us a
15 chance to fully litigate it in discovery is premature.
16             Now, it very well may be the case that every single
17 witness that testifies in a deposition between now and the end
18 of the case says Cermak was constructed in 1998, at which point
19 I may say, "Okay.  Yeah, I'll just admit that."
20             My only point is I'm not -- I do not believe it's fair
21 to the defense to have to admit this and remove this issue from
22 contention at this stage of the litigation.  That's my only
23 point.  But your question --
24             THE COURT:  When -- uh-huh.  When is discovery -- when
25 is discovery set to close?

Exhibit 5 Page 6

| | |
|---|---|
| 1 | MR. BENTLEY: January 21st. |
| 2 | THE COURT: Uh-huh. And how many more people need to |
| 3 | be deposed? |
| 4 | MR. BENTLEY: Well, we still have to do the plaintiff. |
| 5 | But we have an outstanding 30(b)(6) for both the County and the |
| 6 | Sheriff. And then we have to do -- we have to complete the |
| 7 | third-party witness Ellen Stoner. |
| 8 | THE COURT: Mm-hmm. And the 30(b)(6) -- I mean, the |
| 9 | plaintiff I don't imagine is going to have much information |
| 10 | about this. But the 30(b)(6), is that person going to be |
| 11 | knowledgeable about the ramp and the building and the timeline |
| 12 | and things like that? |
| 13 | MR. BENTLEY: Well, for Cook County, yes. I don't |
| 14 | know that the Sheriff's Office is going to be able to come up |
| 15 | with somebody with that level of knowledge. But the Sheriff |
| 16 | does have an ADA compliance officer, who I'm actually scheduled |
| 17 | to speak with this afternoon. And I'll get a better sense of |
| 18 | what they'll be able to testify to. |
| 19 | But certainly with Cook County, the majority of the |
| 20 | issues -- the vast majority of the issues that are contained in |
| 21 | plaintiff's 30(b)(6) notice will be covered by that deposition. |
| 22 | THE COURT: And I haven't seen the 30(b)(6) notice, of |
| 23 | course. But will they overlap with some of the issues that are |
| 24 | in these requests to admit? |
| 25 | MR. BENTLEY: I would think quite a few of them, yes. |

Exhibit 5 Page 7

8

```
1              THE COURT:  Uh-huh.  Uh-huh.  Okay.
2          So, Mr. Morrissey, is there anything else you'd like
3   to say?
4              MR. PATRICK MORRISSEY:  Well, if the Court wanted to
5   explore another topic -- for example, the request 16 about the
6   length of the ramp -- the County answered in interrogatories,
7   explaining they believe the ramp is 43 feet 11 inches,
8   depending on how the ramp is measured.  And we served a request
9   to admit about the ramp is more than 43 feet.
10             It's a critical issue that I don't believe there's
11  much dispute that the ramp is more than 43 -- at least 43 feet.
12  And I believe the response isn't appropriate.  They should
13  either admit, deny, or say that they can't truthfully answer
14  the request to admit.  And it's important to narrow down the
15  issues and streamline this case for completion of discovery.
16             THE COURT:  Yeah.
17         So here's my feeling, Mr. Bentley.  What I hear you
18  saying is that you want an opportunity to complete discovery
19  before I hold your feet to the fire on these requests to admit.
20  Is that what you're saying?
21             MR. BENTLEY:  Well, sure, because, I mean, I could --
22  I could go, you know, take each of these requests to the very
23  witnesses that will be testifying in a deposition and have them
24  explain all the technicalities of construction to me so I can
25  admit or deny them, or we can just have them testify and say
```

Exhibit 5 Page 8

1  the exact same things on the record in a deposition.
2           THE COURT: Okay. So here's what I'm going to do.
3           MR. BENTLEY: So that's part of my issue.
4           THE COURT: Here's what I'm going to do. I don't
5  think these objections are well taken. Okay? I think that the
6  requests to admit are asking for facts. I think the County has
7  all the facts in their possession. Okay? The plaintiff --
8  it's the plaintiff that's doing the discovery. You control the
9  witnesses. I mean, you can call the witnesses on the phone and
10 ask these questions. The plaintiff is the one that has to do
11 the discovery, but that's fine.
12          I'm not going to -- I'm not going to grant the motion
13 to compel right now. Okay? I'm going to give you some time
14 because you want to complete Ms. Stoner's dep and you want to
15 get through this 30(b)(6). Plaintiff is taking the 30(b)(6),
16 of course. Plaintiff wouldn't have to take the 30(b)(6)
17 potentially or could shorten the 30(b)(6) if you answered these
18 requests to admit.
19          But you have to answer these -- okay? These are going
20 to be a yes or a no -- before the close of discovery. These
21 are straightforward questions, requests to admit. They're a
22 proper use of the discovery rules.
23          If you want to hear what the 30(b)(6) witness has to
24 say, your witness has to say, and you want to finish out -- sit
25 through the rest of Ms. Stoner's dep -- and I understand she's

Exhibit 5 Page 9

1   a third party -- that's fair. Okay? So I'll let you do that.

2        But you have to answer these. So you can have until

3   the end of discovery to do that. And then if Mr. Morrissey --

4   if plaintiff continues to have a problem with your answers, you

5   know, he can reraise that -- you know, you can file --

6   plaintiff can file another motion to compel on them.

7        But these objections as they're stated, they're not --

8   they're not well taken. They're not appropriate. Okay? So

9   I'm going to strike the objections. But I'm going to give you

10  some time. Okay? You don't have to reanswer them in the next

11  ten days or anything like that. I'm going to let you go

12  through discovery.

13       But ultimately you're going to have to answer the

14  question was this ramp built before or after 1992, or however

15  the question is worded. Okay? That's a fair question. And

16  you're going to have to answer it. Somebody at the County is

17  going to have to answer that.

18       MR. BENTLEY: Okay. So just if I can -- just so I

19  understand your ruling. The objections as we raised them are

20  stricken. The -- we are going to be obligated to answer the --

21  well, the ones that we haven't already. There were a few that

22  we did admit.

23       THE COURT: Yeah. I assume, yeah.

24       MR. BENTLEY: The ones for which we raised an

25  objection we will have to answer, but we can do so at the

Exhibit 5 Page 10

| | |
|---|---|
| 1 | completion of discovery in January.  Is that -- |
| 2 | THE COURT:  Yes. |
| 3 | MR. BENTLEY:  Is that accurate? |
| 4 | THE COURT:  Yes, yes. |
| 5 | MR. BENTLEY:  Okay. |
| 6 | MR. THOMAS MORRISSEY:  Your Honor, this is Tom |
| 7 | Morrissey.  Can I raise one other matter. |
| 8 | We're talking about the consultant Ms. Stoner's |
| 9 | continuation of her deposition.  The Court ruled several weeks |
| 10 | ago and granted our motion to compel documents that Ms. Stoner |
| 11 | has in her possession. |
| 12 | THE COURT:  Yes. |
| 13 | MR. THOMAS MORRISSEY:  And the County, Mr. Bentley, |
| 14 | was supposed to turn over those documents two weeks ago. |
| 15 | We've attempted numerous times in the last two weeks |
| 16 | to get cooperation from Mr. Bentley to turn over those |
| 17 | documents.  We still do not have them.  There was a promise |
| 18 | before Thanksgiving that he was going to turn the documents |
| 19 | over, but that hasn't happened yet.  So we're waiting -- |
| 20 | MR. BENTLEY:  Tom, I'm sorry to interrupt. |
| 21 | MR. THOMAS MORRISSEY:  We're waiting -- |
| 22 | MR. BENTLEY:  The documents have been sent.  They went |
| 23 | out Wednesday. |
| 24 | MR. THOMAS MORRISSEY:  We didn't receive them. |
| 25 | MR. BENTLEY:  I'm looking at the e-mail.  You're |

Exhibit 5 Page 11

1  both -- both Messrs. Morrissey are on the e-mail. The
2  documents are out.
3          MR. THOMAS MORRISSEY: Are they --
4          MR. BENTLEY: Wednesday, November 24th.
5          MR. THOMAS MORRISSEY: Mr. Bentley, are they --
6          THE COURT: They went out by -- did they go out by
7  e-mail, or did they go out by FedEx or something?
8          MR. BENTLEY: They went out through e-mail.
9          It was an e-mail from our IT department. It didn't
10 come from me. So maybe -- maybe you didn't recognize it. But
11 it went out.
12         MR. THOMAS MORRISSEY: And those documents --
13         MR. PATRICK MORRISSEY: Can you resend that because --
14 this is Pat Morrissey -- I haven't received those either,
15 Mr. Bentley. Can you just resend them then?
16         MR. BENTLEY: Yes. No problem.
17         MR. THOMAS MORRISSEY: And, Mr. Bentley, you didn't
18 mark all the documents confidential because many of those
19 documents were produced in discovery prior to our motion.
20         THE COURT: Okay.
21         MR. BENTLEY: Well --
22         THE COURT: So it sounds like -- it sounds like you're
23 going to produce them certainly today by e-mail. And maybe
24 they should come just straight from you, Mr. Bentley, instead
25 of from the IT department since that might cause some problem.

Exhibit 5 Page 12

```
 1            Okay.  So anything else?  So you're going to be done
 2   with discovery at the end of -- the end of January.  Do we have
 3   a status set then for the -- close to the end of January?
 4            MR. BENTLEY:  I don't think we do.
 5            THE COURT:  Yeah, I don't see one either.
 6            Will there be experts then on behalf of plaintiff?
 7            MR. THOMAS MORRISSEY:  We don't know at this point
 8   whether we're going to need an expert, your Honor.  We have an
 9   expert that actually examined the ramp, your Honor.  And, if
10   necessary, we'll have him do a report.
11            THE COURT:  Okay.
12            MR. THOMAS MORRISSEY:  So we may have an expert.
13            THE COURT:  Okay.  So why don't we do this.  Why don't
14   we have a status January 25th.
15            No, that's not a good day, Dawn.
16            Why don't we have a status January 26th, 9:30.  And at
17   that point you'll be wrapping up discovery.  And you can tell
18   me whether or not you want to have an expert, you know, whether
19   we should set an expert schedule and whether it would be worth
20   sitting down to try to resolve this case because I'm not
21   exactly clear where this case is going to go.  And I'm sure you
22   both have ideas, or all three of you.
23            MR. THOMAS MORRISSEY:  Yes, your Honor.
24            MR. BENTLEY:  Sounds good, Judge.
25            THE COURT:  Okay?  9:30.
```

Exhibit 5 Page 13

14

1       MR. THOMAS MORRISSEY: Thank you for your time, your
2 Honor.
3       MR. BENTLEY: Thank you very much, your Honor.
4       THE COURT: Have a good day.
5       MR. BENTLEY: Thank you.
6   (Concluded at 10:20 a.m.)
7            C E R T I F I C A T E
8   I certify that the foregoing is a correct transcript of the
9 record of proceedings in the above-entitled matter.
10
11 */s/ LAURA R. RENKE*                       *December 20, 2021*
   LAURA R. RENKE, CSR, RDR, CRR
12 Official Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25

Exhibit 5 Page 14