IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Eugene Westmoreland, )<br>)<br>*Plaintiff,* )<br>)<br>-*vs*- )<br>)<br>Thomas Dart, Sheriff of Cook )<br>County, and Cook County, Illinois, )<br>)<br>)<br>*Defendants.* ) | No. 23-cv-1851<br><br>Judge Tharp, Jr.<br><br>Magistrate Judge Gilbert |

**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTIVE RELIEF**

Plaintiff Eugene Westmoreland, by counsel, moves the Court to order defendants Sheriff of Cook County and Cook County to make the necessary architectural modifications to the East Tunnel Corridor located in the lower level of the Residential Treatment Unit (RTU) to comply with the Americans with Disabilities Act (ADA).

Grounds for this motion are as follows:

1.  The RTU opened in 2013 and houses most wheelchair-users remanded to the Sheriff of Cook County. Dkt. 14, Sheriff's Answer ¶ 8. When the building opened, it was required to comply with the federal architectural standards set by the ADA. *Id.* There is a ramp located at the basement level called the East Tunnel Corridor that "connects the RTU basement level to another tunnel, running north/south, which leads to other campus building." Exhibit 1, Tunnel Corridor Ramp Accessibility Assessment at 4.

-1-

2. Defendants Sheriff and Cook County are jointly responsible for accommodating disabled detainee at the Cook County Department of Corrections. Dkt. 13, County Answer ¶ 4; Dkt. 14, Sherriff Answer ¶ 4.

3. There is no dispute this ramp must comply with the ADA; the building opened in 2013. Moreover, defendants know the ramp is non-compliant with the ADA because defendants hired Globetrotters Engineering Corporation (GEC) who prepared their expert report that the East Tunnel Corridor does not comply with the ADA because of "[c]ode violations related to maximum permitted ramp slope, handrail height and extension, and landing length are present at the East Tunnel ramp." Exhibit 1, Tunnel Corridor Ramp Accessibility Assessment at 3.

4. The Seventh Circuit in *Lacy v. Cook County*, explained a permanent injunctive relief is appropriate when a plaintiff has shown: "(1) success . . . on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant, and (4) that the public interest will not be harmed by the requested relief." 897 F.3d 847, 867 (7th Cir. 2018) (cleaned up). The plaintiff and putative class meet each of these elements.[1]

---

[1] The plaintiff's motion for class certification is fully brief. *See* Dkt. 7.

I. **Success on the merits**

    5.    The plaintiff has demonstrated success on the merits. The federal accessibility regulation states:

> If physical construction or alterations [of a facility] commence after July 26, 1992 . . . then the new construction and alternations subject to this section must comply with either UFAS or the 1991 Standards . . . [d]epartures from particular requirements of either standards by the use of other methods shall be permitted when it is clearly evident that equal access to the facility or part of the facility is thereby provided.

28 C.F.R. § 35.151(c)(1).

    6.    Section 4.8.2 of the Americans with Disabilities Act Guidelines for Buildings and Facilities (ADAAG), 28 C.R.F. Pt. 36, App. A. specifies that "[t]he least possible slope shall be used for any ramp," "[t]he maximum slope of a ramp in new constructions shall be 1:12," and "[t]he maximum rise for any run shall be 30 [inches]." Exhibit 8 at 30, ADAAG 4.8.2. A ramp must have a landing that "shall be a minimum of 60 in (1525) clear." *Id.* at 32, ADAAG 4.8.4. In addition, handrails must extend at least 12 inches beyond the top and bottom of a ramp. *Id* at 32, ADAAG 4.8.5. The 2010 Americans with Disabilities Act Accessibility Guidelines, cited by GEC, has the same requirements. *See* Exhibit 1, Tunnel Corridor Ramp Accessibility Assessment at 6-7.

    7.    GEC made five findings why the East Tunnel Corridor does not comply with the ADA:

- **Top landing:** The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant.

  The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

- **Upper Ramp:** The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11.

  The upper portion of the ramp floor surface is not code compliant; the top 16.5% of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

- **Intermediate Landing:** The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant.

  It is 5% shorter than the required length. To correct this nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt, along its entire length, to provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

- **Lower Ramp:** The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5.

  The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately

> 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.
>
> - **Handrails:** As noted in the code requirements above, handrails need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor. Since, at some locations, handrails are less than 34" above the ramp floor they are not in compliance with requirements for handrail height.
>
>   The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

Exhibit 1, Tunnel Corridor Ramp Accessibility Assessment at 10-11.[2]

8. Any practice or policy of pushing wheelchair-users up and down the non-compliant ramp does not satisfy defendants' obligation under the ADA.[3] "Title II of the ADA requires affirmative, proactive accommodations necessary to ensure meaningful access to public services and programs, not accommodations upon request, otherwise public entities could simply avoid the ADA structural standards in favor of

---

[2] Plaintiff's retained expert, Gary Keclik, prepared a report that the same ramp is not compliant with the ADA. *See* Exhibit 2, Keclik Report at 2-3.

[3] There is also evidence staff are not trained to push wheelchair-users. Officer George Marin, an individual who escorted plaintiff and other detainees in the RTU as a movement officer, testified no supervisor ever told him he was required to push a wheelchair-user up or down ramps. Exhibit 6, Marin Dep 29:7-16, 37:8-10, 156:16-157:2. Wheelchair-users aver there are times when staff do not assist moving up and down the RTU ramp. Exhibit 3, Williams Decl. ¶ 5; Exhibit 4, Thompson Decl. ¶¶ 4-5.

providing an aid or beneficiary, and then avoid affirmative compliance together by awaiting requests for assistance." *Crockwell v. Dart*, 15 C 825, 2016 WL 4493456, at *3 (N.D. Ill. Aug. 26, 2016) (Shah, J.) (citing *Clemons v. Dart*, No. 13 C 02356, 2016 WL 890697, at *6 (N.D. Ill. Mar. 9, 2016)).

9. On final note, defendants cannot argue bringing the ramp into compliance is technically infeasible. *See* 28 C.F.R. § 35.151(b)(1). The defendants' expert, GEC, offers the following recommendations to bring the ramp into compliance with the ADA:

**East Tunnel Corridor Recommendations**
GEC recommends the following to bring the ramp into code compliance:

1. At Top Landing, move doors to adjacent tunnel east +/-52" as needed to provide a 60" landing.
2. Rework the slope of the Upper Ramp with topping materials to be maximum 1:12 at all locations.
3. Pour over the existing floor slab to shift the Lower Ramp East and extend the length of the Intermediate Landing to a minimum of 60".
4. In conjunction with item no. 3., above, provide a maximum 1:12 slope at all portions of the Lower Ramp.
5. Replace existing handrails with anti-ligature handrails. Install between 34 and 38" t all locations and with correct extensions.



Figure 3: Plan of Recommendations

Exhibit 1, Tunnel Corridor Ramp Accessibility Assessment at 16; Exhibit 7, Defendants' Rule 26(a)(2)(B) Disclosure Identifying Globetrotters Report.

## II. Irreparable harm

10. Members of the putative class suffer irreparable harm without permanent injunctive relief. Plaintiff turned over declarations from Darreon Thompson and Efferson Williams, both wheelchair-users, who aver moving up and down the non-compliant ramp is unsafe and caused physical pain. Exhibit 3, Efferson Williams Declaration; Exhibit 4, Darreon Thompson Declaration. And plaintiff Westmoreland testified he "had a difficult time going up and down these ramps" and experienced pain. Exhibit 5, Westmoreland Dep 38:4-39:18.

11. Wheelchair-users suffer irreparable harm by moving up and down the non-compliant ramp and this harm should be remedied by bringing the ramp into compliance with the ADA. *See* Exhibit 1, Tunnel Corridor Ramp Accessibility Assessment at 16.

## III. Benefits of granting the injunction outweigh the injury to the defendants

12. The benefits of granting the injunction outweigh any harm to defendants. As explained in *Lacy*, "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." 897 F.3d at 853. Indeed, an injunction requiring defendants to bring the ramp into

compliance with the ADA would correct the obvious barriers presented by the inaccessible ramp. Any injury to defendants, to repair a ramp that all parties concede is non-compliant, is minimal.

  13. The assertion by defendants' expert that "except the lack of a landing at the top of the ramp, the violations are minor," *see* Exhibit 1 at 3, does not preclude the granting of a permanent injunction. In *Lacy*, the Seventh Circuit affirmed the district court's entry of a permanent injunction where the privacy screen in front of a toilet was "1.5 inches too close to the rear wall of the cells." 897 F.3d at 867-69.

### IV. Public interest is not harmed by injunction

  14. An injunction protecting federal rights is in the public interest. Indeed, Eric Davis, the Deputy Director of Capital Planning and Policy, testified increasing accessibility in Cook County facilities is "an absolute priority" for Cook County. Exhibit 9, Davis Dep 130:9-131:5.

## V. Conclusion

Accordingly, the plaintiff moves the Court to order defendants County to make the necessary architectural modifications to the RTU East Tunnel Corridor so that the ramp complies with the ADA.

Respectfully submitted,

/s/ Patrick W. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL 60643
(773) 233-7901
pwm@morrisseylawchicago.com

*an attorney for the plaintiff*
