**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Eugene Westmoreland, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-1851 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Cook County Sheriff Thomas Dart, et al. | ) | Magistrate Judge Gilbert |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PERMANENT INJUNCTIVE RELIEF**

NOW COME Defendants, COOK COUNTY SHERIFF THOMAS DART and COOK COUNTY, a body politic and corporate, by and through their attorneys, Special Assistant State's Attorneys, Jason E. DeVore, Troy S. Radunsky, and Zachary G. Stillman, of DeVore Radunsky LLC, and for their Response in Opposition to Plaintiff's Motion for Permanent Injunctive Relief, state as follows:

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 3

LEGAL STANDARDS ........................................................................................................ 4

STATEMENT OF FACTS ................................................................................................... 5

ARGUMENT ...................................................................................................................... 10

   I.   Plaintiff Has Presented the Disputed Facts to the Wrong Trier of Fact. ........................... 10

   II.   A Permanent Injunction is Unnecessary Because Cook County Has Plans Underway to Remediate the Non-Compliance of the Ramp. ................................................................. 12

   III.   Plaintiff Cannot Meet Each of the Requirements for a Permanent Injunction. ................ 13

       a.   Plaintiff cannot show actual success on the merits because the East RTU Ramp's non-compliance is *de minimis*. ................................................................................. 14

       b.   Neither Plaintiff, nor any putative class member will suffer irreparable injury, and monetary damages are adequate. ................................................................................. 15

1

c.   The balance of hardships weighs against permanent injunctive relief. .................... 17

d.   The public interest would be disserved by a permanent injunction. ......................... 19

IV.   Plaintiff, Now in Custody of IDOC, Lacks Standing to Seek a Permanent Injunction. ... 19

CONCLUSION ..................................................................................................................... 22

## TABLE OF AUTHORITES

**Cases**

U.S. Supreme Court

*Bell v. Wolfish*, 441 U.S. 520 (1979) ........................................................................... 18
*Block v. Rutherford*, 468 U.S. 576 (1984) .................................................................... 18
*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................... 20
*Friends of the Earth, Inc., v Laidlaw Environ. Servs., Inc.*, 528 U.S. 167 (2000) ....... 20
*Turner v. Safley*, 482 U.S. 78 (1987) ........................................................................... 18

Circuit Courts

*Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982) .............................................................. 14
*Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018) .................................... 11
*E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700
   (7th Cir. 2005) ............................................................................................................ 15
*Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003). 12
*Graham v. Med. Mut.*, 130 F.3d 293 (7th Cir. 1997) .................................................... 17
*Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 1999) .................................................. 20
*Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010 (7th Cir. 2016) ............... 12
*Insight v. Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007) ......................................... 4
*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011) ................ 17
*Knox v. McGinnis*, 998 F.2d 1405 (7th Cir. 1993) ....................................................... 21
*Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018) ............................................. 3, 11, 15
*LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933 (7th Cir. 2019) ...................................... 4
*Lehn v. Holmes*, 364 F.3d 862 (7th Cir. 2004) ..................................................... 19, 20
*Maddox v. Love*, 566 F.3d 709 (7th Cir. 2011 ............................................................. 21
*Nigl v. Litscher*, 940 F.3d 329 (7th Cir. 2019) ........................................................... 19
*Perry v. Sheahan*, 222 F.3d 309 (7th Cir. 2000) ......................................................... 20
*Rasho v. Jeffreys*, 22 F.4th 703 (7th Cir. 2022) ............................................................ 5
*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ................................... 12, 13
*Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir. 1993) ...................................................... 20
*Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989 (7th Cir. 2000) .......................... 12
*Vaughn v. Walthall*, 968 F.3d 814 (7th Cir. 2020) ............................................. 4, 13, 14
*Wheeler v. Talbot*, 770 F.3d 550 (7th Cir. 2014) ........................................................ 16
*Williams v. Department of Corrections,* 208 F.3d 681(8th Cir. 2000) ......................... 16
*Young v. Lane*, 922 F.2d 370 (7th Cir. 1991) .............................................................. 21

District Courts

*Arreola v. Choudry*, 03-cv-2854, 2007 WL 9776652 (N.D. Ill. Jan. 30, 2007) ........................... 20

*Clemons v. Dart*, 168 F. Supp. 3d 1060 (N.D. Ill. 2016) ............................................... 14

*Dickey v. Harrington*, 14-cv-1024, 2014 WL 5293560 (S.D. Ill. Oct 16, 2014).......................... 21

*Hildreth v. Cook County*, 08-cv-3506, 2010 WL 1656810 (N.D. Ill. Apr. 23, 2010) ................. 22

*Holden v. Knight*, No. 15 CV 0432, 2016 WL 696088 (N.D. Ind., Feb. 22, 2016)..................... 16

*Jenkins v. Velasco*, 94-cv-7391, 1995 WL 765315 (N.D. Ill. 1995) ............................................ 22

*Jones v. Dittman*, Case No. 17 CV 0854, 2020 WL 224341 (W.D. Wis. Jan. 15, 2020) ............. 16

*Lindell v. Pollard*, 13-C-0759, 2015 WL 5098738 (E.D. Wis. Aug. 31, 2015) .......................... 21

*Robinson v. Milwaukee Secure Detention Facility*, No. 15 CV 0263, 2016 WL 3620770 (E.D. Wis., June 29, 2016) .................................................... 16

*Shatner v. Atchison*, 13-cv-599, 2013 WL 3771541 (S.D. Ill. July 17, 2013)............................. 21

*Smith v. Schwartz*, No. 10 CV 0721, 2011 WL 2115831 (S.D. Ill. May 26, 2011)..................... 16

## INTRODUCTION

Plaintiff has a history of prematurely moving for relief in this case. *See* ECF Nos. 34, 38 (granting Defendants leave to file a sur-reply to Plaintiff's Motion for Class Certification based on concerns as to ability to respond to arguments using new information gleaned in discovery, where Plaintiff prematurely filed Motion prior to issuance of written discovery or visit to site of issue ramps for measurements, only engaging in such after the filing of Defendants' Response). Now, Plaintiff is undisputedly safe from any "irreparable injury," given that he was in the custody of the IDOC at the time his Motion was filed, yet nevertheless moves for permanent injunctive relief, even though no legal or factual issues in this case have been resolved by a jury. As such, Plaintiff seeks to strip from Defendants their Seventh Amendment constitutional right to trial by jury.

The court considered the same scenario in *Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018). There, the Seventh Circuit found the court committed reversible error by ruling on a permanent injunction before submitting the issue of whether defendants violated the ADA to a jury. Similar to *Lacy*, Plaintiff has presented disputed issues to "the wrong trier of fact," and any

3

ruling on Plaintiff's motion at this stage will "infect[] the disposition" of his equitable claim. *Id.* at 861.

Even if the Court rules on Plaintiff's equitable claim before his legal claim is decided by a jury, Plaintiff's motion must be denied. Plaintiff cannot satisfy the requirements for Permanent Injunctive Relief, nor can he, or any putative class member, show they have suffered any substantive harm from the *de minimis* deviations of the East RTU Ramp from ADA standards.

Regardless, Cook County is already in the process of planning the remediation of the East RTU Ramp issues as part of a much larger strategic accessibility renovation project currently underway. Neither Plaintiff not the putative class faces danger of irreparable harm if an injunction is not entered. Additionally, Plaintiff is no longer in the custody of CCDOC, so he no longer has standing to bring this motion. As such, Plaintiff's request for injunctive relief is moot, and Plaintiff's Motion should be denied.

## LEGAL STANDARDS

A plaintiff moving for an injunction "has the burden of persuasion—damages are the norm, so the plaintiff must show why his case is abnormal." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (citation omitted). Specifically, to obtain permanent injunctive relief, a plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Vaughn v. Walthall*, 968 F.3d 814, 824 (7th Cir. 2020) (citation omitted).

In addition, a plaintiff must show not just a probability of success on the merits but actual success. *Id.* at 824–25. (quoting *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019)) ("Critically, a finding of liability on a defendant's part does not automatically give rise to an

4

entitlement to injunctive relief. ... To the contrary, an injunction issues 'only as necessary to protect against otherwise irremediable harm.'").

The Prison Litigation Reform Act ("PLRA") places additional restraints on a court's authority to enter an injunction with respect to jail conditions. *See Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022). Under the PLRA, a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* (quoting 18 U.S.C. § 3626(a)(1)(A)). The Supreme Court and Seventh Circuit have repeatedly emphasized that jail administrators "have substantial discretion over the institutions they manage." *Id.* at 711-12. "This principle is embodied in the PLRA's limit on remedies." *Id.* at 712.

## STATEMENT OF FACTS

### I.      East Tunnel Ramp Measurements

Cook County owns the Cook County Department of Corrections ("CCDOC") campus, located at 2700 S. California, Chicago. (Ex. A, Davis Declaration, ¶ 4.) The buildings on the campus are used to house detainees in CCDOC custody. (*Id.*) Division 08, also known as the Residential Treatment Unit ("RTU"), houses most wheelchair-users in CCDOC custody. (*Id.*) Beneath the RTU there are pedestrian and material access tunnels which serve the facility at the basement level. (*Id.*) Located within the East Tunnel Corridor is an access ramp ("East RTU Ramp"). (*Id.*)

Cook County hired a third-party architectural/engineering firm, Globetrotters Engineering Corporation ("GEC"), to assess the ADA compliance of the East RTU Ramp. (*Id.* ¶ 13; Pl. Ex. 1, GEC Report.) Previously, in March 2023, pursuant to a County Request for Qualifications

("RFQ") bidding and procurement vetting process initiated in 2022, GEC was awarded Contract No. 2215-02221.[1] The scope of work for this contract was specific to accessibility at the Cermak Health Services Facilities at the CCDOC campus.[2] In January 2024, the GEC team conducted a site visit to measure the East RTU ramp. (Ex. 1 ¶ 14.) GEC utilized a LiDAR system, advanced technology which Cook County does not possess, to document the physical conditions of the East RTU ramp in three-dimensional form. (*Id.* ¶¶ 14-15.) The three-dimensional imagery captured the top and bottom of the ramp as well as the landings. (*Id.*)

GEC documented code violations in its evaluation of the East RTU ramp, but noted them to be minor, "except the lack of a landing at the top of the ramp." (Pl. Ex. 1, GEC Report, at 3.) These violations included:

- At two locations there is a deviation in the ramp floor that creates, for a short distance, a slope greater than 1:12.
- The intermediate landing is 5% short of the required length of five feet.
- Handrail extensions are shorter than the required 12" but in all cases are longer than 7.25".
- At some locations, the handrails are up to ½" lower than the minimum required height.

(*Id.*) GEC also noted there to be a "lack of a landing, more than 9" long, at the top of the ramp," but stated that such issue was "easily ... corrected since there is room to move the doors, at the far side of the landing, away from the ramp to create a five-foot landing." (*Id.*)

Based on its assessment of the East RTU ramp, GEC made five recommendations to bring the East RTU ramp into compliance, including:

1. Move doors to adjacent tunnel east +/-52" as needed to provide a 60" landing.
2. Rework the slope of the Upper Ramp with topping materials to be maximum 1:12 at all locations.
3. Pour over the existing floor slab to shift the Lower Ramp East and extend the length of the Intermediate Landing to a minimum of 60".

---

[1] *See* https://opendocs.cookcountyil.gov/procurement/contracts/2215-02221.pdf
[2] *Id.* at Ex. 1, Scope of Work.

4. In conjunction with 3, provide a maximum 1:12 slope at all portions of the Lower Ramp.
5. Replace existing handrails with anti-ligature handrails, installed between 34 and 38" at all locations, with correct extensions.

(Pl.'s Ex. 1, GEC Report, at 16.)

## II. Renovation of the East RTU Ramp

As part of a comprehensive, multi-contract program to assess the overall ADA/accessibility compliance of all its public safety facilities (approx. 11 mil. sq. ft.), the County has publicly advertised for and is currently seeking an architectural/engineering firm to assess, design, and provide construction phase services for complete and comprehensive upgrades to the accessibility and ADA compliance of the CCDOC facilities, which is includes approximately 60 structures, totaling approximately 3.5 million square feet, as well as the land, outdoor recreation areas, gardens, drives, sidewalks, parking areas, etc. around them on over 100 acres of County-owned property. (Ex. A, Davis Decl. ¶ 5.) The period for bids on the project ended on May 22, 2024, with award of the contract expected approximately in January 2025. (*Id.*)

Because of the scale of the project, the County's planned upgrade program contemplates the division of the campus into 3 "packages" for assessment, design, and construction documents, to be produced by the successful AE firms. (*Id.* ¶ 6.) The ADA renovation work for the Division 08/RTU facility, including the East RTU Ramp, would be included in the scope of the contemplated work, specifically within "Package 1," and would be handled at the same time as surrounding facilities. (*Id.*) The scope of work includes additional assessment, design, and construction phase services. (*Id.*) Given the complexity and the interlocking nature of these assignments at the Jail, the County expects to realize significant time and cost savings for the program through this approach. (*Id.*)

Also because of the enormous size and scope of the project, a holistic approach must be considered in the design and construction of the entire project, including regarding ADA design. (*Id.* ¶ 7.) The sequence of work on a project of this size requires careful consideration and planning of each element or location, in the context of its surrounding areas and their accessibility requirements, so that the project addresses the needs for access seamlessly, and that the work can be constructed in the most expeditious, cost-effective, efficient, and safe manner. (*Id.*)

Notably, the "path of travel" throughout the campus that might require ADA compliance is vast and not just limited to the East RTU ramp. The County's goal is to ensure the *entire* project complies with the ADA standards, not just the ramps. (*Id.* ¶ 8.) In light of these broader requirements, it would be inefficient and cost prohibitive if the ramp work was not properly sequenced with other necessary work on the project that the County intends to complete in the next few years. (*Id.* ¶ 9.)

Carving out repairs just to ensure one ramp is ADA compliant without considering the overall impact on a project of this scale, in addition to subverting the desire to create seamlessly accessible paths of travel, as required by the Act, would also be contrary to the overall imperative to address the needs comprehensively and completely, and to do so as quickly as possible. (*Id.* ¶ 10.) This also has implications beyond accessibility. For instance, since the tunnel system also serves as the location for much of the infrastructure for the various buildings across the campus, there may be mechanical, electrical, or plumbing that is also affected and needs to be sequenced too. (*Id.*) Concurrent with the ADA assessment and upgrades program, the County has retained an engineering firm which is conducting an analysis and re-design of the campus HVAC systems, which likely will result in the re-routing or replacement of major infrastructure that runs through

the area in question, due to the desire to decentralize those systems, for greater redundancy, and to include sustainable energy systems not yet in place. (*Id.*)

Piece-meal fixes applied without consideration given to "path of travel" needs, which crisscross the area in question for multiple paths, users, and needs, will simply slow down County progress in achieving the comprehensive remediation of accessibility issues within CCDOC. (*Id.* ¶ 21.) Application of remediation without consideration of such higher-level issues poses the problem of potentially needing to redo the same work in the future, or potentially even subjects the County to additional lawsuits if issues arise. (*Id.*)

Considering there is no precedent for an ADA upgrades program of this scale, the County cannot make a solid estimate of the timing that it will take to reach substantial completion on the project but anticipates it will take a few years. (*Id.* ¶ 19.) Once actual work begins, given the scope and nature of the project, a conservative completion estimate would be 24-28 months. (*Id.* ¶ 20.) This estimate takes into consideration both a high-level engineering and construction sequencing approach. (*Id.*)

### III.  Assistance to Wheelchair Users

CCDOC policy provides that all wheelchair users will be accommodated in navigating facility features such as ramps. (Group Ex. B, Policy 148 and 12.22.23 Roll Call Memo). All detainees have the right to refuse assistance. (*Id.*)

Sabrina Rivero-Canchola has been the ADA compliance officer with the Sheriff's Office since September 2015. (Ex. C, Rivero-Canchola Dep. 4:16-23, December 20, 2023.) Ms. Rivero-Canchola testified that it is the Sheriff's Office policy to assist wheelchair-bound inmates up and down ramps. (Ex. C at 74:7-17.) One of Plaintiff's proposed putative class members, Efferson Williams, stated in his deposition that officers have been consistently assisting him with the ramp

since at least "late December of '23," when the roll call memo was distributed to Officers. (Ex. D, Efferson Williams Dep. 22:19-23:7, April 25, 2024.) He further stated that despite his experience of some issues with the East RTU ramp in the past, he had never been prevented from ultimately reaching his destination, nor had his services cancelled or delayed from such issues – Officers were always willing to help if he needed the assistance. (*Id.* at 23:19-26:9.) Ms. Rivero-Canchola also testified that when inmates are not assisted, based on her investigations, it is usually because of their refusal of assistance. (Ex. C at 66:4-67:13.)

### IV. Plaintiff's Transfer to IDOC

Plaintiff is now no longer in CCDOC custody. On September 26, 2023, Plaintiff was transferred to Illinois Department of Corrections (IDOC) custody, at Taylorville Correctional Center. (Ex. E, Plaintiff IDOC Inmate Search.)

ARGUMENT

### I. Plaintiff Has Presented the Disputed Facts to the Wrong Trier of Fact.

The Seventh Amendment guarantees Defendants the right of trial by jury. U.S. Const. amend. VII. Under the Federal Rules, the right of trial by jury "is preserved to the parties inviolate." Fed. R. Civ. P. 38(a).

Plaintiff filed this lawsuit seeking damages and injunctive relief for "structural barriers ... caus[ing] detainees, like plaintiff Westmoreland, to be unable to traverse the ramps on the same basis as non-disabled inmates." (Pl.'s Compl. ¶ 10, ECF No. 1.) Plaintiff alleges he "has experienced pain and has been unable to navigate the ramps on the same basis as non-disabled inmates because of the obvious physical barriers." (*Id.* ¶ 11.) Defendants are entitled to have a jury decide these issues. Whether the East RTU ramp prevented Plaintiff from accessing programs or facilities at CCDOC or caused him to move so fast down the ramp he experienced physical injury,

are issues a jury must resolve after review of the claims and evidence. Defendants have a due process right to challenge Plaintiff's credibility at trial. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

Plaintiff purports to present a case with both legal and equitable claims, therefore, the legal claims must first be presented to a jury to preserve Defendants' right to a jury trial. "[W]hen a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Lacy v. Cook County*, 897 F.3d 847, 858 (7th Cir. 2018) (internal citation and quotation marks omitted).

Absent parties waiving their jury trial rights, which Defendants do not waive here, the proper procedure is for a district court to first try the legal issues before a jury before deciding a permanent injunction. *Id.* at 859. "Otherwise, the court might limit the parties' opportunity to try to a jury every issue underlying the legal claims by affording preclusive effect to its own findings of fact on questions that are common to both the legal and equitable claims." *Id.* at 858.

Accordingly, the Seventh Circuit has held it is "reversible error" for a district court to deprive defendants of their right to a jury trial on ADA liability by granting a permanent injunction before the legal issues are decided by a jury. *Id.* at 860–61. In *Lacy*, "if not for the court's error, the defendants would have been entitled to a jury determination on all of the facts underlying the alleged ADA violations." *Id.* at 861. Because the issues were presented to the "wrong trier of fact," the Seventh Circuit stated the "court's error 'infect[ed] the disposition' of the equitable claims as well." *Id.* at 861 (citation omitted).

By requesting permanent injunctive relief before a jury resolves the legal issues in this case, Plaintiff has presented disputed facts to the wrong trier of fact. A jury must first resolve

whether Defendants violated the ADA before this Court may rule on the motion for permanent injunction. Plaintiff's motion is premature.

## II.     A Permanent Injunction is Unnecessary Because Cook County Has Plans Underway to Remediate the Non-Compliance of the Ramp.

As discussed above, Cook County is currently conducting a comprehensive, multi-contract program to assess the overall ADA/accessibility compliance of all its public safety facilities. These contracts will include assessment, design, and construction phase services for complete and comprehensive upgrades to the accessibility and ADA compliance of the Department of Corrections facilities, including Division 08/RTU and the East RTU ramp. The period for bids on the project ended on May 22, 2024, with award of the contract expected approximately in January of 2025. Accordingly, Plaintiff's request to order Cook County to immediately fix the ramp is unnecessary and Plaintiff's need for injunctive relief is moot. Indeed, as stated above, an order for Cook County to immediately fix the ramp is not only moot, but it would also detrimentally impact a larger project to improve CCDOC facilities, thereby harming other individuals in CCDOC.

Before granting injunctive relief, a court must determine whether the plaintiff's need for injunctive relief is moot. *See Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) ("When a case is moot, it must be dismissed as non-justiciable."). A defendant's voluntary conduct can moot a case where "there is no reasonable expectation that the wrong will be repeated." *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1023 (7th Cir. 2016) (citation omitted).

When the defendant is a government actor, courts "ordinarily presume that the objectionable behavior will not recur." *Id.* The Seventh Circuit places "greater stock in [public officials'] acts of self-correction, so long as they appear genuine." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (quoting *Fed'n of Advert. Indus. Representatives, Inc. v. City of*

*Chicago*, 326 F.3d 924, 929 (7th Cir. 2003)). A contrary conclusion would put courts "in the position of presuming [the government] has acted in bad faith," which is something courts "ordinarily do not presume." *Id.* (citation omitted).

Cook County is taking action to engage in a massive undertaking which will, ultimately, include the very same corrections recommended by GEC and requested by Plaintiff in his motion for permanent injunction. However, as explained above, piece-meal fixes, like rectification of *only* the issues with the East RTU ramp, inherently fail to consider "path of travel" needs and will simply slow down progress in achieving planned comprehensive remediation of accessibility issues throughout CCDOC.

Due to the enormous size and scope of the project and facilities, the sequence of work requires careful consideration and planning of each element or location, in the context of its surrounding areas and their accessibility requirements, so that the project addresses the needs for access seamlessly and that the work can be constructed in the most expeditious, cost-effective, efficient, and safe manner. While the ramp *will* be remediated, it will be done at the time that makes most sense in the larger context of the "Envelope 1" portion of the project. It cannot be said that this path of action puts detainees like Plaintiff, or his proposed putative class members, at any risk of injury, especially considering the policies in place to assist detainees in traversal of ramps.

County's planned ADA upgrades program is genuine, and explicitly includes the facilities of Division 08/RTU where the RTU East ramp lies. Accordingly, this Court should presume the East RTU ramp will be brought into compliance with the ADAAG without court order.

### III.    Plaintiff Cannot Meet Each of the Requirements for a Permanent Injunction.

Plaintiff's Motion cannot succeed because he fails to show satisfaction of the requirements for permanent injunctive relief. To obtain the requested relief, Plaintiff must demonstrate not just

a probability of success on the merits, but actual success. *Vaughn*, 968 F.3d at 824–25. Additionally, he must show (1) irreparable injury; (2) money damages are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant weigh in favor of an injunction; and (4) the public interest would not be disserved by a permanent injunction. *Id.*

### a. Plaintiff cannot show actual success on the merits because the East RTU Ramp's non-compliance is *de minimis*.

Under the doctrine of "de minimis non curat lex," an actionable claim "requires injury." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). As pled, Plaintiff's experienced issues with the East RTU ramp are *de minimis*, with no explicit injuries pled, nor able to be proven or supported with evidence.

In a failed attempt to establish actual injury across the putative class, Plaintiff submits cookie-cutter declarations from two putative class members. (Pl. Exs. 3-4, ECF Nos. 72-3 to 4.) Although these two individuals say their hands "hurt" or "burn" after going up and down the East RTU ramp, such a contention is disputed by the lack of evidence of any such injuries. Neither Plaintiff, nor any of his proposed putative class members, ever sought explicit medical attention for any such alleged injuries. (Pl. Ex. 5, ECF No. 72-5, Pl. Dep. at 41:1-42:21; Ex. D, Efferson Williams Dep. at 29:14-30:10, 37:9-39:13, 52:11-18.) Accordingly, there are no injuries and Plaintiff cannot show actual success on the merits.

Additionally, neither the ADA nor the Rehabilitation Act are strict liability statutes. The regulations for both statutes have "equivalent facilitation" provisions. *See generally Clemons v. Dart*, 168 F. Supp. 3d 1060, 1065-66 (N.D. Ill. 2016). Thus, Cook County may comply with the statutes even if the structural standards are technically not met. Under the ADA's regulations, "[d]epartures from particular requirements of either standard by the use of other methods shall be

permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1). Likewise, under the Rehabilitation Act's regulations, compliance with the structural standards is a sufficient condition for statutory compliance, although not a necessary condition. *See* 28 C.F.R. § 42.522(b)(1). Such "equivalent access" is provided through policies requiring staff transport of wheelchair bound detainees, therefore it may even be the case that no such violation has occurred.

### b. Neither Plaintiff, nor any putative class member will suffer irreparable injury, and monetary damages are adequate.

Neither Plaintiff nor any putative class member has suffered an actual injury in traversing the ramp, much less an *irreparable* injury. If a plaintiff cannot show irreparable injury, "a court's inquiry is over and the injunction must be denied." *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (citation omitted). Even a showing by a plaintiff of *actual* harm "does not [alone] prove that the harm will be irreparable." *Id.*

An injury is irreparable "only if it cannot be remedied through a monetary award after trial." *Id.* at 703–04. Thus, "even repeated and ongoing violations" of law do not warrant injunctive relief "if each violation may be remedied by a monetary award." *Id.* at 704.

Plaintiff cites *Lacy* for the proposition that "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." (ECF No. 72 at 7, citing *Lacy*, 897 F.3d at 853.) Plaintiff, however, presents no evidence that Plaintiff or any proposed putative class member was "prevent[ed]" from "accessing otherwise available public services." *Id.* Plaintiff has no evidence that he or any proposed class member was prevented from accessing services at the CCDOC because of the state of the East RTU ramp.

Rather, the evidence shows that detainees who use wheelchairs may be assisted in going up and down the East RTU ramp. (Ex. B; Ex. C at 74:7-17; Ex. D at 22:19-23:7.) If detainees do not want to be pushed up and down a ramp, they have the right to refuse assistance. (Ex. B; Ex. C at 66:4-67:13.)

The *only* evidence Plaintiff submits are declarations from two proposed putative class members who say the ramp caused a burning sensation on their hands. Even if this were credible, a burning sensation is neither an actual injury nor an irreparable injury. Even an inmate who told medical staff that his skin hurt and periodically oozed puss was insufficient to show irreparable harm. *See Wheeler v. Talbot*, 770 F.3d 550, 552–53 (7th Cir. 2014). Likewise, a burning sensation of the hands is not irreparable harm. *Compare Williams v. Department of Corrections,* 208 F.3d 681, 682 (8th Cir. 2000) (affirming dismissal on screening of deliberate indifference claim where only ill-effect from delay in treatment was burning sensation for 10 hours). District courts in the Seventh Circuit frequently find that, absent extenuating circumstances, a skin irritation or rash does not rise to the level of an objectively serious medical need. *See, e.g.*, *Jones v. Dittman*, Case No. 17 CV 0854, 2020 WL 224341, at *4 (W.D. Wis. Jan. 15, 2020) (holding that bug bites do not rise to the level of an objectively serious need); *Robinson v. Milwaukee Secure Detention Facility*, No. 15 CV 0263, 2016 WL 3620770, at *2 (E.D. Wis., June 29, 2016); *Holden v. Knight*, No. 15 CV 0432, 2016 WL 696088, at *3 (N.D. Ind., Feb. 22, 2016) ("It does not appear as though [plaintiff's] skin rash, which is allegedly itchy and has 'hot spots' can be considered an objectively serious medical condition. Typically, without more, skin rashes are not."); *Smith v. Schwartz*, No. 10 CV 0721, 2011 WL 2115831, at *3 (S.D. Ill. May 26, 2011) (holding plaintiff's allegations that "he suffered chronic itching, athlete's foot], chafing, peeling skin, and a painful, infected rash on his buttocks due to his inability to shower and clean his cell ... do not show a serious medical

condition"). Even assuming the burning sensation is more than a *de minimis* injury, it is fully and properly compensable through a monetary award.

### c. The balance of hardships weighs against permanent injunctive relief.

Plaintiff seeks an injunction ordering Cook County "to make the necessary architectural modifications at the Cermak ramp to comply with the ADA." (Pl.'s Mot., ECF No. 72 at 6.) Because Plaintiff is asking the Court to order Cook County to perform an affirmative act, as opposed to refrain from doing something, Plaintiff is seeking a mandatory injunction.

Mandatory injunctions are "rarely issued," and not issued unless "upon the clearest equitable grounds." *Graham v. Med. Mut.*, 130 F.3d 293, 295 (7th Cir. 1997). A plaintiff's requirement to show that the balance of hardships warrants equitable relief "takes on heightened importance" when a plaintiff requests a mandatory injunction. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011). A mandatory injunction imposes significant burdens on the defendant and "requires careful consideration of the intrusiveness of the ordered act," as well as the difficulties that may arise in supervising compliance with the Court's order. *Id.*

The balance of hardships weighs more heavily on Cook County if a permanent injunction is entered than it does on Plaintiff if an injunction is not entered. Despite Plaintiff's allegations, the East RTU ramp is not a major obstacle to those with mobility disabilities. As discussed above, to the extent the ramp does not comply with ADA standards, the violations are relatively minor, and no class member has demonstrated any injury or denial of services at the CCDOC because of the condition of the ramp, and accommodations are in place to push detainees up and down the ramp should they require assistance. Cook County has already begun the process of assessing and renovating ADA non-compliance and accessibility features throughout CCDOC, so an order mandating the ramp to be fixed provides no benefit to the proposed putative class members.

On the other hand, the entry of a permanent injunction would place the Court in the role of general contractor overseeing renovation of the ramp. This additional oversight and involvement with compliance based on the terms of an injunction would impose additional costs on the planned extensive upgrade project, take time away from completing that project on an expedited basis, and interfere with the management of the CCDOC.

This Court's analysis of the balance of hardships is governed by the Supreme Court's decisions in *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Turner v. Safley*, 482 U.S. 78 (1987). It is well-established that jail officials are entitled to a great deal of deference when addressing the day-to-day operations of correctional institutions. *See Bell*, 441 U.S. at 548 (stating that "judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial"); *Turner*, 482 U.S. at 84–85 (stating that courts are "ill equipped" to deal with correctional administration and that running a correctional facility "is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government").

Courts may not engage in "an impermissible substitution of its view on the proper administration of [a jail] for that of the experienced administrators of that facility." *Block v. Rutherford*, 468 U.S. 576, 589 (1984). Cook County is already in the process of remediating the East RTU ramp features, as well as those of the entire facility, over the next several years. This Court should allow the administration of this project to continue as planned, without unnecessary judicial oversight.

Plaintiff has failed to meet his burden of showing the balance of hardships weighs in favor of a mandatory permanent injunction, and his motion should be denied.

### d. The public interest would be disserved by a permanent injunction.

"Courts must give substantial deference to the professional judgment of [jail] administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Nigl v. Litscher*, 940 F.3d 329, 334 (7th Cir. 2019). If the Court were to enter a permanent injunction, the public interest would be harmed by taking this decision out of the public's hands. Indeed, Plaintiff himself acknowledges that "increasing accessibility in Cook County facilities is 'an absolute priority' for Cook County." (Pl.'s Mot., ECF No. 72 at ¶ 14, internal citations omitted.)

The decisions involved with remediation of the East RTU ramp issues, and the best course to take to reach that goal, are best made by elected officials who are accountable to the public, as well as the qualified and educated County employees who are appointed by them, such as Eric Davis with Capital Planning. (Ex. A.) The renovation of the ramp calls for the use of public money from taxpayers, which the County Board is elected to spend. The budget allocation, design, and construction of the facilities will be implemented through a predetermined process that is in the public interest, as specifically outlined in RFQ No. 2415-02093.[3] The County Board is elected to operate in the public interest. An order from the Court outside that democratic process would subvert the public interest.

### IV. Plaintiff, Now in Custody of IDOC, Lacks Standing to Seek a Permanent Injunction.

Finally, Plaintiff's Motion also cannot succeed because he has no standing to move for injunctive relief pursuant to his transfer from CCDOC custody into IDOC custody.

---

[3] *See* Exhibit 1 to Declaration of Eric Davis, Defendants' Exhibit A, RFQ 2415-02093.

Standing is grounded in Article III of the U.S. Constitution, and addresses whether or not there is an actual case or controversy for the courts to resolve. *Lehn v. Holmes*, 364 F.3d 862, 870 (7th Cir. 2004). To establish Article III standing, a plaintiff must show: 1) he has suffered an injury in fact that is a) concrete and particularized, and b) actual and imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* (citing *Friends of the Earth, Inc., v Laidlaw Environ. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)).

A plaintiff is entitled to injunctive relief only if he has a personal stake in the outcome of the litigation and must also show that he has sustained or is in immediate danger of sustaining direct injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 111-12 (1983). Evidence of past wrongs is insufficient to merit equitable relief. *Id.*; *see also Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000) ("past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects").

The Seventh Circuit and sister courts in this district have repeatedly found that once an incarcerated individual is released from or transferred out of the specific correctional institution where an alleged injury took place, injunctive relief is no longer available as a remedy for that plaintiff. *See, e.g., Lehn*, 364 F.3d at 871 (recognizing "the uncontroversial proposition that when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot"); *Henderson v. Sheahan*, 196 F.3d 839, 843 n.1 (7th Cir. 1999) (noting that plaintiff's "subsequent transfer to a state prison facility mooted his claims for declaratory and injunctive relief" based on claims related to his exposure to secondhand smoke while housed at CCJ); *Stewart v. McGinnis*, 5 F.3d 1031,

1037-39 (7th Cir. 1993) (prisoner who had been transferred to another prison no longer had standing to seek declaratory or injunctive relief for alleged due process violations); *Arreola v. Choudry*, 03-cv-2854, 2007 WL 9776652, at *10-14 (N.D. Ill. Jan. 30, 2007) (granting summary judgment for defendants on plaintiff's claim for injunctive relief against CCJ because plaintiff was no longer incarcerated at CCJ, there was no basis other than speculation that plaintiff would be returned to CCJ, the potential class the plaintiff was seeking to represent had not yet been certified, and plaintiff therefore lacked standing for injunctive relief); *Lindell v. Pollard*, 13-C-0759, 2015 WL 5098738, at *35 (E.D. Wis. Aug. 31, 2015) (citing *Maddox v. Love*, 566 F.3d 709, 716 (7th Cir. 2011), and stating that plaintiff's "requests for injunctive and declaratory relief are now moot" because he is no longer housed at the state correctional facility whose regulation he was challenging).

Seventh Circuit precedent establishes that Plaintiff's plea for injunctive relief cannot be allowed to proceed, as he is no longer in the custody of CCDOC. On September 26, 2023, Plaintiff was transferred to the Taylorville Correctional Center, therefore he is now in IDOC custody. Accordingly, Plaintiff has failed to demonstrate that he is entitled to equitable relief, and his motion should be denied. *See also, e.g., Knox v. McGinnis*, 998 F.2d 1405, 1413-25 (7th Cir. 1993) (prisoner released from administrative segregation lacked standing to seek injunction barring prison officials from violating his eighth amendment rights); *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991) (rejecting as moot plaintiffs' request for declaratory and injunctive relief related to alleged infringement of their first amendment right because they were no longer in Dixon Correctional Center); *Dickey v. Harrington*, 14-cv-1024, 2014 WL 5293560, at *19 (S.D. Ill. Oct 16, 2014) (rejecting plaintiff's request for injunctive relief as moot because he was no longer incarcerated at the location where the alleged violations of his civil rights took place); *Shatner v.*

*Atchison*, 13-cv-599, 2013 WL 3771541, at *8-9 (S.D. Ill. July 17, 2013) (stating that "[w]hen prison inmates challenge prison practices, their equitable claims are moot once they move to another prison that does not apply those practices"); *Hildreth v. Cook County*, 08-cv-3506, 2010 WL 1656810, at *6 (N.D. Ill. Apr. 23, 2010) (claim for injunctive relief is moot because plaintiff is no longer incarcerated at CCDOC; *Jenkins v. Velasco*, 94-cv-7391, 1995 WL 765315, at *10 (N.D. Ill. 1995) (plaintiff's claim for "injunctive relief is moot because he is no longer incarcerated at the Cook County Jail and does not allege that he is likely to return there").

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that Plaintiff's Motion for Permanent Injunctive Relief be denied.

WHEREFORE, Defendants, COOK COUNTY SHERIFF THOMAS DART, and COOK COUNTY, a body politic and corporate, respectfully request that this Court enter an order denying Plaintiff's Motion for Permanent Injunctive Relief, and granting Defendants any such relief as this court deems reasonable and just.

Respectfully Submitted,

By:     */s/ Zachary G. Stillman*
        Zachary G. Stillman, One of the
        Attorneys for Defendants

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
Zachary G. Stillman (ARDC # 6342749)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
zstillman@devoreradunsky.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that **Defendants' Response in Opposition to Plaintiff's Motion for Permanent Injunctive Relief** was filed on May 24, 2024, with the Northern District of Illinois ECF System, serving a copy to all parties.

*/s/ Zachary Stillman*
Zachary Stillman
