

Memorandum

Cook County Sheriff's Office
Department of Corrections
ADA Compliance
2700 S. California Ave
Chicago, Illinois 60608
Phone: 773-674-7768

**To:** RTU and Cermak Staff members
**From:** Sabrina Rivero-Canchola, ADA Compliance Officer
**Subject:** Roll Call memo
**Date:** December 22, 2023

## **Please read at five consecutive rolls calls**

The CCSO is committed to complying with the Americans with Disabilities Act. In accordance with this commitment, in March of 2015 the CCSO issued Policy 148 titled Communication and Interaction with Individuals with Disabilities. Pursuant to that order, CCSO members must provide assistance to wheelchair-using subjects who are in CCSO custody. Assistance includes, but is not limited to, pushing wheelchair using detainees up and down ramps and through corridors of the DOC, as well as escorting them to an accessible bathroom when needed. CCSO staff members shall not wait for wheelchair detainees to ask for assistance before pushing wheelchairs. Pushing wheelchairs is part of inmate movement and not the responsibility of medical staff. If a wheelchair-using detainee refuses assistance from CCSO staff, the refusal must be documented in an incident report or information only report in CCOMs. Refusals of assistance must be documented on the day of the incident. If you have questions regarding this policy, you may address them through your chair of command or email the ADA Compliance officer at CCSO.ADA@ccsheriff.org.

Signature: *Sabrina Rivero-Canchola*



**Policy
148**

**Cook County Department of Corrections**
Custody Manual

# Communication and Interaction with Individuals with Disabilities

### 148.1 PURPOSE AND SCOPE
This policy provides guidance to members of the Cook County Sheriff's Office when communicating and interacting with individuals with disabilities, including but not limited to those who are deaf or hearing impaired; have impaired speech; are vision impaired or blind; or have mobility disabilities.

### 148.1.1 ISSUANCE/EFFECTIVE DATE
This policy was re-issued on Dec. 31, 2018 and shall become effective upon issuance (operational updates).

### 148.1.2 DEFINITIONS
Definitions related to this policy include:

**Auxiliary aids** - Tools used to communicate with people who have a disability or impairment. They include, but are not limited to, the use of gestures or visual aids to supplement oral communication; a notepad and pen or pencil to exchange written notes; a computer or typewriter; an assistive listening system or device to amplify sound; a teletypewriter (TTY) or videophones (video relay service or VRS); taped text; qualified readers; or a qualified interpreter.

**Disability or impairment** - A physical or mental impairment that substantially limits a major life activity, including hearing or seeing, regardless of whether the disabled person uses assistive or adaptive devices or auxiliary aids. Individuals who wear ordinary eyeglasses or contact lenses are not considered to have a disability (42 USC § 12102).

**Effective communication** - Written or spoken communication that is as clear and understandable to subjects with disabilities as it is for those without disabilities.

**Mobility impairment** - Refers to the inability of an individual to use one or more of his/her extremities, or a lack of strength to walk, grasp or lift objects. The use of a wheelchair, crutches or a walker may be utilized to aid in mobility.

**Qualified interpreter** - A person who is able to interpret effectively, accurately and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include oral interpreters, transliterators, sign language interpreters and intermediary interpreters. Qualified interpreters shall have a valid Illinois license to practice interpreting for the deaf (225 ILCS 443/15), unless they are exempt under 225 ILCS 443/25.

**Reasonable modification** - A change in a policy, practice or procedure when the change is necessary to ensure equal access to any person with a qualified disability.

**Service animal** - A dog trained to perform specific tasks for people with disabilities. When attempting to identify a service animal, sworn members are only allowed to ask two questions

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

Communication and Interaction with
Individuals with Disabilities - 1

# Cook County Department of Corrections
Custody Manual

*Communication and Interaction with Individuals with Disabilities*

of dog owners. A dog owner's answers to the following questions must be taken at face value, regardless of whether the dog's service status is legitimate:

(a) Is the dog required because of a disability?

(b) What task or service has the dog been trained to do?

## 148.2 POLICY

It is the policy of the Cook County Sheriff's Office to reasonably ensure that individuals with disabilities, including but not limited to victims, witnesses, suspects or subjects (i.e., arrestees, detainees, new inmates or inmates), have equal access to services, programs and activities that are provided by the Sheriff's Office. Members shall make efforts to communicate effectively with individuals with disabilities and adhere to all guidelines set forth by their respective departments/units. The Sheriff's Office will not discriminate against individuals or deny them access to reasonable accommodations, services, activities or programs based upon disabilities for which they are otherwise qualified, unless there are articulable safety/security risks.

## 148.3 AMERICANS WITH DISABILITIES ACT (ADA) COORDINATOR

The responsibilities of the ADA Compliance Officer, in regard to the communication and interaction with people with disabilities, include:

(a) Developing reports or new procedures, or recommending reasonable modifications to this policy.

(b) Acting as a liaison to local disability advocacy groups or other disability groups regarding access to services, programs and activities provided by the Sheriff's Office.

(c) Developing procedures that will enable members to access auxiliary aids or services, including those concerning qualified interpreters or an approved interpretation service, and ensuring those procedures are available to all members.

(d) Ensuring a prompt and equitable response to complaints and inquiries regarding discrimination in accessing services, programs and activities that are provided by the Sheriff's Office.

## 148.4 GENERAL CONSIDERATIONS

Because the nature of any contact may vary substantially from one situation to the next, members shall consider all information reasonably available to them when determining how to communicate with an individual with a disability. Members shall carefully balance all known factors in an effort to reasonably ensure individuals with disabilities have equal access to services, programs and activities that are provided by the Sheriff's Office. These factors may include but are not limited to the following:

(a) Members should not always assume that effective communication is being achieved. The fact that an individual appears to be nodding in agreement does not always mean he/she completely understands the message. When there is any doubt, a member should ask the individual to communicate back or otherwise demonstrate his/her understanding, and properly document indications of understanding;

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

# Cook County Department of Corrections
Custody Manual

*Communication and Interaction with Individuals with Disabilities*

    (b)    The nature of the disability (e.g., hearing impaired vs. mobility impaired);

    (c)    The nature of the contact (e.g., emergency vs. non-emergency, custodial vs. consensual contact); and

    (d)    The availability of auxiliary aids. The fact that a particular aid is not available does not eliminate the obligation to reasonably ensure access. However, in an emergency, availability may factor into the type of aid used.

## 148.5   INITIAL AND IMMEDIATE CONSIDERATIONS

Recognizing that various encounters may be potentially volatile and/or emotionally charged, members should remain alert to the possibility of communication problems.

Members shall provide reasonable accommodations for individuals who have mobility disabilities, including subjects who require appropriate means of transportation to or from court hearings.

Members shall exercise special care in the use of all gestures and verbal and written communication. This is to minimize initial confusion and misunderstanding when dealing with any individual with known or suspected disabilities. In a non-emergency situation, and when a member knows or suspects an individual requires assistance to effectively communicate, the member shall attempt to identify the individual's choice of auxiliary aid or service. The individual's preferred communication method must be honored unless another effective method of communication exists under the circumstances (28 CFR 35.160). Factors to consider when determining whether an alternative method is effective include:

    (a)    The methods of communication usually used by the individual;

    (b)    The nature, length and complexity of the communication involved; and

    (c)    The context of the communication.

In emergency situations involving an imminent threat to the safety or welfare of any individual, members may use whatever auxiliary aids and services reasonably appear effective under the circumstances. This may include, for example, exchanging written notes or using the services of a person who knows sign language but is not a qualified interpreter, even if the individual who is deaf or hearing impaired would prefer a qualified sign language interpreter, or another appropriate auxiliary aid or approved interpretation service. Once the emergency has ended, the continued method of communication should be reconsidered. The member should inquire as to the individual's preference and give primary consideration to that preference.

If an individual who is deaf, hearing impaired or has impaired speech must be handcuffed while in the custody of the Sheriff's Office, consideration shall be given, safety and security permitting, to placing the handcuffs in the front of the body to facilitate communication using sign language or writing. However, certain situations may warrant removal of handcuffs to facilitate effective communication. If security and safety concerns exist, the sworn member must notify a supervisor and the concerns should be documented.

Unless there are security or safety concerns, avoid taking or grabbing any visually impaired person's arm to lead him/her in a particular direction. If needed, members shall ask clearly and

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

# Cook County Department of Corrections
Custody Manual

*Communication and Interaction with Individuals with Disabilities*

distinctly for the subject to take the arm of a member for guidance. Handcuff the subject in front unless there are security or safety concerns. If security and safety concerns exist, the member must notify a supervisor.

## 148.6  TYPES OF ASSISTANCE AVAILABLE
Members shall never refuse to assist an individual with disabilities who is requesting assistance, though it is understood that assistance may take different forms, and may not always be the preferred method of assistance for the individual with the disability. Through a variety of services, the Sheriff's Office will make every reasonable effort to provide equal access and timely assistance to individuals with disabilities. Auxiliary aids or services may include but are not limited to:

### 148.6.1  AUDIO RECORDING AND ENLARGED PRINT
The Sheriff's Office may develop audio recordings to assist blind or visually impaired individuals in accessing important information. If such a recording is not available, a member may read aloud from the appropriate form (e.g., a personnel complaint form) or provide a form with enlarged print.

### 148.6.2  QUALIFIED INTERPRETERS
If the individual to be interviewed normally relies on sign language or speech reading (lip- reading) to understand what others are saying, a qualified interpreter may be needed in lengthy or complex transactions (e.g., interviewing a victim, witness, suspect or subject).

The qualified interpreter should not be a person with an interest in the case or the investigation.

A qualified interpreter may be required to establish the accuracy and trustworthiness of the interpretation in a court proceeding.

Qualified interpreters should be:

    (a)    Available within a reasonable amount of time.

    (b)    Experienced in providing interpreter services related to law enforcement matters.

    (c)    Familiar with the use of VRS or other video remote interpreting services.

    (d)    Certified in either American Sign Language (ASL) or Signed English (SE).

    (e)    Able to understand and adhere to the interpreter role without deviating into other roles such as counsel or legal adviser.

    (f)    Knowledgeable of the ethical issues involved when providing interpreter services.

Members should use Sheriff's Office-approved procedures to request a qualified interpreter at the earliest reasonable opportunity. No individual who is disabled shall be required to provide his/her own interpreter (28 CFR 35.160).

### 148.6.3  TTY/TDD AND VRS SERVICES
In situations where an individual without a disability would have access to a telephone (e.g., booking or attorney contact), members must also provide those who are deaf, hearing impaired or

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of
Corrections

# Cook County Department of Corrections
Custody Manual

*Communication and Interaction with Individuals with Disabilities*

have impaired speech the opportunity to place calls using an available TTY/TDD or VRS. This will be done in accordance with any applicable guidelines specific to the member's department or unit.

Members shall provide additional time, as needed, for effective communication due to the slower nature of TTY/TDD or VRS communications.

The Sheriff's Office will accept all TTY/TDD and VRS calls placed by those who are deaf or hearing impaired and received via a telecommunications relay service (28 CFR 35.162). Relay services translate verbatim, so the conversation must be conducted as if speaking directly to the caller.

Members shall report any damaged or nonoperational devices to the ADA Compliance Officer via email at ccso.ada@cookcountyil.gov.

## 148.6.4   FAMILY AND FRIENDS
While family or friends may offer to assist with interpretation, members should carefully consider the circumstances before relying on such individuals. The nature of the contact and relationship between the individual with the disability and the person offering services must be carefully considered (e.g., victim/suspect).

Children shall not be relied upon except in emergency or critical situations when there is no qualified interpreter reasonably available. Adults may be relied upon when (28 CFR 35.160):

    (a)    There is an emergency or critical situation and there is no qualified interpreter reasonably available.

    (b)    The individual with the disability requests that the adult interpret or facilitate communication and the adult agrees to provide such assistance, and reliance on that adult for such assistance is reasonable under the circumstances.

## 148.6.5   FIELD ENFORCEMENT
Field enforcement will generally include such contacts as traffic stops, pedestrian stops, serving warrants and restraining orders, crowd/traffic control and other routine field contacts that may involve individuals with disabilities. The scope and nature of these activities and contacts will inevitably vary.

The Sheriff's Office recognizes that it would be virtually impossible to provide immediate access to complete communication services to every member. Members and/or supervisors must assess each situation and consider the length, complexity and importance of the communication, as well as the individual's preferred method of communication, when determining the type of resources to use and whether a qualified interpreter is needed.

Although not every situation can be addressed in this policy, it is important that members are able to effectively communicate the reason for a contact, the need for information and the meaning or consequences of any enforcement action. For example, it would be meaningless to verbally request consent to search if the sworn member is unable to effectively communicate with an individual who is deaf or hearing impaired and requires communications assistance.

# Cook County Department of Corrections
Custody Manual

*Communication and Interaction with Individuals with Disabilities*

Individuals who are arrested and are assisted by service animals should be permitted to make arrangements for the care of such animals prior to transport. If no arrangements can be made, animal control shall be contacted. As appropriate, refer to the Animal Control Policy, the Service Animals Policy and/or any other applicable department directives.

Individuals who are arrested with mobility disabilities shall be permitted to maintain the use of their auxiliary aids unless safety and security are compromised. If the individual is in the custody of the Department of Corrections, Cermak shall be notified that the individual possesses an auxiliary aid in order for a medical alert to be added into the jail management system.

## 148.6.6   FIELD RESOURCES
Depending on the circumstances and disability, communication methods that may be sufficient for transactions (e.g., checking a license, giving directions to a location) or for urgent situations (e.g., responding to a violent crime in progress) may include:

    (a)   Hand gestures or visual aids.

    (b)   Exchanging written notes or communications.

    (c)   Facing an individual who can speech read (lip-read) and speaking slowly and clearly.

    (d)   Using a computer, word processing, personal communication device or similar device to exchange texts or notes.

    (e)   Slowly and clearly speaking or reading simple terms to individuals who have a hearing, visual, speech or mental impairment.

Members should be aware that these techniques may not provide effective communication as required by law and this policy depending on the circumstances.

## 148.6.7   CUSTODIAL INTERROGATIONS
In an effort to ensure that the rights of individuals who are deaf, hearing impaired or have speech impairment are protected during a custodial interrogation, the Sheriff's Office should provide interpretation and/or translation assistance as outlined in the Limited English Proficiency Services Policy and/or any applicable department directive before beginning an interrogation.

If a live interpreter is not available, the use of a video remote interpreting service should be considered where appropriate. Miranda warnings shall be provided to suspects who are deaf or hearing impaired by the use of a video remote interpreting service, through a qualified interpreter or by providing a written Miranda form.

In order to ensure that communications during custodial investigations are accurately documented and are admissible as evidence, interrogations should be recorded whenever reasonably possible. As appropriate, referthe applicable policies and procedures.

## 148.6.8   ARRESTS, BOOKINGS, COURT REMANDS AND COURT APPEARANCES
Absent specific and articulable safety or security concerns, members shall provide assistance to wheelchair-bound subjects who are in Sheriff's Office custody. This includes but is not limited to:

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of
Corrections

# Cook County Department of Corrections
Custody Manual

## Communication and Interaction with Individuals with Disabilities

    (a)    Pushing subjects up and down ramps and through corridors in Sheriff's Office facilities; and

    (b)    Upon request, escorting any subject who is unable to use a provided restroom or commode chair to the nearest ADA accessible restroom.

Members shall document any refusal of assistance by a wheelchair-bound subject.

When booked, under a court remand or required to appear in court at an outlying court facility, a subject with a mobility disability who requires the use of a wheelchair shall be:

    (a)    Transported in a lift-equipped and ADA compliant Sheriff's Office vehicle;

    (b)    Safely secured within the vehicle;

    (c)    Placed in an accessible holding cell; and/or

    (d)    Placed in a holding cell with a commode chair, if the subject is able to use a commode chair.

Arrest and booking is often conducted under circumstances in which time, safety, security and other issues are a concern. When arresting or booking a person with a disability, members shall, where practicable under the circumstances, make every effort to comply with the provisions in this policy.

If a subject with a speech or hearing disability is arrested or booked, the arresting sworn member shall use Sheriff's Office-approved procedures to provide a qualified interpreter at the place of arrest or booking as soon as reasonably practicable, unless the subject indicates that he/she prefers a different auxiliary aid or service, or the sworn member reasonably determines another effective method of communication exists under the circumstances.

When gathering information during the booking process, members should remain alert to the impediments that often exist when communicating with those who are deaf or hearing impaired, who have impaired speech, are vision impaired or blind, or have other disabilities.

In the interests of the subject's health and welfare, the safety and security of the facility, and to protect individual rights, it is important that accurate medical screening and booking information are obtained. Any subject who is remanded to or in the custody of the Department of Corrections shall be sent to Cermak Health Services of Cook County for a medical screening as soon as practicable for verification of the subject's health condition and to ensure appropriate medical alerts are added into the jail management system.

If necessary, members should seek the assistance of a qualified interpreter whenever there is concern that accurate information cannot be obtained or that booking instructions may not be properly understood by the individual. Individuals who require and possess personally owned communication aids (e.g., hearing aids, cochlear processors) should be permitted to retain them while in custody.

If a subject is having difficulty understanding or communicating, members shall seek assistance from a supervisor and/or the ADA Compliance Officer via email at ccso.ada@cookcountyil.gov.

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

# Cook County Department of Corrections
Custody Manual

*Communication and Interaction with Individuals with Disabilities*

Members shall act professionally at all times during interactions with subjects with disabilities.

Coordinating with the respective department heads, the ADA Compliance Officer shall create signs providing notice to subjects that they must inform members when they require assistance. Members must ensure these signs are posted in conspicuous areas, including but not limited to bullpens/living units; that the signs remain on the wall; and the signs are visible to subjects.

## 148.6.9  PUBLIC COMPLAINTS AND INMATE GRIEVANCES

The Sheriff's Office shall ensure that any individual with disabilities who wishes to file a public complaint or inmate grievance regarding any Sheriff's Office member is able to do so. As appropriate, the Sheriff's Office may provide a qualified interpreter or forms in enlarged print. All public complaints and inmate grievances received shall be forwarded to the ADA Compliance Officer.

Inquiries into such complaints shall be handled in accordance with the Sheriff's Feedback Initiative Policy and/or the Inmate Grievance Policy. Qualified interpreters used during complaint inquiries should not be Sheriff's Office members.

## 148.6.10  TRAINING

To ensure appropriate training for members who may have contact with individuals with disabilities, the Training Academy shall provide training that includes:

Awareness and understanding of this policy and related procedures, related forms and available resources.

Procedures for accessing qualified interpreters and other available resources.

Working with in-person and telephone interpreters and related equipment.

Procedures for providing assistance to an individual with a disability.

Emergency call-takers shall be trained in the use of TTY/TDD and VRS/VRI equipment protocols for communicating with individuals who are deaf, hearing impaired or who have speech impairments. Such training and information should include but is not limited to:

(a)    The requirements of the ADA and Section 504 of the Rehabilitation Act for telephone emergency service providers.

(b)    ASL syntax and accepted abbreviations.

(c)    Practical instruction on identifying and processing TTY or TDD calls, including the importance of recognizing silent TTY or TDD calls, using proper syntax, abbreviations and protocol when responding to TTY or TDD calls.

(d)    Hands-on experience in TTY and TDD communications, including identification of TTY or TDD tones. Training should be mandatory for all Communications Center members who may have contact with individuals from the public who are deaf, hearing impaired or have impaired speech. Refresher training should occur every six months.

The Executive Director of the Training Academy or the authorized designee shall be responsible for ensuring new members receive training related to interacting with individuals with disabilities.

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of
Corrections

## Cook County Department of Corrections
Custody Manual

*Communication and Interaction with Individuals with Disabilities*

---

Those who may have contact with such individuals should receive refresher training at least once every two years thereafter. The Executive Director of the Training Academy or the authorized designee shall maintain records of all training provided, and will retain a copy in each member's training file in accordance with established records retention schedules.

Copyright Lexipol, LLC 2019/03/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections