Page 1

1        IN THE UNITED STATES DISTRICT COURT

          FOR THE NORTHERN DISTRICT OF ILLINOIS

2              EASTERN DIVISION

3

4  EUGENE WESTMORELAND,      )

   individually and for a class,  )

5                    )

          Plaintiff,    )

6                    )

     v.             )  No. 1:23-cv-01851

7                    )

   THOMAS DART, SHERIFF OF COOK   )

8  COUNTY, and COOK COUNTY,     )

   ILLINOIS,               )

9                    )

          Defendants.   )

10 _____)

11

12

13    The deposition of EFFERSON YARNELL WILLIAMS,

14  taken on behalf of the defendants in the above-

15  entitled case before Debra L. Kleszyk, a Certified

16  Shorthand Reporter within and for the State of

17  Illinois, taken remotely via videoconference on

18  April 25, 2024, commencing at 11:16 a.m., pursuant

19  to the Federal Rules of Civil Procedure.  The

20  witness was located at Cook County Correctional

21  Center, 2700 South California Avenue, Chicago,

22  Illinois.

23

24

25

Page 2

APPEARANCES

1
2
3    THOMAS G. MORRISSEY LTD.
     BY:  MR. PATRICK W. MORRISSEY
4    10257 South Western Avenue
     Chicago, Illinois 60643
5    (773) 233-7900
     pwm@morrisseylawchicago.com
6
         Appeared via videoconference on behalf of
7        the plaintiff
8
9
     DeVORE RADUNSKY, LLC
10   BY:  MR. ZACHARY STILLMAN
     230 West Monroe Street, Suite 230
11   Chicago, Illinois 60606
     (312) 300-4479
12   zstillman@devoreradunsky.com
13       Appeared via videoconference on behalf of
         the defendants
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

INDEX

1
2
3    WITNESS:  EFFERSON WILLIAMS
4    EXAMINATION                      PAGE
5      By Mr. Stillman          5, 48
6      By Mr. Morrissey         44, 52
7
8
9            INDEX OF EXHIBITS
10   EXHIBIT     DESCRIPTION            PAGE
11   Exhibit 1    photograph        27
12   Exhibit 2    declaration       31
13   Exhibit 3    grievance         34
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1        THE COURT REPORTER:  My name is
2    Debbie Kleszyk.  I am an Illinois Certified
3    Shorthand Reporter.
4            The parties participating in this
5    deposition acknowledge that I am not physically
6    present in the room with the witness and that I
7    will be reporting this deposition remotely.  At
8    this time I ask counsel to identify yourself and
9    then indicate your stipulation to waive any
10   objections to the validity of the oath adminis-
11   tered remotely, starting with the noticing
12   attorney.
13       MR. STILLMAN:  Zachary Stillman with
14   DeVore Radunsky for defendants, Sheriff and
15   County.  And we waive any objections.
16       MR. MORRISSEY:  And my name is
17   Pat Morrissey.  I represent Mr. Westmoreland, and
18   I also represent Mr. Williams in this deposition.
19   I stipulate.
20            (The witness was duly
21             sworn.)
22       EFFERSON YARNELL WILLIAMS,
23   called as a witness herein, having been
24   first duly sworn, was examined and
25   testified as follows:

Page 5

EXAMINATION

1
2    BY MR. STILLMAN:
3    Q.   Okay.  Mr. Williams, have you ever
4    given a deposition before?
5    A.   No.
6    Q.   All right.  So, before we start, can
7    you please state your full name and spell it for
8    the record?
9    A.   My name is Efferson Yarnell Williams.
10   Q.   And can you spell it for the record?
11   A.   You said --
12   Q.   Spell your name.
13   A.   -- spell it?
14   Q.   Yeah.
15   A.   I'm sorry.  Efferson, E-f-f-e-r-s-o-n.
16   Yarnell, Y-a-r-n-e-l-l.  Williams,
17   W-i-l-l-i-a-m-s.
18   Q.   So just to make things easier on the
19   court reporter here, we're going to go over a
20   couple rules.
21            So just, first, let's try not to
22   speak over one another.  If one of us is speaking,
23   we'll just wait until the other is done just so
24   that nothing is overlapping in the transcript.
25            Next, any answers to questions

2 (Pages 2 - 5)

1 should be verbal. And then if you can kind of try
2 to refrain from gesturing as much as you can
3 because that won't be clear in the record.
4     Third, if you don't understand any
5 of my questions, please absolutely let me know and
6 I can try to rephrase them so you do understand
7 it. If you answer, I'm going to assume that
8 you understood the question.
9     A.   Yes.
10     Q.   And if there's anything you don't
11 recall, don't try to guess, just say that you
12 don't recall.
13         And like Pat said before, if you
14 need a break, just let me know. We can figure it
15 out.
16     A.   Yeah.
17     Q.   All right. So do you have any other
18 -- do you go by any other names?
19     A.   No.
20     Q.   Well, I mean, Efferson Williams is
21 your government name. Does anyone else call you
22 anything else behind bars?
23     A.   No. You said like anywhere else, like
24 in the jail?
25     Q.   Yeah. Like, in the jail they call you

1 anything else.
2     A.   They just call me like A-1 or
3 something like that, or Alfie. Alfie, A-l-f-i-e.
4     Q.   And what is your date of birth?
5     A.   April 10, 1981.
6     Q.   And are you married?
7     A.   No.
8     MR. STILLMAN: And then off the record
9 for a minute.
10         (A discussion was held off
11             the record.)
12     MR. STILLMAN: All right. And back on
13 the record.
14 BY MR. STILLMAN:
15     Q.   What did you do to prepare for your
16 deposition today?
17     A.   What did I do to prepare for it?
18     Q.   Yes.
19     A.   And can you break down the word
20 "deposition" for me, please?
21     Q.   So right now this is your depo -- This
22 is a deposition right now you're in where I'm
23 asking you questions. So what did you do today to
24 prepare? Did you look at anything? Did you talk
25 to anyone?

1     A.   Yes. I had -- I had -- I made sure
2 that I came when I came. I did -- when I talked
3 to my lawyer, we just went -- and we just --
4     MR. MORRISSEY: Sorry, Mr. Williams,
5 you can say what you looked at but don't say what
6 we've spoken about. All right? So you can keep
7 going --
8     THE WITNESS: I just looked at my
9 grievance. Yes. I looked at my grievance and
10 just went over my grievance. That's what I did.
11 BY MR. STILLMAN:
12     Q.   Just -- and all you looked at was your
13 grievance? Anything else?
14     A.   No.
15     Q.   And was there only one grievance you
16 looked at?
17     A.   No. I have -- I have multiple
18 grievances.
19     Q.   Did you look at all of them in
20 preparation for this?
21     A.   I suppose so. I think so. I suppose.
22     Q.   And about when did that meeting with
23 your attorneys happen?
24     A.   I don't know an exact date. To my
25 recall, it was probably like three to four days

1 ago.
2     Q.   Would you say it was longer or shorter
3 than half an hour?
4     A.   Probably like -- probably like a half
5 an hour.
6     Q.   And Pat here is your attorney. Is
7 that correct?
8     A.   Yes.
9     Q.   Have you ever personally reviewed any
10 ADA standards or Cook County jail policies and
11 procedures regarding inmate transport for the
12 jail?
13     A.   You said have I ever proceeded any
14 other --
15     Q.   Sorry. Have you ever -- I'll re-ask
16 it.
17         Have you ever personally reviewed
18 anything, any kind of policies or procedures from
19 the jail that dictate movement of inmates?
20     A.   Movement? So have I --
21     Q.   Yes.
22     A.   -- ever -- did I dictate? Like, I'm
23 trying to figure out what does that mean.
24     Q.   So you know when you're -- like
25 transportation of inmates, you know, when you're

Page 10

1 being moved, say you have an appointment at Cermak
2 and there's an officer with you and they're
3 escorting you --
4    A.  Yes.  Yes.  An officer do escort me,
5 yes.
6    Q.  Have you ever reviewed any of the
7 actual written policies and procedures from the
8 jail regarding, you know --
9    A.  Is it -- is it written anywhere?
10    Q.  There are written policies, yes.
11    A.  But it's not written where you can see
12 them, though.
13    Q.  But so I'm asking you.  Have you ever
14 personally reviewed any?
15    A.  Have I ever seen any physically like
16 on walls or anything?  That's what you're asking?
17    Q.  I'm just asking if you've ever
18 personally reviewed any of these -- any of these
19 types of policies and procedures.
20    A.  No.  Only -- only -- only when I put
21 in the grievance, they --
22    Q.  Okay.  And do you know Detainee
23 Eugene Westmoreland?
24    A.  You said do I know who?
25    Q.  Eugene Westmoreland.

Page 11

1    A.  Do I know him?
2    Q.  Yeah.  Are you familiar with him?
3    A.  No.
4    Q.  Have you heard of the name?
5    A.  I think I -- I don't know.  I never
6 heard the name.
7    Q.  Did you receive any documentation in
8 relation to this deposition, like the subpoena
9 that was, like, notice that you were going to be
10 coming to this deposition today?
11    A.  My lawyer -- my lawyer told me that we
12 was going to have court today.
13    Q.  And are you aware of any of the
14 details of the case that you are being deposed in
15 right now?
16    A.  As far as the ramp?  Is that what
17 you're saying?
18    Q.  It is about the ramp, yeah.  Do you
19 know any of the individual details of Mr. -- of
20 the case or whose case this is or any of the
21 allegations made?
22    A.  No.  I don't know who -- who case this
23 is.  I just know that I had got not a subpoena for
24 court but a letter explaining the situation of the
25 ramp.  But I never got a subpoena for court.

Page 12

1    MR. MORRISSEY:  And, Mr. Williams, I
2 just want to remind you, things we've talked about
3 are privileged.  So just answer his questions
4 without divulging any privileged communication you
5 and I may have had.  Okay?
6    THE WITNESS:  Yes.
7 BY MR. STILLMAN:
8    Q.  And you're housed in the RTU.
9 Correct?
10    A.  Yes.
11    Q.  And in the last ten years have you
12 been convicted of any crimes?
13    A.  No.
14    Q.  When were you first processed at the
15 Cook County jail right now under your current
16 booking number?
17    A.  When I first processed?
18    Q.  Under this booking number, yes.
19    A.  Under this number?  2021.  They say
20 October, but it was September.
21    Q.  So you're -- you've been there about
22 going on three years-ish, a little under three
23 years now?
24    A.  Yes.
25    Q.  Okay.  And you've been housed in the

Page 13

1 RTU your entire time there?
2    A.  Yes.
3    Q.  Have you gone to Cermak for any
4 appointments or medical needs?
5    A.  Yes.
6    Q.  About how often would you say you've
7 gone to Cermak?
8    A.  I went more than -- you said how
9 often?  Every time I have a -- say I have to go to
10 a clinic appointment or either I got to go to ER.
11 So it's like -- sometimes it be probably three
12 times a month or twice a month.
13    Q.  When you -- when you've been taken to
14 Cermak, how would they take you there?
15    A.  They have an officer who transport.
16    Q.  And they would transport you through
17 the basement of the RTU.  Right?
18    A.  They take me up the RTU ramp and down
19 -- up the -- up the Cermak ramp and down the
20 Cermak -- RTU ramp -- no.  They take me up the RTU
21 ramp first and down the Cermak ramp.
22    Q.  But to get to those ramps you would --
23 you would be going through the tunnels and
24 corridors in the basement of Division 8, the RTU.
25 Correct?

4 (Pages 10 - 13)

1    A.   Yeah.  I go to -- through the -- I
2  think it's not so much sort of a basement.  I
3  think it's like the second floor or something.
4  But it led to the basement, I guess.  I don't
5  know.
6    Q.   And would you take the elevators
7  there?
8    A.   To RTU?
9    Q.   Down -- down into the tunnel area or
10  are you already --
11    A.   Yeah.  To the tunnel, yes, I take it
12  'cuz I'm on the third floor, yes.
13    Q.   And you are in a wheelchair.  Correct?
14    A.   Yes.
15    Q.   What -- can you explain a little bit
16  about your medical history, how you -- how you're
17  in a wheelchair?
18    A.   I'm in a wheelchair because I've got
19  -- I got shot.
20    Q.   And when did you get shot?
21    A.   2017.
22    Q.   And where -- where were you shot at?
23  What is the specific injury you have that --
24    A.   I got shot not directly into the
25  spine.  It enlarged -- excuse me -- it enlarged

1  to -- it enlarged to my spine which made me a T-5.
2    Q.   And when you are moving around the
3  jail, how do you tend to propel your chair?
4    A.   I push it myself.
5    Q.   Do you always push it yourself?
6    A.   Yes.
7    Q.   Do you ever have anyone else assist
8  you pushing the chair?
9    A.   Not -- not frequently.  But minor
10  times like.  Since I been here at Cook County,
11  probably like ten.
12    Q.   And who would those -- who would the
13  other people assisting have been on those ten
14  times?
15    A.   Sometimes an inmate and sometimes an
16  officer.
17    Q.   Would you ask other inmates to push
18  your chair?
19    A.   No.  They offer.
20    Q.   Why would they offer?
21    A.   Just because I guess sometimes they'll
22  be wanting to get not put in handcuffs.
23    Q.   And they're not cuffed when they --
24  when they get to push usually.  Isn't that right?
25    A.   No -- yes, sir.  You said they're not

1  cuffed.  Right?
2    Q.   Yeah.  When they get to push chairs,
3  they -- they tend to get the cuffs off.  Right?
4  That's kind of my --
5    A.   Yes.
6    Q.   -- understanding of that.
7    A.   Yes.
8    Q.   And the officers that have pushed you,
9  was that on your request?
10    A.   No.  It became from the ADA request,
11  not mine.
12    Q.   What do you mean by it became an ADA
13  request?
14    A.   They had got notified to make sure
15  that they -- by the ADA, what's her name, I forgot
16  what the name, but the title of the name.  But,
17  yes, that's how.  But prior to that they never
18  pushed me.
19    Q.   And have you ever asked any officer to
20  push you and been denied?
21    A.   Yes.
22    Q.   And what would you do in an instance
23  where you were denied for officers that know you?
24    A.   I wrote a grievance about it.
25    Q.   You wrote -- sorry, what was that

1  about it?
2    A.   I wrote a -- a grievance about it.
3    Q.   Oh, okay.  And would that -- would
4  that have been all you would have done or would
5  you have -- I mean, were you asking officers a lot
6  to -- for assistance while being transported?
7    A.   They -- I mean, they -- with ADA,
8  what's her name, they supposed to assist me.  So I
9  would -- I would felt that they would have known
10  to do it.  Protocols, ADA protocols.
11    Q.   Okay.  And are you aware of any
12  policies, procedures, or rules at the jail that
13  dictate that someone else should be pushing you
14  when transporting from one location to another,
15  whether that's an inmate or an officer or any
16  other party pushing you?
17    A.   No.
18    Q.   Are you aware of any policies,
19  procedures, or rules at the jail that would
20  prevent another detainee from pushing you?
21    A.   You're saying am I aware of that it
22  supposed to be only an inmate -- I mean, a
23  correctional officer to push me or inmate?  Is
24  that --
25    Q.   Yeah.  Let me reword it.

Page 18

1        Are you aware of any policies,
2  procedures, or rules at the jail that say that an
3  inmate, another detainee, cannot push you?
4     A.   No, I've never seen it.
5     Q.   What about the same for an officer
6  cannot push you?
7     A.   Once -- once I filed a grievance, I
8  was acknowledged.
9     Q.   But are you aware of any policies that
10 would forbid an officer or mandate that an
11 officer, either/or?
12    A.   No, there's not.  There's not.  Yes,
13 it's in the manual I think.  It's in the CCDOC
14 manual.
15    Q.   Which?  Which CCDOC manual?
16    A.   They have a booklet that they give
17 out.
18    Q.   Yes.  But are you saying there's a
19 policy or procedure that you know of in there?
20    A.   I can't recall where it's at.
21 Actually, no, it's not even in there I think.
22 It's not even in there.  I can't remember it
23 right.  I can't vividly remember where it's at.
24 But I know I was told that I'm supposed to get
25 assistance going through the jail either going to

Page 19

1  court, up a ramp, down a ramp, yeah.
2     Q.   And who -- do you have any idea who
3  would have informed you of that?
4     A.   Sabrina.
5     Q.   So as we kind of discussed a little
6  bit here, you're familiar with the ramps,
7  corridors, and hallways in the RTU.  Correct?
8     A.   You're saying --
9     Q.   The area where you've -- where you've
10 been transported, you know, like to Cermak and
11 such from -- from the RTU, you're familiar with
12 that area of corridors, ramps, and hallways?
13    A.   Am I familiar with the court orders?
14    Q.   Are you familiar with the areas under
15 Division 8 that you've been transported through to
16 Cermak?
17    A.   Yes.
18    Q.   So you recognize the ramps, corridors,
19 and hallways that --
20    A.   Yes.
21    Q.   -- would be down there more or less?
22    A.   Yes.  I been going through them for
23 almost three years.  So now, yeah.  But not at
24 first, though.
25    Q.   And when was the last time just from

Page 20

1  today that you were down there?
2     A.   Just 2/22 -- I mean 4/22 and 4/23.
3     Q.   And do you recall any ramps under the
4  RTU specifically that you have -- that you were
5  traversing?
6     A.   You said do I recall any other ramps?
7     Q.   Well, any specific ramps under the RTU
8  that you've had difficulties with?
9     A.   There's only -- there's only two ramps
10 that I've noticed.  But it's -- and that's going
11 from -- from RTU to Cermak and Cermak to West --
12 -- oh, the ramps in the court -- going to the
13 court building.
14    Q.   And so there's the court building --
15 like you said, the court building ramp and the
16 Cermak ramp.  Have you had trouble with both of
17 those?
18    A.   Yes.
19    Q.   Any other ramps that you can think of
20 that you've had difficulties with?
21    A.   Going into -- it's a ramp going up and
22 down in Stroger's once we get down into --
23    Q.   Okay.  So I'm just going to stop you
24 there.  So we don't need to go into Stroger.
25        MR. MORRISSEY:  Hold up.  Hold up.

Page 21

1  Mr. Stillman, you can't cut him off when he's
2  answering.  So I think you should --
3        MR. STILLMAN:  Okay.
4        MR. MORRISSEY:  Can you finish,
5  Mr. Williams?
6        THE WITNESS:  Yes.  Up and down
7  Stroger's ramp through the -- through the back.
8  It's a -- it's a ramp that's there, a steep ramp,
9  going and coming from Stroger's.
10 BY MR. STILLMAN:
11    Q.   Okay.  And do you recall there being
12 handrails on either of the -- well, let's focus on
13 the Cermak ramp, I guess.  Do you recall there
14 being handrails on the Cermak ramp?
15    A.   Yes.  But not close enough for us to
16 use.
17    Q.   And when you say "close enough for us
18 to use," how do you mean?
19    A.   Not at arm reach, and both arm reach.
20 So it's probably one you can use on one hand and
21 the other one is not in arm reach to use.  So if
22 I'm using my right hand, my left hand can't touch
23 the other arm rail -- the handrail.
24    Q.   Okay.  And have you ever -- have you
25 ever complained to anyone about that issue, about

Page 22

1 the handrail issue?
2    A.  Yes.
3    Q.  And that would have been in your
4 grievance.
5    A.  Yes.
6    Q.  Have you ever made any other complaints
7 about that?
8    A.  Verbally.
9    Q.  And when would the result of a verbal
10 complaint on the spot have been?
11    A.  What can they do about it?
12    Q.  And would that verbal complaint have
13 been about the handrail specifically?
14    A.  Yes.
15    Q.  Or would that -- or would it have been
16 about having difficulties getting up or down the
17 ramp?
18    A.  Both.
19    Q.  And when you communicated that you
20 were having explicit difficulties, you know,
21 making it the full way across the ramp, have they
22 -- has any officer ever assisted?
23    A.  They just started.  I been going up
24 and down the ramps prior to this for two -- like
25 two, two years and like a couple months by myself

Page 23

1 without any -- any assistance.
2    Q.  And you said they just started.  So
3 when would they have just started doing that?
4    A.  When I put in the grievance, which
5 would be -- they started like late, late -- late
6 December, late December or the beginning -- yeah,
7 like late December of '23.
8    Q.  Okay.  And have you -- do you recall
9 any other issues with that ramp other than, you
10 know, the steepness or the handrails?
11    A.  Yeah.  How the door is.  The -- even
12 if I go down the ramp and I just so happen to go
13 down the ramp, the door is right there where I can
14 hit it.
15    Q.  And any other issues you know of?
16    A.  No, not so much.
17    Q.  And so when you've used those -- when
18 you have used -- strike that.
19        When you have traversed the Cermak
20 ramp, have you had any difficulties any time?
21 Have you not made it all the way if you've had
22 troubles or have you ultimately gotten assistance
23 at any of these times that you truly struggled?
24    MR. MORRISSEY:  Objection to form.
25        I just made an objection,

Page 24

1 Mr. Williams.  You can respond.
2    THE WITNESS:  I don't have to respond
3 you said?
4 BY MR. STILLMAN:
5    Q.  No.  Do you want me to -- I'm going to
6 reword the question anyways.  It was kind of
7 confusing.  But you do have to respond.
8        So when you -- have you ever not
9 made it across the ramp, the Cermak ramp?
10    A.  Have I ever not made it?
11    Q.  I mean, have you ever, you know, found
12 yourself struggling partway and --
13    A.  Always.
14    Q.  -- and just not ultimately made the
15 rest of the journey?
16    A.  I always struggle.  But they -- they
17 just like some refuse to help 'til I say, "Can you
18 push me?"
19    Q.  But you've never -- you've never
20 struggled and then ultimately turned around and
21 been returned to your cell as opposed to getting
22 help.  Right?
23    A.  No.  'Cuz they eventually will push me
24 out there if they see I'm struggling.
25    Q.  So you've never, I mean, gotten --

Page 25

1 you've never been kept from getting to where you
2 need to go or going to your appointments as a
3 result of this ramp?
4    A.  I never detoured, if what you're
5 saying.  Is that what you're saying, like I never
6 detoured -- had to go back to my cell?
7    Q.  I mean, yeah, they never -- they never
8 just called off any effort to get you somewhere
9 because you were struggling with the ramp?  It
10 wasn't like you canceled your medical appointment
11 because you had issues or something?
12    A.  Yes, I've canceled medical appoint-
13 ments before.
14    Q.  Well, have you -- have you ever been
15 mid-transport to a medical appointment, had
16 difficulties, and had a transfer -- or had the
17 appointment canceled as opposed to receiving
18 assistance --
19    A.  No.
20    Q.  -- on the ramp?  No?
21    A.  Not to my recall, no.
22    Q.  So you -- as far as you can remember,
23 you've never been kept back from receiving any
24 services or going anywhere or getting the same
25 kind of treatment as another detainee because of

7 (Pages 22 - 25)

Page 26

1 this ramp. Right?
2    A. No. What? Because we take -- okay.
3 When we going to transportation, we take a
4 different -- we take -- we don't take the Cermak
5 and the RTU ramp.
6    Q. So, I mean, if they've taken you
7 another way, you've still made it to your
8 destination. Right?
9    A. Yes.
10    Q. So just yes-or-no question, can you
11 say that you recall ever being treated in a way
12 that you had less access to any of these treat-
13 ments or appointments because of this ramp?
14    A. What ramp? The RTU or the Cermak?
15    Q. The Cermak ramp that we have been
16 talking about.
17    A. But there's two ramps. There's a
18 Cermak ramp and a RTU ramp.
19    Q. So you're --
20    A. They're not the same. There's two
21 different ramps.
22    Q. We're going to -- I'm going to put up
23 a photo that we're going to call -- actually, one
24 second here. Let's clear this up a little bit.
25 I'm going to bring up a photo that we're going to

Page 27

1 call Exhibit 1.
2    (Williams Deposition
3    Exhibit 1 was marked.)
4 BY MR. STILLMAN:
5    Q. And do you recognize this ramp, this
6 area?
7    A. Yes. That's the -- I think this the
8 RTU ramp.
9    Q. And are these handrails the ones that
10 you have been saying are not within arm's reach?
11    A. Yes.
12    Q. And this is a different ramp from the
13 RTU -- from the Cermak ramp you're saying?
14    A. Yes. That's -- that's just the one
15 ramp. That's just the one that you go up to go
16 to --
17    Q. This is -- sorry. Go ahead.
18    A. This is the one you go up to go to
19 Cermak.
20    Q. And you've traversed this ramp before
21 in your chair?
22    A. Traversed? What -- what you mean --
23    Q. You've gone -- you've gone down this
24 ramp or up this ramp in your wheelchair before?
25    A. Yes. I just did it on the 22nd and

Page 28

1 the 23rd.
2    Q. And on that occasion did you have
3 difficulties?
4    A. Yes. I had to have someone -- after I
5 got up so much, like in the middle part of the
6 ramp, the steepness of the ramp, so I think they
7 had to, like, so much -- he seen me started
8 struggling, so he got behind me and pushed me.
9    Q. Have you ever been injured in any
10 capacity while going --
11    A. Yes.
12    Q. -- up or down the ramp?
13    MR. MORRISSEY: Objection.
14    THE WITNESS: Yes.
15    MR. MORRISSEY: Objection.
16    You can respond.
17    MR. STILLMAN: Sorry, Pat, what was --
18 what was your objection?
19    MR. MORRISSEY: Object to the form of
20 the question.
21    MR. STILLMAN: Okay.
22    MR. MORRISSEY: You can respond.
23    THE WITNESS: Yes.
24 BY MR. STILLMAN:
25    Q. And what kind of injuries have you

Page 29

1 experienced?
2    A. I had burns on my -- on both of my
3 hands, the arms.
4    Q. How would -- how would those injuries
5 have occurred?
6    A. From trying to stop -- stop my chair
7 with my hands, no gloves.
8    Q. And what part of the chair would you
9 have put your hands on to stop it?
10    A. The wheel.
11    Q. So the burn -- the burns would have
12 been from rubbing against the wheels?
13    A. Yes.
14    Q. Have you ever sought any kind of
15 medical treatment for any kind of injury like
16 that?
17    A. I explained to them. They didn't --
18 they did nothing. So no.
19    Q. No, you haven't gotten treated?
20    A. I went there. But they didn't report
21 it. Like, they didn't -- they looked at my hands,
22 but they didn't report it or document it.
23    Q. And when would that have been?
24    A. That was -- it's been a lot of times.
25 I can't just say directly dates. But one of the

8 (Pages 26 - 29)

1  dates was December 7, 6 or 7.
2      Q.  So there have been a lot of times that
3  they have -- they have looked at you and not found
4  anything wrong you're saying?
5      A.  Yes.  And they not have documented it.
6  It's not been documented by my hands -- about my
7  hands.
8      Q.  But they have looked at them and --
9      A.  Yes.  Even the ADA coordinator looked
10  at it.
11      Q.  Have any jail staff ever told you that
12  another inmate could not push your chair?
13      A.  No.
14          They saying this about to restart.
15      Q.  Pardon?
16      A.  On this computer, they saying it's
17  about to be restarted.  The software sent it to
18  me.
19          MR. STILLMAN:  Oh, here, let's go off
20  the record for a second.
21          (A discussion was held off
22              the record.)
23  BY MR. STILLMAN:
24      Q.  All right.  So you -- do you remember
25  signing a declaration about the ramp in this case?

1      A.  Can you explain to me like declara-
2  tion?
3      Q.  Do you remember -- do you remember
4  signing any kind of document with statements from
5  you about the RTU/Cermak ramps?
6      A.  Yes.
7      Q.  And that would be -- I'm just calling
8  this Exhibit 2.
9          (Williams Deposition
10          Exhibit 2 was marked.)
11  BY MR. STILLMAN:
12      Q.  That would be this document.  Correct?
13      A.  Yes.
14      Q.  And that is your signature?
15      A.  Yes.
16      Q.  And just to kind of summarize this
17  declaration here essentially, just tell me if I am
18  mis-testifying, your name is Efferson Williams.
19  Incarcerated in Division 8, Tier 3H.  42 years old
20  and use a wheelchair and you have a T-5 spinal
21  cord injury.  Is this all correct so far?
22      A.  Yes.
23      Q.  You say there's a steep and long ramp
24  in the basement of the RTU that is used for you to
25  travel to various places at the jail, including

1  Cermak.  Is that right?
2      A.  Yes.
3      Q.  And that you experience hardship
4  moving up and down that ramp.  And on one occasion
5  you recall almost falling out of your wheelchair
6  while navigating that ramp.  Is that right?
7      A.  Yes.
8      Q.  And you also experienced burning hands
9  on your -- burning on your hands when traversing
10  the ramp.  Correct?
11      A.  Yes.
12      Q.  And then you say it's very rare for
13  staff to assist you in traversing the ramp?
14      A.  Yes.
15      Q.  And then you signed that on
16  November 28, right --
17      A.  Yes.
18      Q.  -- 2023?
19          And you said -- didn't you say
20  that shortly after that was when they started
21  assisting, in late December?  Right?
22      A.  December -- after -- I mean, it was
23  after did I put my grievance in.  If I wouldn't
24  have never grieved it, they would have never
25  assisted.

1      Q.  Okay.  And just shortly after that,
2  like late November '23, that would have been
3  December 2023 when they -- around when they might
4  have started helping.  Right?
5      A.  Yeah.  Probably like a month or so
6  later or something like that.
7          I mean, just -- just, what's today,
8  the 23rd?
9      Q.  The 25th.
10      A.  The 25th.  Just on the 23rd I had to
11  write another grievance because they not doing --
12  ADA, what's her name, about me being -- getting
13  assistance up and down the ramp, which is
14  documented I wait for the response to what's her
15  name.
16          It's about to shut down.  It's
17  about to shut off.  It's saying that.
18      Q.  Okay.
19      A.  It's saying -- it just showed up on
20  the computer saying that --
21          MR. MORRISSEY:  Why don't you get the
22  -- why don't you get the officer, Mr. Williams.
23          MR. STILLMAN:  Yeah.  Get the officer
24  back in there.
25          Let's go off the record again.

Page 34

1    (A break was taken from
2         11:55 a.m. until
3         12:06 p.m.)
4  BY MR. STILLMAN:
5    Q.  All right.  So we'll call this next
6  exhibit Exhibit 3.
7         (Williams Deposition
8         Exhibit 3 was marked.)
9  BY MR. STILLMAN:
10   Q.  And do you recognize this grievance?
11   A.  Yes.
12   Q.  Is this your handwriting on it?
13   A.  Yes.
14   Q.  Would this have been -- do you
15 recognize this to have been one of your grievances
16 about the ramps?
17   A.  Yes.
18   Q.  And in this grievance you're filing it
19 against Correctional Officers Cato and Remszik.
20   A.  Remszik, yes.  It's Remszik.
21   Q.  Okay.  And just essentially you're
22 complaining here that the upward and downward
23 ramps require a guard's assistance and you
24 received help going up -- or, yes, received help
25 going up the ramp but on descending you did not.

Page 35

1  Correct?
2    A.  I'm saying down, downward, no.
3    Q.  And then you say that you lost control
4  of your chair during the downward journey.
5  Correct?
6    A.  Yes.
7    Q.  And you -- the chair picked up speed,
8  and to avoid great injury from slamming into a
9  wall, door, or another person you were forced to
10 use your hands on the bare tires to stop your
11 chair.  Correct?
12   A.  Yes.
13   Q.  And then you say you still have the
14 burn marks on the palms of your hands, which are
15 painful.  Correct?
16   A.  Yes.  Which is shown, the burns.  You
17 can see it.
18   Q.  I got you.
19        And do you remember this specific
20 incidence?
21   A.  Yes.
22   Q.  And this was 12/6/23, so this was
23 pretty recent.  Right?
24   A.  Yes.
25   Q.  And was this the later grievance you

Page 36

1  were just talking about before?  Or you said you
2  had another one you filed in April?
3    A.  Yeah.  I have the one that I just did
4  on the -- 4/22.
5    Q.  Okay.
6    A.  4/22/24.
7    Q.  That was -- the subject of that was
8  more or less the same of the same ramp, the same
9  types of issues?
10   A.  I'm sorry, one was 4/22/23 which is
11 the court building situation.  But this one 4/22
12 -- 4/23/24 was when I just up the ramp and Officer
13 Thompson refused to help.  He didn't want to help
14 me.
15   Q.  So you asked that day officers for
16 assistance, though?
17   A.  Yes.
18   Q.  And you did get assistance going up?
19   A.  At midway.  At midway up the ramp.
20   Q.  But then going down you didn't and
21 then you lost control?
22   A.  Oh, I'm sorry.  I'm sorry.  I thought
23 you was talking about the 4/23 --
24   Q.  Oh, no, no, no, no.  We're back to --
25 we're back to this current one on screen.  Sorry

Page 37

1  about that.
2    A.  Yes.
3    Q.  So, yeah, you -- so you lost control
4  there, though, after receiving help going up, on
5  the --
6    A.  Yes.
7    Q.  -- way down?
8    A.  Yes.
9    Q.  And did you ever get any medical
10 attention for the --
11   A.  They --
12   Q.  -- burn?
13   A.  They looked -- they looked at it but
14 didn't document it.  They just looked at it.
15   Q.  Didn't document it?
16   A.  Yes.
17   Q.  And they received this from you on
18 12/8 it says right here?
19   A.  Yes.  Yes.  That's what they gave me.
20   Q.  Do you remember receiving -- receiving
21 the response to this from the jail?
22   A.  They -- they gave me a response which
23 was saying after reviewing and speaking to the
24 staff members and the Detainee Williams it appears
25 that two of the officers misunderstood CCOS [sic]

10 (Pages 34 - 37)

Page 38

1  policy.  Detainee was pushed up the ramp but not
2  down the ramp.  However, at the [sic] time he does
3  lose control of the wheelchair or nearly ran
4  into -- yes.  [As read.]
5      Q.   So you remember receiving this
6  response --
7      A.   Yes.
8      Q.   -- correct?
9      A.   Yes.
10      Q.   And right here, just tell me if I'm
11  reading this correctly:  However, at no time does
12  he lose control of the wheelchair or nearly run
13  into the wall.
14          Is that right?
15      A.   They said at no time?
16      Q.   It says:  However, at no time does he
17  lose control of the wheelchair.
18          Is that -- is that right?
19      A.   Yes, it says that.
20      Q.   And it says:  Available video shows
21  Detainee Williams gliding with ease through the
22  tunnels to and from Cermak.  At no time did
23  Detainee Williams tell the officer that he was
24  having difficulty wheeling himself.
25          Is that what it says?

Page 39

1      A.   Yes.
2      Q.   And it says:  Detainee Williams did
3  not report any burns to his hands from the
4  wheelchair, nor were there any wounds or healed
5  wounds to his hands during my discussion with him
6  on 12/21/23.
7          Is that right?
8      A.   Yes.
9      Q.   And then it also finally says that you
10  did not request medical attention for any alleged
11  wounds verbally or via written health service
12  request.  Yeah?
13      A.   Yes.  On 12/23, yes, it says that.
14      Q.   And, finally, it says staff will be
15  reminded to push wheelchairs up and down ramps to
16  document -- and to document any refusals of
17  assistance.  Is that correct?
18      A.   It's saying refusals?  Yes.  Yes.
19      Q.   Yes.
20      A.   Yes, it does say that.
21      Q.   And is that -- and you say it's not
22  the case that you didn't -- that you did not tell
23  the officer that you were having difficulties.
24  Correct?
25      A.   I always tell them that.

Page 40

1      Q.   You -- okay.  So why do you think they
2  might have put in the response that after
3  reviewing the evidence and speaking with people
4  involved that you didn't -- you didn't say
5  anything?
6          MR. MORRISSEY:  Objection.
7  Foundation.
8          You can respond.
9          THE WITNESS:  I have no idea why they
10  said that.  But I guess it was probably to cover
11  up.
12  BY MR. STILLMAN:
13      Q.   To cover up?
14      A.   The situation of me showing them that
15  I do have burns on my hands and --
16      Q.   Okay.
17      A.   Yes.
18      Q.   And you then -- so they got -- they
19  got your -- that response to you on 12/22/23 --
20      A.   Yes.
21      Q.   -- which you then received on
22  January 5, 2024.  Correct?
23      A.   Yes.
24      Q.   And can you read your appeal for me?
25      A.   I did -- I did -- I did -- I did do --

Page 41

1  I do have burns on my hands.  [As read.]
2          I was just letting them know that I
3  did do a lot of stuff on the video and that I let
4  the staff know that I had burns on my hands.
5      Q.   So that's just you insisting that you
6  were telling the truth, that you did complain to
7  the staff and you did have difficulties.  Correct?
8      A.   Yes.
9      Q.   Okay.  And they ultimately said the
10  original response was to stand.  Right?
11      A.   Yes.
12      Q.   And did you receive that on January 16,
13  2024?
14      A.   Yes.
15      Q.   All right.  And do you remember if on
16  this occasion you had actually been -- I know she
17  said -- you know, this is from -- do you know who
18  that -- who that response was drafted by?  I'll
19  show you.
20      A.   You said do I know who the response
21  was from?
22      Q.   Yeah.
23      A.   I think it's -- I think it was --
24      Q.   It shows here.
25      A.   Sabrina.

11 (Pages 38 - 41)

1    Q.   Do you have any -- you know who the
2  ADA compliance officer is.  Correct?
3    A.   Yes.  Sabrina.
4    Q.   And would you be surprised to hear
5  that she was the one who drafted the response to
6  that grievance?
7    A.   You said would I be what?  I'm sorry.
8    Q.   Would you -- scratch that actually.
9  Forget it.
10        Do you -- did she ever look at your
11 hands on this occasion?
12   A.   Not -- not right -- not exactly right
13 after the -- what's her name?  Not exactly right
14 after the -- I had -- I had burns on my hand.  She
15 probably came like two weeks later or something.
16   Q.   So you never had any actual attention
17 to your hands or alleged injuries by Cermak or any
18 actual medical doctors, though?
19   A.   No.  They -- because, like I said,
20 they -- they didn't document it.  They looked at
21 them.  They gave me --
22   Q.   Okay.
23   A.   -- some ointment.  But they didn't
24 document.
25        I got to use the washroom.

1    Q.   And then just -- so they -- sorry.
2  Finished?
3    A.   Yes.
4         I have to use the washroom real
5  fast.
6    Q.   Right now you do?
7    A.   Yeah.  I got to go to the washroom.
8         MR. STILLMAN:  Actually, I'm done.
9  Pat, do you have anything?
10        MR. MORRISSEY:  I'm going to have
11 questions, though, so.
12        MR. STILLMAN:  Okay.  So then we'll
13 let him go to the bathroom.
14        THE WITNESS:  Okay.  I'm sorry, say it
15 again, sir.
16        MR. MORRISSEY:  We'll be here.  We'll
17 be here, Mr. Williams.
18        THE WITNESS:  Okay.
19        (A break was taken from
20            12:17 p.m. until
21            12:20 p.m.)
22        MR. MORRISSEY:  Are you done?
23        MR. STILLMAN:  Yeah, I'm good.  I'm
24 done for now.
25            / / /

1            EXAMINATION
2            BY MR. MORRISSEY
3    Q.   Mr. Williams, you mentioned you have a
4  grievance that you just filed about going up or
5  down a ramp?
6    A.   Yes.
7    Q.   Can you -- I don't have that.  Can you
8  show it on the screen?  I'll see if I can -- it's
9  kind of hard to see.  Can you perhaps read it for
10 us, Mr. Williams?
11   A.   Yes.
12        While being -- while being escorted
13 to Cermak, I received assistance up the ramp but
14 not down the ramp.  And after -- after my
15 appointment.  While being escorted back to RTU,
16 Officer -- Officer Thompson provided minor
17 assistance going up the ramp but not down -- but
18 not assisting down the ramp.  Per ADA person
19 Sabrina, I should be receiving help assisting
20 and listing [sic] these ramps each time --
21 assisting the ramps each time.  [As read.]
22   Q.   And what date does your grievance say
23 this happened, Mr. Williams?
24   A.   It happened on 4/23/24 approximately
25 like 1:00 p.m. to like 2:10.

1    Q.   And does your grievance mention going
2  to Cermak or your trip from Cermak back to the
3  RTU?
4    A.   It's on my way to Cermak and back from
5  Cermak.
6    Q.   So what is -- does your grievance
7  mention that they didn't help you when you were
8  going to Cermak?
9    A.   Yes.  It says I have -- I have not
10 received -- I have -- I have received assistance
11 to up the ramp but -- but not down the ramp.  And
12 that's -- that's while being escorted to Cermak.
13   Q.   And then the same -- does your
14 grievance say the similar thing happened when the
15 officer escorted you from Cermak back to RTU, you
16 were --
17   A.   He gave me minor assistance going up
18 the Cermak ramp but not -- but not down the
19 Cermak.  And that's going back to RTU.
20   Q.   Oh, so when you were going down you
21 were going down the RTU ramp, right, on your way
22 back?
23   A.   Yes.  By myself.
24   Q.   And how long approximately were you at
25 Cermak that day?  Was it just about an hour or

12 (Pages 42 - 45)

Page 46

1 two?
2    A.  Yeah, approximately like an hour.
3    Q.  And do you know why you went to Cermak
4 that day?
5    A.  Yes.  To see a podometry [sic], some-
6 thing like for my feet.
7    Q.  Oh, podiatrist?
8    A.  Podiatrist, yes.  Podiatrist.
9    Q.  And was that the only reason why you
10 were at Cermak, just to see the podiatrist and go
11 back to your housing unit?
12    A.  Yes.
13    Q.  And when was that grievance collected?
14 Does it say when the social worker signed for it?
15    A.  On the 24th.
16    Q.  So you were complaining about some-
17 thing that happened on the 23rd of April, and then
18 the next day it was collected by a social
19 worker?
20    A.  Yes.  It was the same one who was --
21 me being -- going to the courtroom doors and my
22 chair got stuck and almost got broken.  I couldn't
23 get -- I couldn't get through because the doors --
24 the gates of going to the courtroom is narrow.
25    Q.  Okay.  What court -- when were you

Page 47

1 going to court?
2    A.  I went to court 4 -- 4/22/24.
3    Q.  And what courtroom were you
4 complaining about?
5    A.  Courtroom -- court -- the courtroom
6 500.
7    Q.  Does your grievance say what -- what
8 does your grievance say?  Can you just read it to
9 us?
10    A.  Yes.
11       While being escorted to the
12 courtroom -- to court, my wheelchair got stuck in
13 the doorway of the bullpen for approximately ten
14 minutes.  During the proceedings, my chair was
15 almost broken and the wheel were bent barely --
16 barely scratched due -- due to being forced
17 through the doorway.  And exiting, returning from
18 court the same -- the same assistant -- I mean,
19 the same happened for me, my chair being forced
20 through the doorway.  [As read.]
21    Q.  Does your grievance say what time this
22 occurred approximately?
23    A.  Yes.  Approximately from 12:00,
24 12 o'clock to 1:30.
25    Q.  Does your grievance say what officer

Page 48

1 was escorting you?
2    A.  No.  It just say the bailiff.  I put
3 the bailiff because I have -- I don't know -- I
4 didn't know the officer's name probably.
5    Q.  Has anybody from the Sheriff's Office
6 come to speak with you regarding your allegations
7 in either of these two grievances you filed a
8 couple days ago?
9    A.  No, sir.
10    Q.  I have nothing further.  I appreciate
11 your time, Mr. Williams.
12       RE-EXAMINATION
13       BY MR. STILLMAN
14    Q.  Okay.  I got a -- I got a couple more.
15       Mr. Williams, your -- do you
16 remember how long it took on other occasions for
17 them to respond to your grievances?
18    A.  One of them -- one of them took
19 probably like a week.  I think one of them
20 probably took like a week or four to five days or
21 something to reply.  And I think that was the one
22 that -- that was the one -- the one that replied
23 took that long was because the coordinator had
24 came to me with the quoted grievance in her hand
25 and she wanted to ask me did I show -- is this the

Page 49

1 grievance that I wrote.
2    Q.  Okay.  And would it sound right to you
3 if I told you that grievance we were just looking
4 at about the ramp at Cermak, that they received it
5 from you on 12/8 and then got a response to you by
6 12/22?
7    A.  Yes.  That was the one --
8    Q.  And --
9    A.  I think that was the one I was waiting
10 for 'cuz it was the one -- I think -- if I'm not
11 mistaken, it was the one that she came to show me
12 herself about the grievance and telling me she's
13 going to respond.  And the respond was -- the
14 respond was --
15    Q.  So, you know, it's okay if you don't
16 -- you don't have to go and to look at the
17 response or not.  It's just about if that sounds
18 right about the time it took.
19    A.  Yeah.  It took a little -- like, it
20 took a minute, I know that for a fact, because I
21 was -- I was asking why haven't it came.
22    Q.  So, Mr. Williams, we don't need the
23 commentary.  Just let's get this -- we don't have
24 to get this -- too much more into anything.  Let's
25 kind of finish it up fast.  Just a couple

13 (Pages 46 - 49)

1  questions.
2          Just it would make sense then they
3  have not -- to you that they haven't responded to
4  your grievance yet that was collected yesterday by
5  them. Right?
6      A.  No, they have not.
7      Q.  But it would make sense to you that
8  that would seem normal and reasonable they have
9  not yet responded to it in one day. Correct?
10     A.  Yes. That's -- that's -- they don't
11 respond, they always be like somewhat prompt, not
12 just right away. They don't respond just right
13 away.
14     Q.  Okay.
15     A.  They usually go --
16     Q.  And that -- that first grievance that
17 you were -- or the first new grievance that you
18 were just talking with Pat about, the one about
19 that the date of conduct was 4/23 approximately
20 1:00 p.m. or 2:10 p.m., the ramp and your
21 podiatrist appointment --
22     A.  Yes.
23     Q.  Do you recall ever requesting any
24 assistance from officers there or was that another
25 case where you had difficulties but refused to

1  ask?
2      A.  No. I -- okay. So by then I'm
3  thinking by the ADA led to all the CCDOC staff
4  that they knew, so I asked him did he -- I'm like,
5  "You got to push me." He said -- he said nothing
6  'til he seen me struggling at midway. Then he
7  started pushing me.
8      Q.  And so, again there, you -- you made
9  it to your podiatrist appointment and you made it
10 back to your tier after. Correct?
11     A.  Yes, sir.
12     Q.  And you were not kept from your
13 podiatrist appointment in any way, your podiatry
14 appointment in any way, by any --
15     A.  No, sir.
16     Q.  -- barrier the ramp may have posed?
17     A.  No, sir.
18     Q.  And you did ultimately receive
19 assistance from an officer one of the ways when
20 you were struggling. Correct?
21     A.  You said did I have the ultimate
22 assistance?
23     Q.  You did -- you did receive assistance
24 from an officer after you were partway up.
25 Correct?

1      A.  Yes.
2      Q.  And no -- you have not -- you have not
3  received a response from that grievance yet nor
4  have you appealed it or anything. Right?
5      A.  No, I have not -- I have no response
6  or have not a chance to read it -- appeal it.
7      Q.  All right. I have no further
8  questions.
9            RE-EXAMINATION
10         BY MR. MORRISSEY
11     Q.  For the matter that you experienced a
12 few days ago, I believe you mentioned it was on
13 4/23 when you went to Cermak to the podiatrist
14 appointment. Did you tell any medical -- did your
15 hands hurt that day from braking?
16     A.  No. They didn't -- no, I didn't. I
17 asked them to get me no medical assistance. No,
18 I didn't.
19     Q.  All right. Can you -- when you get a
20 chance, Mr. Williams, can you send me a copy of
21 that grievance?
22     A.  These? Do you want the original copy?
23     Q.  Whatever you have.
24     A.  Okay. I will send -- I will send both
25 of the original copies to you, sir.

1      Q.  All right. Appreciate it.
2          Any questions, Zach, or are we
3  done?
4          MR. STILLMAN: I think we're done.
5  Hold on. All right. No, I think we're done.
6  We're good. Yep.
7          MR. MORRISSEY: All right. We'll
8  waive signature.
9          I appreciate it, Mr. Williams.
10 We're finished here. I appreciate your time.
11         THE WITNESS: All right. Thank you,
12 sir.
13         MR. STILLMAN: Thank you, Mr. Williams.
14         THE WITNESS: Yes.
15         MR. MORRISSEY: I don't need a copy of
16 this.
17         MR. STILLMAN: We are going to order a
18 copy.
19         (The deposition was
20          concluded at 12:32 p.m.)
21         (Signature was waived.)
22         --oo0oo--
23
24
25

14 (Pages 50 - 53)

Page 54

1            CERTIFICATE
2              OF
3      CERTIFIED SHORTHAND REPORTER
4
5      I, DEBRA L. KLESZYK, a Certified Shorthand
6  Reporter of the State of Illinois, CSR License
7  084-002981, do hereby certify:
8      That previous to the commencement of the
9  examination of the aforesaid witness, the witness
10  was duly sworn by me to testify the whole truth
11  concerning the matters herein;
12      That the foregoing deposition transcript
13  was stenographically reported by me and was there-
14  after reduced to typewriting under my personal
15  direction and constitutes, to the best of my
16  ability, a true and accurate record of the
17  testimony given and the proceedings had at the
18  aforesaid deposition;
19      That the said deposition was taken before
20  me remotely via videoconference at the time and
21  place specified;
22      That I am not a relative or employee or
23  attorney or counsel for any of the parties herein,
24  nor a relative or employee of such attorney or
25  counsel for any of the parties hereto, nor am I

Page 55

1  interested directly or indirectly in the outcome
2  of this action.
3      IN WITNESS WHEREOF, I do hereunto set my
4  verified digital signature this 7th day of May,
5  2024.
6
7
8            DEBRA L. KLESZYK
9         Certified Shorthand Reporter
           License No. 084-002981
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

15 (Pages 54 - 55)

**[01851 - appeal]**

| **0** |
|---|
| **01851**   1:6 |
| **084-002981** |
|    54:7 55:9 |

| **1** |
|---|
| **1**   3:11 7:2 27:1 |
|    27:3 |
| **10**   7:5 |
| **10257**   2:4 |
| **11:16**   1:18 |
| **11:55**   34:2 |
| **12**   47:24 |
| **12/21/23**   39:6 |
| **12/22**   49:6 |
| **12/22/23**   40:19 |
| **12/23**   39:13 |
| **12/6/23**   35:22 |
| **12/8**   37:18 49:5 |
| **12:00**   47:23 |
| **12:06**   34:3 |
| **12:17**   43:20 |
| **12:20**   43:21 |
| **12:32**   53:20 |
| **16**   41:12 |
| **1875**   55:8 |
| **1981**   7:5 |
| **1:00**   44:25 |
|    50:20 |
| **1:23**   1:6 |
| **1:30**   47:24 |

| **2** |
|---|
| **2**   3:12 31:8,10 |
| **2/22**   20:2 |

| **2017**   14:21 |
|---|
| **2021**   12:19 |
| **2023**   32:18 |
|    33:3 |
| **2024**   1:18 |
|    40:22 41:13 |
|    55:5 |
| **22nd**   27:25 |
| **23**   23:7 33:2 |
| **230**   2:10,10 |
| **233-7900**   2:5 |
| **23rd**   28:1 33:8 |
|    33:10 46:17 |
| **24th**   46:15 |
| **25**   1:18 |
| **25th**   33:9,10 |
| **27**   3:11 |
| **2700**   1:21 |
| **28**   32:16 |
| **2:10**   44:25 |
|    50:20 |

| **3** |
|---|
| **3**   3:13 34:6,8 |
| **300-4479**   2:11 |
| **31**   3:12 |
| **312**   2:11 |
| **34**   3:13 |
| **3h**   31:19 |

| **4** |
|---|
| **4**   47:2 |
| **4/22**   20:2 36:4 |
|    36:11 |
| **4/22/23**   36:10 |

| **4/22/24**   36:6 |
|---|
|    47:2 |
| **4/23**   20:2 36:23 |
|    50:19 52:13 |
| **4/23/24**   36:12 |
|    44:24 |
| **42**   31:19 |
| **44**   3:6 |
| **48**   3:5 |

| **5** |
|---|
| **5**   3:5 15:1 |
|    31:20 40:22 |
| **500**   47:6 |
| **52**   3:6 |

| **6** |
|---|
| **6**   30:1 |
| **60606**   2:11 |
| **60643**   2:4 |

| **7** |
|---|
| **7**   30:1,1 |
| **773**   2:5 |
| **7th**   55:4 |

| **8** |
|---|
| **8**   13:24 19:15 |
|    31:19 |

| **a** |
|---|
| **a.m.**   1:18 34:2 |
| **ability**   54:16 |
| **above**   1:14 |
| **absolutely**   6:5 |
| **access**   26:12 |
| **accurate**   54:16 |

| **acknowledge** |
|---|
|    4:5 |
| **acknowledged** |
|    18:8 |
| **action**   55:2 |
| **actual**   10:7 |
|    42:16,18 |
| **actually**   18:21 |
|    26:23 41:16 |
|    42:8 43:8 |
| **ada**   9:10 16:10 |
|    16:12,15 17:7 |
|    17:10 30:9 |
|    33:12 42:2 |
|    44:18 51:3 |
| **adminis**   4:10 |
| **aforesaid**   54:9 |
|    54:18 |
| **ago**   9:1 48:8 |
|    52:12 |
| **ahead**   27:17 |
| **alfie**   7:3,3 |
| **allegations** |
|    11:21 48:6 |
| **alleged**   39:10 |
|    42:17 |
| **answer**   6:7 |
|    12:3 |
| **answering**   21:2 |
| **answers**   5:25 |
| **anybody**   48:5 |
| **anyways**   24:6 |
| **appeal**   40:24 |
|    52:6 |

**appealed** 52:4
**appeared** 2:6
2:13
**appears** 37:24
**appoint** 25:12
**appointment**
10:1 13:10
25:10,15,17
44:15 50:21
51:9,13,14
52:14
**appointments**
13:4 25:2
26:13
**appreciate**
48:10 53:1,9
53:10
**approximately**
44:24 45:24
46:2 47:13,22
47:23 50:19
**april** 1:18 7:5
36:2 46:17
**area** 14:9 19:9
19:12 27:6
**areas** 19:14
**arm** 21:19,19
21:21,23
**arm's** 27:10
**arms** 29:3
**asked** 16:19
36:15 51:4
52:17
**asking** 7:23
10:13,16,17

17:5 49:21
**assist** 15:7 17:8
32:13
**assistance** 17:6
18:25 23:1,22
25:18 33:13
34:23 36:16,18
39:17 44:13,17
45:10,17 50:24
51:19,22,23
52:17
**assistant** 47:18
**assisted** 22:22
32:25
**assisting** 15:13
32:21 44:18,19
44:21
**assume** 6:7
**attention** 37:10
39:10 42:16
**attorney** 4:12
9:6 54:23,24
**attorneys** 8:23
**available** 38:20
**avenue** 1:21 2:4
**avoid** 35:8
**aware** 11:13
17:11,18,21
18:1,9

**b**

**back** 7:12 21:7
25:6,23 33:24
36:24,25 44:15
45:2,4,15,19,22
46:11 51:10

**bailiff** 48:2,3
**bare** 35:10
**barely** 47:15,16
**barrier** 51:16
**bars** 6:22
**basement**
13:17,24 14:2
14:4 31:24
**bathroom**
43:13
**beginning** 23:6
**behalf** 1:14 2:6
2:13
**believe** 52:12
**bent** 47:15
**best** 54:15
**birth** 7:4
**bit** 14:15 19:6
26:24
**booking** 12:16
12:18
**booklet** 18:16
**braking** 52:15
**break** 6:14 7:19
34:1 43:19
**bring** 26:25
**broken** 46:22
47:15
**building** 20:13
20:14,15 36:11
**bullpen** 47:13
**burn** 29:11
35:14 37:12
**burning** 32:8,9

**burns** 29:2,11
35:16 39:3
40:15 41:1,4
42:14

**c**

**c** 2:1
**california** 1:21
**call** 6:21,25 7:2
26:23 27:1
34:5
**called** 4:23 25:8
**calling** 31:7
**canceled** 25:10
25:12,17
**capacity** 28:10
**case** 1:15 11:14
11:20,20,22
30:25 39:22
50:25
**cato** 34:19
**ccdoc** 18:13,15
51:3
**ccos** 37:25
**cell** 24:21 25:6
**center** 1:21
**cermak** 10:1
13:3,7,14,19,20
13:21 19:10,16
20:11,11,16
21:13,14 23:19
24:9 26:4,14
26:15,18 27:13
27:19 31:5
32:1 38:22
42:17 44:13

**[cermak - declaration]**

45:2,2,4,5,8,12
45:15,18,19,25
46:3,10 49:4
52:13
**certificate** 54:1
**certified** 1:15
4:2 54:3,5 55:9
**certify** 54:7
**chair** 15:3,8,18
27:21 29:6,8
30:12 35:4,7
35:11 46:22
47:14,19
**chairs** 16:2
**chance** 52:6,20
**chicago** 1:21
2:4,11
**civil** 1:19
**class** 1:4
**clear** 6:3 26:24
**clinic** 13:10
**close** 21:15,17
**collected** 46:13
46:18 50:4
**come** 48:6
**coming** 11:10
21:9
**commencem...**
54:8
**commencing**
1:18
**commentary**
49:23
**communicated**
22:19

**communication**
12:4
**complain** 41:6
**complained**
21:25
**complaining**
34:22 46:16
47:4
**complaint**
22:10,12
**complaints**
22:6
**compliance**
42:2
**computer**
30:16 33:20
**concerning**
54:11
**concluded**
53:20
**conduct** 50:19
**confusing** 24:7
**constitutes**
54:15
**control** 35:3
36:21 37:3
38:3,12,17
**convicted**
12:12
**cook** 1:7,8,20
9:10 12:15
15:10
**coordinator**
30:9 48:23

**copies** 52:25
**copy** 52:20,22
53:15,18
**cord** 31:21
**correct** 9:7
12:9 13:25
14:13 19:7
31:12,21 32:10
35:1,5,11,15
38:8 39:17,24
40:22 41:7
42:2 50:9
51:10,20,25
**correctional**
1:20 17:23
34:19
**correctly** 38:11
**corridors** 13:24
19:7,12,18
**counsel** 4:8
54:23,25
**county** 1:8,8,20
4:15 9:10
12:15 15:10
**couple** 5:20
22:25 48:8,14
49:25
**court** 1:1 4:1
5:19 11:12,24
11:25 19:1,13
20:12,13,14,15
36:11 46:25
47:1,2,5,12,18
**courtroom**
46:21,24 47:3

47:5,5,12
**cover** 40:10,13
**crimes** 12:12
**csr** 54:6
**cuffed** 15:23
16:1
**cuffs** 16:3
**current** 12:15
36:25
**cut** 21:1
**cuz** 14:12 24:23
49:10
**cv** 1:6

## d

**d** 3:1
**dart** 1:7
**date** 7:4 8:24
44:22 50:19
**dates** 29:25
30:1
**day** 36:15
45:25 46:4,18
50:9 52:15
55:4
**days** 8:25 48:8
48:20 52:12
**debbie** 4:2
**debra** 1:15 54:5
55:8
**december** 23:6
23:6,7 30:1
32:21,22 33:3
**declara** 31:1
**declaration**
3:12 30:25

**[declaration - explaining]**                                    Page 4

31:17
**defendants** 1:9
  1:14 2:13 4:14
**denied** 16:20
  16:23
**depo** 7:21
**deposed** 11:14
**deposition** 1:13
  4:5,7,18 5:4
  7:16,20,22
  11:8,10 27:2
  31:9 34:7
  53:19 54:12,18
  54:19
**descending**
  34:25
**description**
  3:10
**destination**
  26:8
**details** 11:14
  11:19
**detainee** 10:22
  17:20 18:3
  25:25 37:24
  38:1,21,23
  39:2
**detoured** 25:4
  25:6
**devore** 2:9 4:14
**devoreraduns...**
  2:12
**dictate** 9:19,22
  17:13

**different** 26:4
  26:21 27:12
**difficulties** 20:8
  20:20 22:16,20
  23:20 25:16
  28:3 39:23
  41:7 50:25
**difficulty** 38:24
**digital** 55:4
**direction** 54:15
**directly** 14:24
  29:25 55:1
**discussed** 19:5
**discussion** 7:10
  30:21 39:5
**district** 1:1,1
**division** 1:2
  13:24 19:15
  31:19
**divulging** 12:4
**doctors** 42:18
**document**
  29:22 31:4,12
  37:14,15 39:16
  39:16 42:20,24
**documentation**
  11:7
**documented**
  30:5,6 33:14
**doing** 23:3
  33:11
**door** 23:11,13
  35:9
**doors** 46:21,23

**doorway** 47:13
  47:17,20
**downward**
  34:22 35:2,4
**drafted** 41:18
  42:5
**due** 47:16,16
**duly** 4:20,24
  54:10

**e**

**e** 2:1,1 3:1 5:15
  5:15,16 7:3
**ease** 38:21
**easier** 5:18
**eastern** 1:2
**efferson** 1:13
  3:3 4:22 5:9,15
  6:20 31:18
**effort** 25:8
**either** 13:10
  18:11,25 21:12
  48:7
**elevators** 14:6
**employee** 54:22
  54:24
**enlarged** 14:25
  14:25 15:1
**entire** 13:1
**entitled** 1:15
**er** 13:10
**escort** 10:4
**escorted** 44:12
  44:15 45:12,15
  47:11

**escorting** 10:3
  48:1
**essentially**
  31:17 34:21
**eugene** 1:4
  10:23,25
**eventually**
  24:23
**evidence** 40:3
**exact** 8:24
**exactly** 42:12
  42:13
**examination**
  3:4 5:1 44:1
  48:12 52:9
  54:9
**examined** 4:24
**excuse** 14:25
**exhibit** 3:10,11
  3:12,13 27:1,3
  31:8,10 34:6,6
  34:8
**exhibits** 3:9
**exiting** 47:17
**experience** 32:3
**experienced**
  29:1 32:8
  52:11
**explain** 14:15
  31:1
**explained**
  29:17
**explaining**
  11:24

**[explicit - happened]**                                   Page 5

| | | | |
|---|---|---|---|
| **explicit** 22:20 | **foregoing** 54:12 | **going** 5:19 6:7 8:7 11:9,12 | 49:12 50:4,16 50:17 52:3,21 |

**f**

**f** 5:15,15 7:3
**fact** 49:20
**falling** 32:5
**familiar** 11:2
19:6,11,13,14
**far** 11:16 25:22
31:21
**fast** 43:5 49:25
**federal** 1:19
**feet** 46:6
**felt** 17:9
**figure** 6:14
9:23
**filed** 18:7 36:2
44:4 48:7
**filing** 34:18
**finally** 39:9,14
**finish** 21:4
49:25
**finished** 43:2
53:10
**first** 4:24 5:21
12:14,17 13:21
19:24 50:16,17
**five** 48:20
**floor** 14:3,12
**focus** 21:12
**following** 46:18
**follows** 4:25
**forbid** 18:10
**forced** 35:9
47:16,19

**foregoing** 54:12
**forget** 42:9
**forgot** 16:15
**form** 23:24
28:19
**found** 24:11
30:3
**foundation** 40:7
**four** 8:25 48:20
**frequently** 15:9
**full** 5:7 22:21
**further** 48:10
52:7

**g**

**g** 2:3
**gates** 46:24
**gesturing** 6:2
**getting** 22:16
24:21 25:1,24
33:12
**give** 18:16
**given** 5:4 54:17
**gliding** 38:21
**gloves** 29:7
**go** 5:19 6:18
13:9,10 14:1
20:24 23:12,12
25:2,6 27:15
27:15,17,18,18
30:19 33:25
43:7,13 46:10
49:16 50:15

**going** 5:19 6:7
8:7 11:9,12
12:22 13:23
18:25,25 19:22
20:10,12,21,21
20:23 21:9
22:23 24:5
25:2,24 26:3
26:22,22,23,25
26:25 28:10
34:24,25 36:18
36:20 37:4
43:10 44:4,17
45:1,8,17,19,20
45:21 46:21,24
47:1 49:13
53:17
**good** 43:23
53:6
**gotten** 23:22
24:25 29:19
**government** 6:21
**great** 35:8
**grievance** 3:13
8:9,9,10,13,15
10:21 16:24
17:2 18:7 22:4
23:4 32:23
33:11 34:10,18
35:25 42:6
44:4,22 45:1,6
45:14 46:13
47:7,8,21,25
48:24 49:1,3

49:12 50:4,16
50:17 52:3,21
**grievances** 8:18
34:15 48:7,17
**grieved** 32:24
**guard's** 34:23
**guess** 6:11 14:4
15:21 21:13
40:10

**h**

**half** 9:3,4
**hallways** 19:7
19:12,19
**hand** 21:20,22
21:22 42:14
48:24
**handcuffs** 15:22
**handrail** 21:23
22:1,13
**handrails** 21:12,14 23:10
27:9
**hands** 29:3,7,9
29:21 30:6,7
32:8,9 35:10
35:14 39:3,5
40:15 41:1,4
42:11,17 52:15
**handwriting** 34:12
**happen** 8:23
23:12
**happened** 44:23,24 45:14

46:17 47:19
**hard**  44:9
**hardship**  32:3
**healed**  39:4
**health**  39:11
**hear**  42:4
**heard**  11:4,6
**held**  7:10 30:21
**help**  24:17,22
    34:24,24 36:13
    36:13 37:4
    44:19 45:7
**helping**  33:4
**hereto**  54:25
**hereunto**  55:3
**history**  14:16
**hit**  23:14
**hold**  20:25,25
    53:5
**hour**  9:3,5
    45:25 46:2
**housed**  12:8,25
**housing**  46:11
**hurt**  52:15

**i**

**idea**  19:2 40:9
**identify**  4:8
**illinois**  1:1,8,17
    1:22 2:4,11 4:2
    54:6
**incarcerated**
    31:19
**incidence**  35:20
**including**  31:25

**index**  3:9
**indicate**  4:9
**indirectly**  55:1
**individual**
    11:19
**individually**
    1:4
**informed**  19:3
**injured**  28:9
**injuries**  28:25
    29:4 42:17
**injury**  14:23
    29:15 31:21
    35:8
**inmate**  9:11
    15:15 17:15,22
    17:23 18:3
    30:12
**inmates**  9:19
    9:25 15:17
**insisting**  41:5
**instance**  16:22
**interested**  55:1
**involved**  40:4
**ish**  12:22
**issue**  21:25
    22:1
**issues**  23:9,15
    25:11 36:9

**j**

**jail**  6:24,25
    9:10,12,19
    10:8 12:15
    15:3 17:12,19
    18:2,25 30:11

31:25 37:21
**january**  40:22
    41:12
**journey**  24:15
    35:4

**k**

**keep**  8:6
**kept**  25:1,23
    51:12
**kind**  6:1 9:18
    16:4 19:5 24:6
    25:25 28:25
    29:14,15 31:4
    31:16 44:9
    49:25
**kleszyk**  1:15
    4:2 54:5 55:8
**knew**  51:4
**know**  6:5,14
    8:24 9:24,25
    10:8,22,24
    11:1,5,19,22,23
    14:5 16:23
    18:19,24 19:10
    22:20 23:10,15
    24:11 41:2,4
    41:16,17,17,20
    42:1 46:3 48:3
    48:4 49:15,20
**known**  17:9

**l**

**l**  1:15 5:16,16
    5:17,17 7:3
    54:5 55:8

**late**  23:5,5,5,6
    23:7 32:21
    33:2
**lawyer**  8:3
    11:11,11
**led**  14:4 51:3
**left**  21:22
**letter**  11:24
**letting**  41:2
**license**  54:6
    55:9
**listing**  44:20
**little**  12:22
    14:15 19:5
    26:24 49:19
**llc**  2:9
**located**  1:20
**location**  17:14
**long**  31:23
    45:24 48:16,23
**longer**  9:2
**look**  7:24 8:19
    42:10 49:16
**looked**  8:5,8,9
    8:12,16 29:21
    30:3,8,9 37:13
    37:13,14 42:20
**looking**  49:3
**lose**  38:3,12,17
**lost**  35:3 36:21
    37:3
**lot**  17:5 29:24
    30:2 41:3

| m | | | |
|---|---|---|---|
| **m** 5:17 | **mentioned** 44:3 | **movement** 9:19 | **november** |
| **made** 8:1 11:21 | 52:12 | 9:20 | 32:16 33:2 |
| 15:1 22:6 | **ments** 25:13 | **moving** 15:2 | **number** 12:16 |
| 23:21,25 24:9 | 26:13 | 32:4 | 12:18,19 |
| 24:10,14 26:7 | **mid** 25:15 | **multiple** 8:17 | o |
| 51:8,9 | **middle** 28:5 | n | **o** 5:15 |
| **make** 5:18 | **midway** 36:19 | **n** 2:1 3:1 5:15 | **o'clock** 47:24 |
| 16:14 50:2,7 | 36:19 51:6 | 5:16 | **oath** 4:10 |
| **making** 22:21 | **mine** 16:11 | **name** 4:1,16 | **object** 28:19 |
| **mandate** 18:10 | **minor** 15:9 | 5:7,9,12 6:21 | **objection** 23:24 |
| **manual** 18:13 | 44:16 45:17 | 11:4,6 16:15 | 23:25 28:13,15 |
| 18:14,15 | **minute** 7:9 | 16:16,16 17:8 | 28:18 40:6 |
| **marked** 27:3 | 49:20 | 31:18 33:12,15 | **objections** 4:10 |
| 31:10 34:8 | **minutes** 47:14 | 42:13 48:4 | 4:15 |
| **marks** 35:14 | **mis** 31:18 | **names** 6:18 | **occasion** 28:2 |
| **married** 7:6 | **mistaken** 49:11 | **narrow** 46:24 | 32:4 41:16 |
| **matter** 52:11 | **misunderstood** | **navigating** 32:6 | 42:11 |
| **matters** 54:11 | 37:25 | **nearly** 38:3,12 | **occasions** 48:16 |
| **mean** 6:20 9:23 | **monroe** 2:10 | **need** 6:14 20:24 | **occurred** 29:5 |
| 16:12 17:5,7 | **month** 13:12,12 | 25:2 49:22 | 47:22 |
| 17:22 20:2 | 33:5 | 53:15 | **october** 12:20 |
| 21:18 24:11,25 | **months** 22:25 | **needs** 13:4 | **offer** 15:19,20 |
| 25:7 26:6 | **morrissey** 2:3,3 | **never** 11:5,25 | **office** 48:5 |
| 27:22 32:22 | 3:6 4:16,17 8:4 | 16:17 18:4 | **officer** 10:2,4 |
| 33:7 47:18 | 12:1 20:25 | 24:19,19,25 | 13:15 15:16 |
| **medical** 13:4 | 21:4 23:24 | 25:1,4,5,7,7,23 | 16:19 17:15,23 |
| 14:16 25:10,12 | 28:13,15,19,22 | 32:24,24 42:16 | 18:5,10,11 |
| 25:15 29:15 | 33:21 40:6 | **new** 50:17 | 22:22 33:22,23 |
| 37:9 39:10 | 43:10,16,22 | **normal** 50:8 | 36:12 38:23 |
| 42:18 52:14,17 | 44:2 52:10 | **northern** 1:1 | 39:23 42:2 |
| **meeting** 8:22 | 53:7,15 | **notice** 11:9 | 44:16,16 45:15 |
| **members** 37:24 | **morrisseylaw...** | **noticed** 20:10 | 47:25 51:19,24 |
| **mention** 45:1,7 | 2:5 | **noticing** 4:11 | **officer's** 48:4 |
| | **moved** 10:1 | **notified** 16:14 | **officers** 16:8,23 |
| | | | 17:5 34:19 |

36:15 37:25
50:24
**oh** 17:3 20:12
30:19 36:22,24
45:20 46:7
**ointment** 42:23
**okay** 5:3 10:22
12:5,25 17:3
17:11 20:23
21:3,11,24
23:8 26:2
28:21 33:1,18
34:21 36:5
40:1,16 41:9
42:22 43:12,14
43:18 46:25
48:14 49:2,15
50:14 51:2
52:24
**old** 31:19
**once** 18:7,7
20:22
**ones** 27:9
**oo0oo** 53:22
**opposed** 24:21
25:17
**order** 53:17
**orders** 19:13
**original** 41:10
52:22,25
**outcome** 55:1
**overlapping**
5:24

**p**

**p** 2:1,1
**p.m.** 34:3 43:20
43:21 44:25
50:20,20 53:20
**page** 3:4,10
**painful** 35:15
**palms** 35:14
**pardon** 30:15
**part** 28:5 29:8
**participating**
4:4
**parties** 4:4
54:23,25
**partway** 24:12
51:24
**party** 17:16
**pat** 4:17 6:13
9:6 28:17 43:9
50:18
**patrick** 2:3
**people** 15:13
40:3
**person** 35:9
44:18
**personal** 54:14
**personally** 9:9
9:17 10:14,18
**photo** 26:23,25
**photograph**
3:11
**physically** 4:5
10:15
**picked** 35:7

**place** 54:21
**places** 31:25
**plaintiff** 1:5 2:7
**please** 5:7 6:5
7:20
**podiatrist** 46:7
46:8,8,10
50:21 51:9,13
52:13
**podiatry** 51:13
**podometry**
46:5
**policies** 9:10,18
10:7,10,19
17:12,18 18:1
18:9
**policy** 18:19
38:1
**posed** 51:16
**preparation**
8:20
**prepare** 7:15
7:17,24
**present** 4:6
**pretty** 35:23
**prevent** 17:20
**previous** 54:8
**prior** 16:17
22:24
**privileged** 12:3
12:4
**probably** 8:25
9:4,4 13:11
15:11 21:20
33:5 40:10

42:15 48:4,19
48:20
**procedure** 1:19
18:19
**procedures**
9:11,18 10:7
10:19 17:12,19
18:2
**proceeded** 9:13
**proceedings**
47:14 54:17
**processed**
12:14,17
**prompt** 50:11
**propel** 15:3
**protocols** 17:10
17:10
**provided** 44:16
**pursuant** 1:18
**push** 15:4,5,17
15:24 16:2,20
17:23 18:3,6
24:18,23 30:12
39:15 51:5
**pushed** 16:8,18
28:8 38:1
**pushing** 15:8
17:13,16,20
51:7
**put** 10:20 15:22
23:4 26:22
29:9 32:23
40:2 48:2
**pwm** 2:5

**[question - restarted]**

| **q** | 45:18,21 49:4 | **receiving** 25:17 | **remszik** 34:19 |
|---|---|---|---|
| **question** 6:8 | 50:20 51:16 | 25:23 37:4,20 | 34:20,20 |
| 24:6 26:10 | **ramps** 13:22 | 37:20 38:5 | **rephrase** 6:6 |
| 28:20 | 19:6,12,18 | 44:19 | **replied** 48:22 |
| **questions** 5:25 | 20:3,6,7,9,12 | **recent** 35:23 | **reply** 48:21 |
| 6:5 7:23 12:3 | 20:19 22:24 | **recognize** | **report** 29:20,22 |
| 43:11 50:1 | 26:17,21 31:5 | 19:18 27:5 | 39:3 |
| 52:8 53:2 | 34:16,23 39:15 | 34:10,15 | **reported** 54:13 |
| **quoted** 48:24 | 44:20,21 | **record** 5:8,10 | **reporter** 1:16 |
| **r** | **ran** 38:3 | 6:3 7:8,11,13 | 4:1,3 5:19 54:3 |
| **r** 2:1 5:15,16 | **rare** 32:12 | 30:20,22 33:25 | 54:6 55:9 |
| **radunsky** 2:9 | **reach** 21:19,19 | 54:16 | **reporting** 4:7 |
| 4:14 | 21:21 27:10 | **reduced** 54:14 | **represent** 4:17 |
| **rail** 21:23 | **read** 38:4 40:24 | **refrain** 6:2 | 4:18 |
| **ramp** 11:16,18 | 41:1 44:9,21 | **refusals** 39:16 | **request** 16:9,10 |
| 11:25 13:18,19 | 47:8,20 52:6 | 39:18 | 16:13 39:10,12 |
| 13:20,21,21 | **reading** 38:11 | **refuse** 24:17 | **requesting** |
| 19:1,1 20:15 | **real** 43:4 | **refused** 36:13 | 50:23 |
| 20:16,21 21:7 | **reason** 46:9 | 50:25 | **require** 34:23 |
| 21:8,8,13,14 | **reasonable** | **regarding** 9:11 | **respond** 24:1,2 |
| 22:17,21 23:9 | 50:8 | 10:8 48:6 | 24:7 28:16,22 |
| 23:12,13,20 | **recall** 6:11,12 | **relation** 11:8 | 40:8 48:17 |
| 24:9,9 25:3,9 | 8:25 18:20 | **relative** 54:22 | 49:13,13,14 |
| 25:20 26:1,5 | 20:3,6 21:11 | 54:24 | 50:11,12 |
| 26:13,14,15,18 | 21:13 23:8 | **remember** | **responded** 50:3 |
| 26:18 27:5,8 | 25:21 26:11 | 18:22,23 25:22 | 50:9 |
| 27:12,13,15,20 | 32:5 50:23 | 30:24 31:3,3 | **response** 33:14 |
| 27:24,24 28:6 | **receive** 11:7 | 35:19 37:20 | 37:21,22 38:6 |
| 28:6,12 30:25 | 41:12 51:18,23 | 38:5 41:15 | 40:2,19 41:10 |
| 31:23 32:4,6 | **received** 34:24 | 48:16 | 41:18,20 42:5 |
| 32:10,13 33:13 | 34:24 37:17 | **remind** 12:2 | 49:5,17 52:3,5 |
| 34:25 36:8,12 | 40:21 44:13 | **reminded** | **rest** 24:15 |
| 36:19 38:1,2 | 45:10,10 49:4 | 39:15 | **restart** 30:14 |
| 44:5,13,14,17 | 52:3 | **remotely** 1:17 | **restarted** 30:17 |
| 44:18 45:11,11 | | 4:7,11 54:20 | |

**[result - spell]**                                    Page 10

**result**  22:9 25:3
**returned**  24:21
**returning**
  47:17
**reviewed**  9:9
  9:17 10:6,14
  10:18
**reviewing**
  37:23 40:3
**reword**  17:25
  24:6
**right**  5:6 6:17
  7:12,21,22 8:6
  11:15 12:15
  13:17 15:24
  16:1,3 18:23
  21:22 23:13
  24:22 26:1,8
  30:24 32:1,6
  32:16,21 33:4
  34:5 35:23
  37:18 38:10,14
  38:18 39:7
  41:10,15 42:12
  42:12,13 43:6
  45:21 49:2,18
  50:5,12,12
  52:4,7,19 53:1
  53:5,7,11
**room**  4:6
**rtu**  12:8 13:1
  13:17,18,20,20
  13:24 14:8
  19:7,11 20:4,7
  20:11 26:5,14

  26:18 27:8,13
  31:5,24 44:15
  45:3,15,19,21
**rubbing**  29:12
**rules**  1:19 5:20
  17:12,19 18:2
**run**  38:12

**s**

**s**  2:1 5:15,17
**sabrina**  19:4
  41:25 42:3
  44:19
**saying**  11:17
  17:21 18:18
  19:8 25:5,5
  27:10,13 30:4
  30:14,16 33:17
  33:19,20 35:2
  37:23 39:18
**says**  37:18
  38:16,19,20,25
  39:2,9,13,14
  45:9
**scratch**  42:8
**scratched**
  47:16
**screen**  36:25
  44:8
**second**  14:3
  26:24 30:20
**see**  10:11 24:24
  35:17 44:8,9
  46:5,10
**seem**  50:8

**seen**  10:15 18:4
  28:7 51:6
**send**  52:20,24
  52:24
**sense**  50:2,7
**sent**  30:17
**september**
  12:20
**service**  39:11
**services**  25:24
**set**  55:3
**sheriff**  1:7 4:14
**sheriff's**  48:5
**shorter**  9:2
**shorthand**  1:16
  4:3 54:3,5 55:9
**shortly**  32:20
  33:1
**shot**  14:19,20
  14:22,24
**show**  41:19
  44:8 48:25
  49:11
**showed**  33:19
**showing**  40:14
**shown**  35:16
**shows**  38:20
  41:24
**shut**  33:16,17
**sic**  37:25 38:2
  44:20 46:5
**signature**  31:14
  53:8,21 55:4,8
**signed**  32:15
  46:14

**signing**  30:25
  31:4
**similar**  45:14
**sir**  15:25 43:15
  48:9 51:11,15
  51:17 52:25
  53:12
**situation**  11:24
  36:11 40:14
**slamming**  35:8
**social**  46:14,18
**software**  30:17
**somewhat**
  50:11
**sorry**  5:15 8:4
  9:15 16:25
  27:17 28:17
  36:10,22,22,25
  42:7 43:1,14
**sort**  14:2
**sought**  29:14
**sound**  49:2
**sounds**  49:17
**south**  1:21 2:4
**speak**  5:22 48:6
**speaking**  5:22
  37:23 40:3
**specific**  14:23
  20:7 35:19
**specifically**
  20:4 22:13
**specified**  54:21
**speed**  35:7
**spell**  5:7,10,12
  5:13

**spinal** 31:20
**spine** 14:25
  15:1
**spoken** 8:6
**spot** 22:10
**staff** 30:11
  32:13 37:24
  39:14 41:4,7
  51:3
**stand** 41:10
**standards** 9:10
**start** 5:6
**started** 22:23
  23:2,3,5 28:7
  32:20 33:4
  51:7
**starting** 4:11
**state** 1:16 5:7
  54:6
**statements**
  31:4
**states** 1:1
**steep** 21:8
  31:23
**steepness** 23:10
  28:6
**stenographic...**
  54:13
**stillman** 2:10
  3:5 4:13,13 5:2
  7:8,12,14 8:11
  12:7 21:1,3,10
  24:4 27:4
  28:17,21,24
  30:19,23 31:11

33:23 34:4,9
  40:12 43:8,12
  43:23 48:13
  53:4,13,17
**stipulate** 4:19
**stipulation** 4:9
**stop** 20:23 29:6
  29:6,9 35:10
**street** 2:10
**strike** 23:18
**stroger** 20:24
**stroger's** 20:22
  21:7,9
**struggle** 24:16
**struggled** 23:23
  24:20
**struggling**
  24:12,24 25:9
  28:8 51:6,20
**stuck** 46:22
  47:12
**stuff** 41:3
**subject** 36:7
**subpoena** 11:8
  11:23,25
**suite** 2:10
**summarize**
  31:16
**suppose** 8:21
  8:21
**supposed** 17:8
  17:22 18:24
**sure** 8:1 16:14
**surprised** 42:4

**sworn** 4:21,24
  54:10

**t**

**t** 15:1 31:20
**take** 13:14,18
  13:20 14:6,11
  26:2,3,4,4
**taken** 1:14,17
  13:13 26:6
  34:1 43:19
  54:19
**talk** 7:24
**talked** 8:2 12:2
**talking** 26:16
  36:1,23 50:18
**tell** 31:17 38:10
  38:23 39:22,25
  52:14
**telling** 41:6
  49:12
**ten** 12:11 15:11
  15:13 47:13
**tend** 15:3 16:3
**tered** 4:11
**testified** 4:25
**testify** 54:10
**testifying** 31:18
**testimony**
  54:17
**thank** 53:11,13
**thing** 45:14
  46:6,17
**things** 5:18
  12:2

**think** 8:21 11:5
  14:2,3 18:13
  18:21 20:19
  21:2 27:7 28:6
  40:1 41:23,23
  48:19,21 49:9
  49:10 53:4,5
**thinking** 51:3
**third** 6:4 14:12
**thomas** 1:7 2:3
**thompson**
  36:13 44:16
**thought** 36:22
**three** 8:25
  12:22,22 13:11
  19:23
**tier** 31:19 51:10
**time** 4:8 13:1,9
  19:25 23:20
  38:2,11,15,16
  38:22 44:20,21
  47:21 48:11
  49:18 53:10
  54:20
**times** 13:12
  15:10,14 23:23
  29:24 30:2
**tion** 31:2
**tires** 35:10
**title** 16:16
**today** 7:16,23
  11:10,12 20:1
  33:7
**told** 11:11
  18:24 30:11

49:3
**took** 48:16,18
48:20,23 49:18
49:19,20
**touch** 21:22
**transcript** 5:24
54:12
**transfer** 25:16
**transport** 9:11
13:15,16 25:15
**transportation**
9:25 26:3
**transported**
17:6 19:10,15
**transporting**
17:14
**travel** 31:25
**traversed**
23:19 27:20,22
**traversing** 20:5
32:9,13
**treat** 26:12
**treated** 26:11
29:19
**treatment**
25:25 29:15
**trip** 45:2
**trouble** 20:16
**troubles** 23:22
**true** 54:16
**truly** 23:23
**truth** 41:6
54:10
**try** 5:21 6:1,6
6:11

**trying** 9:23
29:6
**tunnel** 14:9,11
**tunnels** 13:23
38:22
**turned** 24:20
**twice** 13:12
**two** 20:9 22:24
22:25,25 26:17
26:20 37:25
42:15 46:1
48:7
**types** 10:19
36:9
**typewriting**
54:14

**u**

**ultimate** 51:21
**ultimately**
23:22 24:14,20
41:9 51:18
**under** 12:15,18
12:19,22 19:14
20:3,7 54:14
**understand** 6:4
6:6
**understanding**
16:6
**understood** 6:8
**unit** 46:11
**united** 1:1
**upward** 34:22
**use** 21:16,18,20
21:21 31:20
35:10 42:25

43:4
**used** 23:17,18
31:24
**using** 21:22
**usually** 15:24
50:15

**v**

**v** 1:6
**validity** 4:10
**various** 31:25
**verbal** 6:1 22:9
22:12
**verbally** 22:8
39:11
**verified** 55:4
**video** 38:20
41:3
**videoconfere...**
1:17 2:6,13
54:20
**vividly** 18:23

**w**

**w** 2:3 5:17
**wait** 5:23 33:14
**waiting** 49:9
**waive** 4:9,15
53:8
**waived** 53:21
**wall** 35:9 38:13
**walls** 10:16
**want** 12:2 24:5
36:13 52:22
**wanted** 48:25

**wanting** 15:22
**washroom**
42:25 43:4,7
**way** 22:21
23:21 26:7,11
37:7 45:4,21
51:13,14
**ways** 51:19
**we've** 8:6 12:2
**week** 48:19,20
**weeks** 42:15
**went** 8:3,10
13:8 29:20
46:3 47:2
52:13
**west** 2:10 20:11
**western** 2:4
**westmoreland**
1:4 4:17 10:23
10:25
**wheel** 29:10
47:15
**wheelchair**
14:13,17,18
27:24 31:20
32:5 38:3,12
38:17 39:4
47:12
**wheelchairs**
39:15
**wheeling** 38:24
**wheels** 29:12
**whereof** 55:3
**williams** 1:13
3:3 4:18,22 5:3

**[williams - zstillman]**                                   Page 13

5:9,16 6:20 8:4
12:1 21:5 24:1
27:2 31:9,18
33:22 34:7
37:24 38:21,23
39:2 43:17
44:3,10,23
48:11,15 49:22
52:20 53:9,13
**witness**  1:20
3:3 4:6,20,23
8:8 12:6 21:6
24:2 28:14,23
40:9 43:14,18
53:11,14 54:9
54:9 55:3
**word**  7:19
**worker**  46:14
46:19
**wounds**  39:4,5
39:11
**write**  33:11
**written**  10:7,9
10:10,11 39:11
**wrong**  30:4
**wrote**  16:24,25
17:2 49:1

**x**

**x**  3:1

**y**

**y**  5:16
**yarnell**  1:13
4:22 5:9,16

**yeah**  5:14 6:16
6:25 11:2,18
14:1,11 16:2
17:25 19:1,23
23:6,11 25:7
33:5,23 36:3
37:3 39:12
41:22 43:7,23
46:2 49:19
**years**  12:11,22
12:23 19:23
22:25 31:19
**yep**  53:6
**yesterday**  50:4

**z**

**zach**  53:2
**zachary**  2:10
4:13
**zstillman**  2:12

Federal Rules of Civil Procedure

Rule 30


(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.



DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.