IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Eugene Westmoreland, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | 23-cv-1851 |
| -*vs*- | ) | |
| | ) | Judge Tharp Jr. |
| Thomas Dart, Sheriff of Cook County, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PERMANENT INJUNCTION**

The east RTU tunnel ramp is designated an accessible route to bring people from the Residential Treatment Unit (RTU) building to the CCDOC underground tunnel system. This ramp is less than 60 feet from the Cermak ramp, the main passageway for wheelchair users housed in the RTU to go for medical appointments at Cermak.

Defendants' retained architect, Carl Darr from Globetrotters Engineering Corporation (GEC) and Eric Davis, the Deputy Director of Capital Planning and Policy for Cook County, agree the east RTU tunnel ramp is non-compliant with the ADA structural standards due to many violations. One of the more egregious violations, the top landing that is 85 percent short of the required space, can be easily corrected by relocating doors. Another violation, the non-compliant slope near the upper portion of the ramp, appears to be easily corrected within several months by resurfacing the walking surface.

Rather than move at all deliberate speed to repair this ramp, like their professed commitment to repair the non-compliant ramp leading to Cermak that is the subject of the *Walker v. Dart,* 20-cv-261, litigation, defendants seek to wait years to make necessary corrections due to

a desire to first conduct an ADA assessment of about 60 buildings at CCDOC to identify all ADA violations.

This proposal is unworkable. The RTU east ramp violations deprive wheelchair-users the ability to traverse the ramp on the same basis as non-disabled inmates. Defendants know the rights of wheelchair-users will continue to be violated until the ramp is brought into compliance with the ADA.

For the reasons previously advanced and discussed below, the plaintiff class requests that the Court grant the motion for permanent injunctive relief requiring defendants to renovate the ramp to comply with the applicable ADA structural standards.

## I. Standing to seek injunctive relief is satisfied because a motion for certification was filed when plaintiff was at CCDOC

Defendants contend Mr. Westmoreland lacks standing because he was transferred from the Jail to the Illinois Department of Corrections on September 26, 2023. Dkt. 82, Response at 21. For the reasons explained in *Westmoreland v. Hughes*, 23-cv-14044, the Court has subject matter jurisdiction because the "inherently transitory" exception to the mootness doctrine applies.

The Court recently explained the analysis for the "inherently transitory" exception as follows:

> The Seventh Circuit then extrapolated from the Supreme Court's case law a two-element test "for the 'inherently transitory' exception to apply: (1) it is uncertain that a claim will remain live for any individual who could be names as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering a deprivation complained of in the complaint." *Id.* at 582. Unlike the capable-of-evading-review doctrine, there is no need for a proposed named plaintiff to show that he or she will be personally subject to the alleged deprivation again. And in terms of timing, the plaintiff must "file[] for class certification while a party to a live controversy" to be eligible to proceed under this exception. *Id.* at 580

Exhibit 1, *Westmoreland v. Hughes*, 23-cv-14044, Statement at 6.

Plaintiff meets this test here. As for the first element, on May 9, 2023, plaintiff moved for class certification seeking, in part, to represent a Rule 23(b)(2) class of wheelchair-users who traverse the RTU ramps. Dkt. 7, Motion. This motion remains under advisement, so there is no issue with respect to timing. The second element is also satisfied. The RTU houses most wheelchair users, Dkt. 14, Sheriff Answer ¶ 8, and the east ramp is "considered an accessible route" located less than 60 feet from the top of the Cermak ramp. Exhibit 2, Davis (6/5/2024) Dep 138:23-139:3, 187:3-11. Indeed, wheelchair-users continually navigate this ramp. *Id.* at 248:10-17 (until ramp is fixed wheelchair-users will traverse ramp to attend Cermak medical appointments). Putative class member Efferson Williams traversed the east RTU ramp and Cermak ramp on April 23, 2024, and transporting correctional officer provided no assistance down the ramp. Dkt. 82-4, Williams Dep 44:3-44:23; Exhibit 3, Williams Grievance dated 4/23/2024. Therefore, for similar reasons explained in *Westmoreland*, "there is a strong basis to suspect that the alleged deprivations will recur as" wheelchair users traverse the east RTU ramp. *See* Exhibit 1, *Westmoreland* Statement at 6.

## II. The Court has the power to enter permanent injunctive relief

Defendants, relying on the Seventh Amendment and *Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018), insists that a jury must decide damages and injunctive relief. Dkt. 82, Response at 10. This argument is irreconcilable with *Bennett v. Dart*, 953 F.3d 467, 468-69 (7th Cir. 2020), where the Seventh Circuit held the issue whether a building complies with the federal accessibility standards "avoids all person-specific questions." Applying this principle, the Ninth Circuit reiterated in *Kirola*, "[o]bedience to the spirit of the ADA does not excuse noncompliance with [] ADAAG's requirements." *Kirola v. City and County of San Francisco*, 860 F.3d 1164, 1178 (9th Cir. 2017) (internal citation omitted). And when the Ninth Circuit reviewed *Kirola* again in 2023

it held the "district court abused its discretion in denying relief for the ADAAG violations," *Kirola v. City and County of San Franscico,* 2023 WL 2851368, at *2 (9th Cir. 2023), which caused the district court, on remand, to grant injunctive relief directing the local government to correct ADAAG violations such as "a missing grab bar in one of the accessible restrooms in the ballpark area in violation of ADAAG § 4.17.3" and "[t]he doorway to the video booth in the Deaf Services Center has too little clear opening width in violation of ADAAG § 4.13.5." *Kirola v. City and County of San Francisco*, 2024 WL 1354414, *2-3 (N.D. Cal. March 28, 2024).

Defendants also misapply *Lacy* and fail to acknowledge the Seventh Circuit affirmed the grant of permanent injunctive relief with respect to moving a privacy screen located in a holding cell at the Maywood courthouse because it was "1.5 inches too close to the rear walls of the cell[]" under the latest accessibility standards. *Lacy*, 897 F.3d at 867, 869. *Lacy* concerned six courthouses that "were built before 1992 and thus are not subject to the ADA's structural accessibility standards." *Lacy*, 897 F.3d at 854. The district court consolidated the hearings on preliminary injunctive relief with a trial on the merits and made a finding the "defendants had not consistently helped wheelchair-using detainees maneuver the ramps" and issued a permanent injunction "with respect to the ramp-assistance policy." 897 F.3d at 856. The Court overturned the district court's grant of permanent injunctive relief only with respect to the "Sheriff's ramp policy." 897 F.3d at 869. The Seventh Circuit held the district court did not correctly apply Rule 65(a)(2) of the Federal Rules of Civil Procedure by consolidating a hearing on preliminary injunctive relief with a trial on the merits and deprived defendants of a jury trial. 897 F.3d at 859. The "proper procedure would be for the district court to hold a hearing on the preliminary injunction, then to try the legal issues before a jury, and then to hold the hearing itself on the permanent injunction." 897 F.3d at 859.

While most of *Lacy* did not concern compliance with structural accessibility standards, two holding cells at the Maywood courthouse were renovated after the litigation commenced. The County modified these holding cells to "to bring them into partial compliance with the latest accessibility standards." 897 F.3d at 867. Specifically, the "County updated the holding cell entryways, replaced the metal benches, and installed new lavatory fixtures and grab bars; however, it did not remove or reposition the privacy screens." *Id.* These voluntary modifications triggered a legal obligation to bring the facilities "into compliance with the latest accessibility standards." 897 F.3d at 868. "After receiving supplemental briefing and conducting a limited evidentiary hearing, the district court concluded that the accessibility standards mandated the County's full compliance with the clear-floor-space requirements" and "issued a permanent injunction requiring the County to move the privacy screens by 1.5 inches." 897 F.3d at 867.

The Seventh Circuit affirmed the permanent injunction holding the district court was the appropriate "finder of fact" when deciding whether it was "technically infeasible" to move the privacy screen located near the toilet 1.5 inches. 897 F.3d at 869. It was appropriate for the district court to reach "a reasoned conclusion based on the competing evidence before it" and there was "no reason to disturb its factual findings." *Id.*

Similar to the *Lacy* decision regarding the Maywood courthouse privacy screens being 1.5 inches too close to the toilet, the Court is the appropriate "finder of fact" whether the east RTU ramp complies with the applicable structural standards and has the power to enter permanent injunctive relief. There is no dispute this ramp, because it was built after 1992, must comply with the structural accessibility standards. *Lacy*, 897 F.3d at 853. Also, there is no dispute the ramp does not comply with the applicable structural accessibility standards and,

similar to the district court in *Lacy*, this Court is the appropriate "finder of fact" regarding the ramp's compliance with structural accessibility standards.

> **III. Request for injunction is not moot on grounds of an intent by Eric Davis, Deputy Director of Capital Planning and Policy, to repair the non-compliant ramp**

Defendants argue plaintiff's request for an injunction is "unnecessary" and "moot" because Mr. Davis plans to repair the non-compliant ramp but first desires to conduct a "comprehensive, multi-contract program to assess the overall ADA/accessibility compliance of all its public safety facilities." Dkt. 82, Response at 12-13. This includes the assessment of "approximately 60 structures, totaling approximately 3.5 million square feet." Dkt. 82-1, Davis Decl. ¶ 5. If an architect is hired under this comprehensive plan to identify all ADA violations, Mr. Davis has "absolutely no idea" of the cost to make necessary improvements, but believes the cost "is likely in the tens of millions of dollars, if not more." Exhibit 2, Davis (6/5/2024) Dep 244:9-15. And prior entering any contract to assess ADA compliance or commencing construction to repair ADA violations all funding must be approved by the Cook County Board of Commissioners. Exhibit 2, Davis (6/5/2024) 244:16-245:8.

Cook County has absolutely no idea how long the east RTU ramp will remain non-compliant with the ADA. Exhibit 2, Davis (6/5/2024) 228:12-19. Mr. Davis, for example, said the ramp "may or may not" be renovated in four years. Exhibit 2, Daivs (6/5/2024) Dep 247:10-24. It is not uncommon for Cook County to take years to attempt to remedy a non-compliant ramp.[1]

---

[1] In 2019 Mr. Davis testified that the intent of Cook County was to procure an architect to design the Cermak ramp, a few feet from the east RTU ramp, "through what's called a task order." Exhibit 4, Davis (12/19/2019) Dep 35:7-36:4. The purpose of the "task order" was to "expedite execution of projects." *Id.* The County Board, however, denied the request by Mr. Davis. *Id.* at 36:5-8. Following the County Board's decision, Mr. Davis testified on December 19, 2019, that he was "working with procurement to establish a standard that would allow us to go forward" and hoped to "accomplish those projects as expeditiously as possible." *Id.* at 36:18-37:17.

The purpose of the ADA is to provide equal access to public buildings, that Mr. Davis believes is an "extremely important principle" so that individuals can "interact on an equal basis with their environment." Exhibit 2, Davis (6/5/2024) Dep 230:24-232:17. Indeed, Mr. Davis elaborated that "we need to find a way to remedy" the non-compliant east RTU ramp. *Id.* at 235:7-13. Mr. Davis agreed the non-compliant landings – that are less than the required 60 inches – deprive wheelchair-users the same ability to navigate the ramp as non-disabled individuals.[2] *Id.* at 162:4-18. When discussing the non-compliant top landing, which is 85 percent short of the minimum standard required by ADA Code, Mr. Davis said "I am at a loss to understand why it would have been constructed that way." Exhibit 2, Davis (6/5/2024) Dep 155:12-18.

There is also evidence wheelchair-users continue to experience harm traversing the ramp. In addition to Mr. Westmoreland and Mr. Efferson Williams, defendants deposed the following wheelchair-users:

    a. Darreon Thompson is detained at the Jail and described harm from traversing the steep RTU ramp to include rolling down fast and burning hands while breaking and that his physical injuries were similar to "rug burns" every time moving down the ramp. Exhibit 6, Thompson Dep 1, 17:8-10, 20:13-21:2, 30:21-25, 31:17-32:17.

---

Mr. Davis, the evidence cited by Cook County in support of an "intent" to repair the ramp, does not have the authority to bind the government to repair the non-compliant ramp. Ultimately, the County Board must allocate funds to repair the ramp. Exhibit 5, Davis (3/12/2024) Dep 234:10-13. Cook County, however, has not even priced construction for the Cermak ramp because they do not have an architectural design for the ramp and "[y]ou can't price anything until you have the design, which we're working on getting right now." *Id.* at 237:7-22. And prior to review by the County Board, the Cook County Procurement Office has the power to reject construction or design proposals. *Id.* at 225:21-226:20. In response to his counsel's questions, Mr. Davis said "[y]ou know, so as far as uncertainty is concerned, can I absolutely guarantee it? No." *Id.* at 226:21-22.

[2] A 60 inch landing allows for a wheelchair-user to have a "place of rest," serves as a place to decelerate a wheelchair, and also provides a turning radius, according to Mr. Davis. Exhibit 2, Davis (6/5/2024) Dep 158:23-159:22, 160:7-161:2.

b. Deangelo McClain is detained at the Jail and travels to Cermak for medical appointments. Exhibit 7, McClain Dep 15:17-16:8. He was deposed on April 26, 2024, and testified the day prior he struggled getting up the ramp because moving up the ramp "take all of my energy away from me" and "[i]t also make me use the bathroom on myself numerous of times." *Id.* at 19:7-20:8. Mr. McClain said moving down the ramp is equally hard because he rolls fast, has burning hands, and suffered a dislocated thump while using the ramp. *Id.* at 20:9-22:10.

c. Tirnell Williams is currently at the Jail and described hardship moving up and down the ramp, including pain and fatigue. Exhibit 8, Williams Dep 1, 12:1-15, 31:12-32:16.

d. Jeremiah Dobynes, a former detainee at the Jail, said he was moved to Cermak "[o]nce every two weeks maybe." Exhibit 9, Dobynes Dep 1, 13:11-14:3. He explained "[i]t always a struggle going up the ramp," that "[i]t's almost impossible," that some officers refused to push him up the ramp stating "I'm not touching your wheelchair," and that he would miss "Cermak pass" and return to his tier because he was unable to navigate the ramp. *Id.* at 14:18-15:22.

e. Ricky Harris spent about 50 months at the Jail and navigated the RTU ramp several times without assistance. Exhibit 10, Harris Dep 50:22-52:10. Mr. Harris elaborated "Officers would not push you. The only way you get an officer to push you if he know you and he might be okay and feel like pushing you that day." *Id.* at 53:10-21.

And finally, the defendants are plainly wrong putative class members are not "at any risk of injury, especially considering the policies in place to assist detainees in traversal of ramps."

Dkt. 82, Response at 82. Carl Darr, Cook County's retained expert, said a local government may not avoid bringing a ramp into compliance with the ADA structural requirements by instituting a practice to push wheelchair-users up and down a non-compliant ramp. Exhibit 11, Darr Dep 88:18-22; *Clemons v. Dart,* 168 F.Supp.3d 1060, 1066 (N.D. Ill. 2016) (Tharp, J.) (agreeing "that the availability of staff assistance upon request does not constitute equivalent access under the applicable regulations"). And evidence shows wheelchair-users are not consistently pushed up and down the ramp.[3] Dkt. 72, Motion ¶ 8; Dkt. 82-4, Williams Dep 44:12-25; Exhibit 9, Dobynes Dep 14:18-15:22; Exhibit 10, Harris Dep 50:22-52:10, 53:10-21.

On a final note, Cook County has made similar representations regarding an intent to renovate inaccessible buildings. In *Lacy*, for example, the "County Board approved $8.3 million in funding for ADA renovations to the Leighton courthouse holding cells as a part of its 2015 budget" and "as of September 1, 2015, the County had executed a contract with Prima Engineering for the renovation design of the holding cells in the lower and upper-levels at the Leighton courthouse." *Lacy v. Dart*, 2015 WL 5921810, at *9 (N.D. Ill. 2015) (Gettleman, J.). Specifically, Michael Gumm, the County's former ADA Project Coordinator, testified "the Leighton courthouse construction will be completed in three phases over the course of 34 months (10 months for design and 24 months for construction). The first phase of construction will renovate the lower level/bridge holding cells, the second phase will renovate the holding cells behind the courtrooms on floors one and two, and the third phase will renovate the holding cells behind the courtrooms

---

[3] Defendants cite a roll call memorandum dated December 22, 2023, from ADA Compliance Officer Rivero-Canchola explaining that if a wheelchair-user refuses assistance moving up or down ramps it "must be documented in an incident report or informational only report in CCOMS" that must occur "on the date of the incident." Dkt. 82-2, Memorandum. On April 24, 2024, the Sheriff's counsel represented that from March 24, 2021 to at least April 24, 2024, there are no records in CCOMS that a wheelchair-user refused assistance moving up or down a ramp. Exhibit 12, Sheriff Dart's Supplemental Response to Production.

on floors three through seven." *Id.* Fast forward ten years, the County has not renovated the holding cells at the Leighton courthouse. Mr. Davis testified the drawings by Primera, the architect of record, "were not complete" because "[t]here was an issue with phasing that came up in terms of implementing it, so the drawings were never completed and issued for permit or construction." Exhibit 13, Davis (1/24/2022) Dep 192:5-19. Cook County spent approximately one million dollars for the design drawings for the Leighton courthouse. *Id.* at 192:5-9. This is evidence that although Mr. Davis and Cook County may have noble intentions, an injunction is necessary to ensure the east RTU ramp is remedied to comply with the law.

### IV. Plaintiff satisfies each of the requirements for a permanent injunction

Defendants contend plaintiff is unable to satisfy any of the requirements for a permanent injunction. Dkt. 82, Response at 13-14. Plaintiff respectfully requests that the Court reject this argument for the following reasons.

#### A. Success on the merits

Defendants argue plaintiff is unable to demonstrate success on the merits because the non-compliant ramp is a *de minimis* violation of the ADA. Dkt. 82, Response at 14. This position should be rejected for the following reasons.

As an initial matter, defendants present no evidence that the ramp's violations are *de minimis*. The ADA sets minimum structural standards a public entity must follow. Mr. Davis and Mr. Darrr, Cook County's retained expert, agree there are multiple reasons why the east RTU ramp fails to comply with these standards.[4] Indeed, Mr. Darr testified "that [a ramp] being too steep or too shallow even minor amounts make it more difficult for a wheelchair user, but it doesn't

---

[4] When Mr. Davis uses the word "minor" in his declaration, *see* Dkt. 82-1, Davis Decl. ¶ 15, the term refers to "how difficult it is for them to fix." Exhibit 14, Davis (6/4/2024) Dep 103:5-11.

necessarily mean that they can't make it up or down." Exhibit 11, Darr Dep 112:2-9. Some non-compliant elements are more egregious, such as the top landing, *see* 72-1, GEC Report at 3, that Mr. Darr opines would be prudent to fix on an expedited basis "[a]ssuming they have the resources to do that, and, you know, I guess it would involve the corrections department function, why wouldn't they?" Exhibit 11, Darr Dep 94:1-10. Defendants' expert opines that the violations contained within its report should be remedied to bring the ramp into compliance under the ADA and includes specific recommendations for making the repairs. Dkt. 72-1, GEC Report at 3,16

Second, defendants are plainly wrong there is no evidence of harm. Not only did Mr. Westmoreland suffer physical harm from moving up and down the ramp, he experienced "intangible harm made actionable by a statute" and the Seventh Circuit held in *Patterson v. Howe*, 96 F.4th 992, 997 (7th Cir. 2024), "[i]ntangible harms arising from statutory violations can satisfy the injury-in-fact requirement so long as they are sufficiently concrete." Members of the putative class suffer harm because the ramp is too steep, the handrails are non-compliant, and the landings – used to provide a place of rest, to slow a wheelchair, and to turn around – are woefully inadequate under the minimum standards. These structural defects deprive wheelchair-users the ability to interact on the same basis with the environment as non-disabled, *see* Exhibit 2, Davis (6/5/2024) Dep 230:24-236:4, and violate the ADA. Moreover, plaintiff presents evidence putative class members have suffered physical injuries; Deangelo McClain suffered a dislocated thumb rolling down the ramp, and Darreon Thompson suffered burns to his hands. Additionally, Jeremiah Dobynes was unable to ascend the ramp, so he returned to his housing unit causing him to miss a medical appointment because the officer refused to provide assistance.

And finally, defendants' argument "Cook County may comply with the statutes even if the structural standards are technically not met" because of the "equivalent facilitation" provision

should be rejected. *See* Dkt. 82, Response at 14-15. This understanding of the "equivalent facilitations" provision is inconsistent with the regulations. In *Clemons,* the Court held this provision provides "no comparable license to substitute requests for personal assistance for the architectural standards required for new construction after 1991." *Clemons*, 168 F.Supp.3d at 1067. Plaintiff's motion cites *Clemons*, that was adopted in *Crockwell v. Dart,* 15 C 825, 2016 WL 4493456, at *3 (N.D. Ill. Aug. 26, 2016) (Shah, J.). Dkt. 209, Motion ¶ 7. Defendants fail to address this argument and the boilerplate argument the "equivalent facilitations" provision applies here, for a ramp constructed after 1992, is without merit.

### B. Irreparable injury

Defendants next argue "[n]either Plaintiff nor any putative class member has suffered an actual injury in traversing the ramp, much less an *irreparable* injury." Dkt. 82, Response at 15. Defendants support this argument by citing a policy that wheelchair-users "may be assisted in going up and down the East RTU ramp." *Id.* at 9-10, 16. The Court should reject this argument for many of the reasons previously stated. Putative class members suffer injury each time he (or she) moves up or down the non-compliant ramp. *See Roberts v. Dart*, 2018 WL 1184735, at *4 (N.D. Ill. 2018) (Lee, J.) (finding amputee was at risk of harm each time he used a toilet because it lacked grab bars). And defendants' reliance on Efferson Williams for the proposition he testified that since December of 2023 he has been pushed navigating the ramp is a misstatement. *See* Dkt. 82, Response at 9-10. On April 23, 2024, Mr. Williams traversed the RTU east ramp and testified Officer Thompson only offered minor assistance moving up the ramp and that he was not assisted rolling down the ramp. Dkt. 82-4, Williams Dep 44:12-25.

Defendants also insist that putative class members "who say the ramp caused a burning sensation on their hands" is not "an actual injury nor an irreversible injury." Dkt. 82, Response at

16. Defendants' argument is flawed because the cases cited do not concern a claim under the ADA, but rather claims brought under the United States Constitution concerning deliberate indifference to a serious medical need. *See e.g., Wheeler v. Talbot*, 770 F.3d 550 (7th Cir. 2014). Plaintiff alleges this ramp is non-compliant with the ADA structural standards for a wheelchair-user. The non-compliant structure deprived Mr. Westmoreland and similarly situated individuals the ability to use the ramp "on the same basis as other inmates." *Jaros v. Illinois Dep't. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); *accord Shuhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020). This is the harm plaintiff seeks to protect by the entry of an injunction. *See Kirola*, 860 F.3d at 1175 (barrier prevented plaintiff "from benefitting from the same degree of access as a person without a mobility disability, [that] deterred her from future attempts to access the facilities she visited" found to be "a concrete and particularized harm").

Plaintiff presents ample evidence that putative class members will suffer irreparable harm absent injunctive relief because the ramp is not compliant with the ADA and the rights of putative class members will continue to be violated until the ramp is repaired. *See Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest."). An award of money damages cannot prevent physical injury. *Dolezal v. Concert Health Plan*, 433 F.Supp.2d 886, 894 (N.D. Ill. 2005); *see also Flynn v. Doyle*, 992-93 (E.D. Wis. 2009) (no adequate remedy for "unnecessary pain and suffering"); *Von Colln v. County of Ventura*, 189 F.R.D. 583, 598 (C.D. Cal. 1999) (finding a defendant cannot plausibly argue "pain and suffering is not irreparable harm").

### C. Balance of hardships

Defendants next argues the balance of hardships weighs against a permanent injunction because plaintiff is seeking a mandatory injunction that "imposes significant burdens on the defendant." Dkt. 82, Response at 17. This representation is inconsistent with the findings by GEC that many of the violations can be corrected by making minor changes to the ramp such as extending the top of the ramp to provide a 60" landing required by the ADA. Dkt. 72-1, GEC Report at 16. Defendants also raise an unsupported argument the "East RTU ramp is not a major obstacle to those with mobility disabilities," that the "violations are relatively minor, and no class member has demonstrated any injury or denial of services at the CCDOC because of the condition of the ramp, and accommodations are in place to push detainees up and down the ramp should they require assistance." Dkt. 82, Response at 17.

Defendants further argue the Court should give "a great deal of deference when addressing the day-to-day operations" and since Cook County is taking steps to repair the ramp, the "Court should allow the administration of this project to continue as planned, without unnecessary judicial oversight." Dkt. 82, Response at 18. These arguments too should be rejected.

There is a real need for judicial oversight to repair the non-compliant ramp since there is no commitment by the government body to repair this ramp in a reasonable period of time. Indeed, during the depositions that were taken following the submission of defendants' response, Mr. Davis and Mr. Darr each agreed that steps should be taken on an expected basis to repair some elements of the non-compliant ramp as soon as possible. Mr. Davis testified repairing this ramp is "important" and that if the Court directed renovations to take place the ramp could be brought into compliance at a faster pace. Exhibit 2, Davis (6/5/2024) Dep 228:20-229:17, 248:18-250:23.

There is also evidence absent judicial oversight this project may never be completed; in 2015 Cook County promised to repair the holding cells at the Leighton courthouse within 34 months because of the *Lacy* litigation. This project, however, stalled and there is no indication when this project will be completed. The Court should not tolerate the same type of inaction on the part of the defendants.

The balance of hardships, therefore, does not weigh against entry of a permanent injunction. There should be minimal hardship because defendant, at present, appears committed to renovating the ramp. *See* Dkt. 82, Response at 17.

### D. Public interest

Defendant's final argument is that the public interest is not served by an injunction because it is "taking the decision out of the public's hand" and "the best course to take to reach that goal are made by elected officials who are accountable to the public." Dkt. 82, Response at 19. This argument should be rejected for the following reasons.

First, the public interest is served by repairing the ramp to comply with federal law. *See Von Colln*, 189 F.R.D. at 598 ("Fourteenth Amendment considerations dictate that the public interest would be best served by granting the injunction"). Indeed, Mr. Davis and Mr. Darr agree that the ramp must be repaired.

Second, defendants have known since at least March of 2021 that this ramp may be inaccessible and have been unable to take action to bring it into compliance. *See* Dkt. 8-5, e-mail from TJ Tyrrell, General Manager of Facility Management, sent 3/8/2021. Thus, the public interest is best served by the Court mandating compliance with the law.

**V.     Conclusion**

It is therefore respectfully requested that the Court grant plaintiff's motion for permanent injunctive relief to bring the RTU east tunnel ramp into compliance with the ADA structural standards.

>Respectfully submitted,
>
>/s/   <u>Patrick W. Morrissey</u>
>
>Patrick W. Morrissey
>Thomas G. Morrissey, Ltd.
>10257 S. Western Ave.
>Chicago, IL. 60643
>(773) 233-7901
>pwm@morrisseylawchicago.com
>
>*An attorney for the plaintiff*