Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                  EASTERN DIVISION
 3
 4  EUGENE WESTMORELAND,         )
    individually and for a class,)
 5                               )
            Plaintiff,           )
 6                               )
      v.                         )  No. 1:23-cv-01851
 7                               )
    THOMAS DART, SHERIFF OF COOK )
 8  COUNTY, and COOK COUNTY,     )
    ILLINOIS,                    )
 9                               )
            Defendants.          )
10  _____)
11
12
13       The deposition of DEANGELO McCLAIN, taken
14  on behalf of the defendants in the above-entitled
15  case before Debra L. Kleszyk, a Certified
16  Shorthand Reporter within and for the State of
17  Illinois, taken remotely via videoconference on
18  April 26, 2024, commencing at 9:26 a.m., pursuant
19  to the Federal Rules of Civil Procedure.  The
20  witness was located at Cook County Correctional
21  Center, 2700 South California Avenue, Chicago,
22  Illinois.
23
24
25
```

Page 2

```
 1            A P P E A R A N C E S
 2
 3  THOMAS G. MORRISSEY LTD.
    BY:  MR. THOMAS G. MORRISSEY
 4       MR. PATRICK W. MORRISSEY
    10257 South Western Avenue
 5  Chicago, Illinois 60643
    (773) 233-7900
 6  tgm@morrisseylawchicago.com
    pwm@morrisseylawchicago.com
 7
         Appeared via videoconference on behalf of
 8       the plaintiff
 9
10
    DeVORE RADUNSKY, LLC
11  BY:  MR. ZACHARY STILLMAN
    230 West Monroe Street, Suite 230
12  Chicago, Illinois 60606
    (312) 300-4479
13  zstillman@devoreradunsky.com
14       Appeared via videoconference on behalf of
         the defendants
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1               I N D E X
 2
 3  WITNESS:  DEANGELO McCLAIN
 4  EXAMINATION                            PAGE
 5    By Mr. Stillman                      5, 49
 6    By Mr. T. Morrissey                 48, 49
 7
 8
 9            INDEX OF EXHIBITS
10  EXHIBIT     DESCRIPTION                PAGE
11  Exhibit 1   photo                       31
12  Exhibit 2   disciplinary report         36
13  Exhibit 3   grievance                   41
14
```

Page 4

```
 1       THE COURT REPORTER:  My name is
 2  Debbie Kleszyk.  I am an Illinois Certified
 3  Shorthand Reporter.
 4       The parties participating in this
 5  deposition acknowledge that I am not physically
 6  present in the room with the witness and that I
 7  will be reporting this deposition remotely.  At
 8  this time I ask counsel to identify yourself and
 9  then indicate your stipulation to waive any
10  objections to the validity of the oath
11  administered remotely, starting with the noticing
12  attorney.
13       MR. STILLMAN:  Zachary Stillman with
14  DeVore Radunsky representing defendants, and we
15  waive any objection.
16       MR. T. MORRISSEY:  My name is
17  Thomas Morrissey.  I represent the witness in this
18  case.  And we consent to the remote swearing in of
19  the witness and the deposition being taken
20  remotely.
21            (The witness was duly
22              sworn.)
23       DEANGELO McCLAIN,
24    called as a witness herein, having been
25    first duly sworn, was examined and
```

Exhibit 7 Page 1

```
                                              Page 5
 1   testified as follows:
 2                      EXAMINATION
 3                   BY MR. STILLMAN
 4       Q.   All right, Mr. McClain.  Have you ever
 5   given a deposition before?
 6       A.   No.
 7       Q.   Was that -- was that no you said?
 8       A.   I said no.
 9       Q.   Okay.  So just before we start, we're
10   going to go over a couple things.
11            First, can you just state your full
12   name and spell it for the record?
13       A.   Deangelo McClain.  D-e-a-n-g-e-l-o.
14   M-c-C-l-a-i-n is my last name.
15       Q.   All right.  So, first, we have a court
16   reporter here that you can see.  So just to make
17   things easier for her and everyone here, we're
18   going to try and both not talk over one another.
19   So if I am asking any questions, I would ask that
20   you wait until I'm finished to answer.  And if
21   you're answering, I will do my best to wait until
22   you're finished to ask anything else.  That will
23   just keep the record clean and the transcript
24   clearer.
25            Next, any questions, please answer
```

```
                                              Page 6
 1   them verbally.  And refrain from any kind of
 2   gesturing or pointing; that won't be clear on a
 3   transcript for the record.
 4            Third, if you don't understand any
 5   question that I ask you today, please don't
 6   hesitate to let me know, and I can try and
 7   rephrase it or ask it a different way.  If you do
 8   answer, I'm going to assume that you've understood
 9   the question.
10            And if there is anything that you
11   don't recall, don't guess, just say that you don't
12   recall.  And that's fine.
13            And then if at any time, like Tom
14   had said before, if you need to take a break at
15   any time, it's totally okay, and just let me know
16   and we'll figure it out.
17            Do you understand all that and it's
18   all good?
19       A.   Yes.
20       Q.   Okay.  So do you have any other names
21   you go by?
22       A.   What you mean?
23       Q.   Do you -- what do they call you in
24   jail?
25       A.   What they call me in jail?
```

```
                                              Page 7
 1       Q.   Do you go by any other names than
 2   Deangelo?
 3       A.   Little D.
 4       Q.   And what is your date of birth?
 5       A.   10/15/1992.
 6       Q.   And are you married?
 7       A.   No.
 8            MR. STILLMAN:  Off the record for a
 9   minute.
10                 (A discussion was held off
11                  the record.)
12            MR. STILLMAN:  Back on the record.
13   BY MR. STILLMAN:
14       Q.   What did you do to prepare for your
15   deposition today?
16       A.   I put a grievance in.
17       Q.   So you put a new grievance in?
18       A.   No.  No.  No.  No.  No.  Not a new
19   one.  Did I put a new grievance in?  Yeah.  Yeah.
20   Yeah, I did.  Yeah, we did put a new grievance in
21   I think.
22            Did you guys get the new grievance?
23   Or that's the -- or this is for -- this is for the
24   old grievance or the new grievance?
25       Q.   I mean, so you're answering my
```

```
                                              Page 8
 1   questions right now.  You're not talking to your
 2   attorneys.
 3            But what new grievance are you --
 4   are you --
 5       A.   You mentioned -- you mentioned -- you
 6   mentioned, what I'm saying, is this about -- is
 7   this about the ramp?  Right?  It's about the ramp?
 8       Q.   This is about the ramp, yes.
 9       A.   Okay.  Yeah.  I'm talking about the
10   ramp.  That's what I want to talk to -- I want to
11   talk about the ramp.
12       Q.   All right.  I also want to talk about
13   the ramp, so it looks like you're in the right
14   place.
15       A.   Yeah.
16       Q.   So in preparation for this deposition
17   today, did you meet with Pat and Tom here?
18       A.   What did you say?  I don't recall.
19   What did you say?
20       Q.   Did you meet with Pat and Tom here?
21       A.   Yes.  Yes.  Yes.  Yes.
22       Q.   And are they your attorneys?
23       A.   Yes.
24       Q.   And when you met with them, did you
25   review any documents?
```

Exhibit 7 Page 2

Page 9

```
 1      A.    Yes.
 2      Q.    What did you review?
 3      A.    The discovery for the ramp.
 4      Q.    So when you say the discovery for the
 5   ramp, do you mean --
 6      A.    That's --
 7      Q.    -- your grievances, I assume.  Is that
 8   right?
 9      A.    Yeah.  Looking over the grievances,
10   yes.
11      Q.    And did you look at any documentation
12   of any kind of measurements or assessments of the
13   ramp?
14      A.    Did I look at -- no.
15      Q.    What -- what else would you quantify
16   as discovery related to the ramp?
17      A.    Like me like -- like, me going up and
18   down the ramp on camera.  Like, me struggling
19   going up and down the ramp.
20      Q.    So you went over footage of your use
21   of the ramp?
22      A.    Yeah.  Yeah.  I got a footage of me
23   using the ramp.
24            Also, I just used the ramp
25   yesterday.
```

Page 10

```
 1      Q.    What did you use the ramp for
 2   yesterday?
 3      A.    I went to Cermak.  I went to 2 North.
 4      Q.    And how long were you at Cermak for?
 5      A.    Just 24 hours.
 6      Q.    Do you know what the date on that
 7   footage that you watched yourself traversing the
 8   ramp would have been?
 9      A.    No.
10      Q.    Did you review any of your own medical
11   records or anything?
12      A.    No.
13      Q.    And would you say you met with them
14   for longer or shorter than about half an hour?
15      A.    About -- it wasn't that long.  Short.
16      Q.    Have you ever reviewed any ADA
17   standards or Cook County jail policies or
18   procedures regarding transportation of inmates
19   through the jail?
20      A.    No.
21      Q.    And are you familiar with
22   Eugene Westmoreland?
23      A.    Who?
24      Q.    Eugene Westmoreland.
25      A.    Who is that?  That's for -- that's the
```

Page 11

```
 1   person for Cermak.  Right?
 2      Q.    Is that -- do you know him as a person
 3   for Cermak?
 4      A.    Eugene?
 5      Q.    Yeah.
 6      A.    You say Eugene what?
 7      Q.    Westmoreland.
 8      A.    Eugene Westmoreland?  No.
 9      Q.    So you've never heard his name?
10      A.    I don't think, no.  I'm talking about
11   the wrong person.  No, I don't recall.  No, I
12   don't -- I don't remember.
13      Q.    You know any of the details of this
14   lawsuit that you're being deposed in relation to?
15      A.    Yes.
16      Q.    And as far as the details you know, I
17   know you mentioned the ramp before.  What else do
18   you know other than it being related to the ramp?
19      A.    That it was -- that it was hard for me
20   to get up the ramp.  That I have problems going up
21   and down the ramp for sure for sure.
22      Q.    So I understand those are your
23   experiences and issues with the ramp.  So I'm
24   asking, do you know any of the details of the case
25   that you're being deposed in?  It relates to the
```

Page 12

```
 1   ramp, yes.  But do you know any of the specific
 2   details of the plaintiff's claim in this case?
 3      A.    All right.  Give me a clue.
 4      Q.    So if you don't know, it's fine.  I
 5   mean, I'm not -- you're not going to guess it just
 6   from -- just from me giving you some hints, but.
 7      A.    Oh, right.  Right.  Right.  Oh, that's
 8   what you -- okay.  I see.  Okay.
 9            So I just -- you know, I just woke
10   up.
11      Q.    Oh, yeah, I hear you.
12      A.    I just woke up, so I'm kinda -- I'm
13   kinda -- I'm kinda still asleep.
14      Q.    I got you.  Well, you can go back to
15   sleep and -- we really shouldn't have too long
16   today.
17            But so do you -- and, like I said
18   at the beginning, if you don't remember or you
19   don't know, it's a totally fine answer.
20            So do you know any of the details
21   of plaintiff's claim in this case?
22      A.    Yes.  Well, like, like -- what, like
23   the measurements of the ramp or?
24      Q.    So other than -- other than that it
25   relates to the ramp, do you know any specific
```

Page 13

```
 1  details from plaintiff's claims in this case?
 2      A.   What?  That what?  That -- what about
 3  the -- what about the suit or?  What is it -- you
 4  got to --
 5      Q.   I mean, yeah, do you know any of the
 6  details of what the person whose case this is is
 7  suing for?
 8      A.   Yes.  For the matter of the ramp.  For
 9  the matter of people going up and down the ramp
10  having a hard time.  For people having a hard time
11  going -- the difficulties of the ramp.
12      Q.   So, yes, okay.
13      A.   Difficulties of the ramp.
14      Q.   And do you -- do you personally know
15  any of the difficulties of the ramp other people
16  might have had in this case?
17      A.   Yes.  Say, like, my friends?
18      Q.   Well, no, specifically the plaintiff,
19  but.
20           MR. T. MORRISSEY:  Object.  He already
21  answered he doesn't -- he doesn't recall having
22  any contact with Eugene Westmoreland.
23                You can answer, though.
24           THE WITNESS:  No.
25                / / /
```

Page 14

```
 1  BY MR. STILLMAN:
 2      Q.   In the last ten years, have you been
 3  convicted of any crimes?
 4      A.   Yes.  But what we talking about?  Why
 5  we -- I don't want to -- I don't want to talk
 6  about my --
 7      Q.   I'm not asking anything else about
 8  that.  That was the only question about it.  Don't
 9  worry.
10           When were you processed at the Cook
11  County jail under your current booking number?
12      A.   2020, November 4.  That's when I was
13  charged.
14      Q.   So you're going -- you're going on
15  looking at almost three years now.  Well,
16  approaching.  Right?  Like two and a half?
17      A.   Longer than that, but.
18      Q.   Oh, I guess it's 2024.  You're right.
19  Sorry.  I was off a year.  So four years.
20      A.   Yeah.
21      Q.   Okay.  And have you always been housed
22  in the RTU?
23      A.   Yeah.  Yeah.
24      Q.   And you're -- you're in the RTU now?
25      A.   Yeah.
```

Page 15

```
 1      Q.   How often do you go to Cermak?
 2      A.   Like every other day.
 3      Q.   You're at Cermak every other day?
 4      A.   Yeah.  If I have a problem, I got --
 5  I be having a lot of medical issues, so, yeah, I
 6  go to Stroger.  I have appointment every month.
 7  Two times out of the month I have appointment.  I
 8  got to go to Stroger.  So I have to go through the
 9  ramp two -- like every two times out of the month.
10      Q.   And what are those appointments for?
11      A.   Checkups for my -- my ulcer that I
12  have on my behind.  Sitting in the wheelchair, I
13  have a hole, I have an ulcer, that I go check in
14  for it.  Then I also go to the pain clinic 'cuz I
15  be having a lot of pains due to all the trauma I
16  been through.
17      Q.   And on the occasions that you've gone
18  to Cermak for -- that you go to Cermak for these
19  appointments, how are you transported there?
20      A.   How do I go to Cermak?  I roll -- I
21  roll my -- I be in my wheelchair.
22      Q.   And where do you -- where do you
23  travel in your wheelchair to get to Cermak?  What
24  parts of the jail do you go through?
25      A.   Through the tunnel.
```

Page 16

```
 1      Q.   Through the tunnel?  So underneath,
 2  like, in the basement of the RTU?
 3      A.   Yes.
 4      Q.   And do you make that journey alone or
 5  is there -- are there officers with you?
 6      A.   Yeah, there be officers with me.
 7      Q.   And you're in a wheelchair.  Correct?
 8      A.   Yes.
 9      Q.   Could you explain a little about your
10  medical history and the injury that resulted in
11  your wheelchair use?
12      A.   I got shot eight times.
13      Q.   And how long ago did that occur?
14      A.   2020, October 31, Halloween.
15  October 30 or October 31 'cuz it was nighttime.
16      Q.   And that was -- that was just before
17  you got booked at the Cook County jail?
18      A.   Yeah.
19      Q.   So you started using a wheelchair
20  right as you kind of entered the jail?
21      A.   I be using the wheelchair since I
22  used -- entered the jail.  Been using a wheelchair
23  since I been shot.
24      Q.   And you said you got shot.  That was a
25  couple days before you were processed at the jail.
```

Page 17

1  Right?
2      A.  No, it wasn't a couple days.  It was
3  longer than a couple days.
4          Why we got to talk about it?
5      Q.  And you were -- so you were in a
6  wheelchair before you got to the jail, though?
7      A.  Yes.
8      Q.  And when moving around the jail, who
9  pushes your chair?
10     A.  I push my own chair.  I don't let no
11 one push my chair.
12     Q.  Do you ever ask anyone to push your
13 chair?  Has anyone ever asked you to push your
14 chair?
15     A.  No.  I just push my own chair.
16     Q.  And are you aware of any policies,
17 procedures, or rules at the jail regarding whether
18 someone should be pushing the chair when you're
19 transported from one location to another?
20     A.  No.
21     Q.  Are you aware of any policies,
22 procedures, or rules preventing another detainee
23 from pushing your chair?
24     A.  No.
25     Q.  Are you aware of any policies,

Page 18

1  procedures, or rules preventing any officers from
2  pushing your chair?
3      A.  No.
4      Q.  And when was the last time another
5  detainee or officer pushed your chair for you?
6      A.  It's been -- it's been a minute.  It's
7  been a long time.  'Cuz I don't like -- I don't
8  like people getting too much, like, getting behind
9  me pushing my chair.  But if I -- if I can get
10 some help, I wouldn't mind.  But I don't -- I
11 don't like -- I push my own chair.  I push my own
12 chair.  I wheel my own chair.  I been wheeling my
13 own chair for years.  I don't too much --
14     Q.  Okay.
15     A.  -- my wheelchair, pushing my wheel-
16 chair.
17     Q.  And so you're -- as we were just
18 discussing, you're familiar with the tunnels and
19 the areas under the RTU where those ramps are.
20 Correct?
21     A.  Yeah.  Basically, yeah, I'm familiar
22 with them.
23     Q.  And your familiarity comes from the
24 fact that you've been taken through those areas in
25 transfers either to Cermak and other areas of the

Page 19

1  jail.  Right?
2      A.  I didn't hear you.  What did you say?
3      Q.  You're familiar with those areas from
4  your regular transports through the jail for
5  appointments and whatnot.  Correct?
6      A.  Yeah.  Yeah.  Yeah.  I'm familiar.
7      Q.  And then you said a little bit ago
8  that you were actually just down there on that
9  ramp or in the tunnels yesterday or the day before
10 I think it was.  Right?
11     A.  Yeah.  Yesterday I just came from --
12 I just came from down the ramp, went up the ramp.
13     Q.  And did you -- did you struggle to
14 traverse the ramp fully?
15     A.  Yes, sir.
16     Q.  What issues did you have yesterday?
17     A.  It take -- when I go up that ramp, it
18 take -- it take all of my energy away from me.  It
19 also make me use the bathroom myself numerous of
20 times.
21     Q.  And how would it make you use the
22 bathroom?
23     A.  Because I got to use my strength, the
24 strength, the little strength that I have to go up
25 the ramp.

Page 20

1      Q.  Is there -- is there one particular
2  way you struggle more with the ramp, either going
3  up or down?
4      A.  Yeah.  If -- if they have more
5  support, if they have more support, I be able to
6  -- I be able to go up the ramp easily.  But ain't
7  really no support.  It's barely support going up
8  the ramp or going down the ramp, so those two.
9      Q.  So which -- which, either going up the
10 ramp or going down the ramp, which -- which is
11 more difficult?
12     A.  Both.  Both.  Both.  'Cuz if I come
13 down the ramp I be -- I almost hit the door.  I
14 go fast, I could flip off the ramp [sic] and then
15 I be burning my hands 'cuz I'm going fast down the
16 ramp.  I burn my hands on my wheelchair trying to
17 slow my wheelchair down when I'm going by myself
18 on the ramp.
19     Q.  And have you -- you said you might
20 burn your hands when --
21     A.  Yeah.  Like trying to -- like slowing
22 it down so I won't hit the door.
23     Q.  Have you ever been treated for any --
24 any kind of medical injuries resulting of -- from
25 using your hands to stop the chair?

Page 21

1  A. Yes. I take -- I take all type of --
2  I take methocarbamol, muscle relaxers, due to my
3  shoulders and like -- like a little bit by my
4  back.
5  Q. Okay. So that wasn't the question,
6  though.
7      So have you ever been treated
8  specifically --
9  A. Have I been treated after I --
10 Q. One second. One second. Let me
11 finish the question then, and I'll let you answer
12 it, Deangelo.
13     So have you ever been treated
14 specifically for injuries received from using your
15 hands on the wheels of your wheelchair to stop
16 yourself while going down the ramp?
17 A. No -- yeah. Yeah. Yeah. I did,
18 yeah. I did. I did.
19 Q. And when? When would you have been
20 treated for --
21 A. I don't remember. I don't remember.
22 'Cuz of my thumb. I forgot. My thumb is
23 dislocated. My thumb is --
24 Q. And that would have been treatment for
25 a dislocation of your thumb you're saying?

Page 22

1  A. Yeah. My thumb popped out. My thumb,
2  it popped out.
3  Q. And when -- when did that occur?
4  A. It's -- it been a minute. I don't
5  remember. It been a minute. I got so much going
6  on. It been a minute. But that's neither here
7  nor there.
8  Q. Did that happen while you were using
9  the ramp?
10 A. Yeah. Yeah.
11 Q. And did you ever file any grievances
12 stating that that injury occurred while you were
13 using the ramp?
14 A. No. I ain't filed -- I just filed a
15 grievance just saying that it was hard going up
16 and down the ramp. About the ramp period I filed
17 a grievance.
18 Q. But you didn't mention in that
19 grievance that you -- that you were injured either
20 with your hands burning or with your thumb getting
21 dislocated. Right?
22 A. No.
23 Q. And do you remember if you even
24 complained in your grievance at all about -- well,
25 strike that actually.

Page 23

1      Do you -- when you've used these
2  ramps and had issues, have you asked the officers
3  transporting you for assistance?
4  A. Sometime. Sometime I ask.
5  Q. And what is their usual reaction when
6  you -- you're having difficulties and you ask
7  their assistance?
8  A. Sometime they say, "Just work your
9  arms out. Get strong." They say, "To get strong,
10 work your arms out. You need to exercise."
11 Q. What else? I mean, how often would
12 they -- would they assist when you've asked?
13 A. Actually, I don't -- I don't -- I
14 don't even -- well, none really. But I don't
15 be -- I be going off of I got to get strong. That
16 is true. I am paralyzed. I got to try to get
17 strong any way I can 'cuz I don't get no physical
18 therapy.
19 Q. Are you --
20 A. But that's neither here nor there.
21 Q. Are you -- how many times have you --
22 have you expressed that you've had difficulty --
23 have you been -- strike that.
24     How many times have you been
25 traversing the ramp and expressed that you're

Page 24

1  having difficulties to the officers transporting
2  you?
3  A. Probably like -- like three, four --
4  probably -- a lot of -- yeah, like three or four
5  times, something like that.
6  Q. So three or four times when -- you
7  said before you go to Cermak every other day.
8  Right?
9  A. Yeah. Two -- basically when I got to
10 -- if something going on seriously with me, I
11 automatically got to go to Cermak.
12 Q. So all those other times when you're
13 going to Cermak, are you not having difficulties
14 on the ramp or are you just not asking for
15 assistance?
16 A. Sometime they don't -- sometime, you
17 know, they be lazy.
18 Q. They're the ones being lazy then in
19 those situations?
20 A. Yeah. Sometime people be lazy. They
21 don't want to -- you know, they don't want to
22 help. So I go --
23 Q. How would the -- sorry.
24 A. But I rather -- but also they tell me
25 that I got to get strong, I need to get strong,

Exhibit 7 Page 6

Page 25

```
 1  work my arms out, get myself back together so I
 2  could try to, you know what I'm saying,
 3  rehabilitate.
 4      Q.   But, Deangelo, how would they -- how
 5  would they know you're struggling if you've only
 6  said anything to them --
 7      A.   How would they know I'm struggling?
 8      Q.   -- two or three times?
 9      A.   Because they know -- because when I'm
10  going up the ramp you can see that it's hard going
11  up the ramp.  There's no way you can't see that
12  I'm having a hard time going up and down the ramp.
13  There's no way you can't see that.  That's -- it's
14  not rocket science for nobody to see that.
15      Q.   So your testimony is that it was clear
16  you were struggling, but only on two or three
17  occasions did you actually verbally express that
18  you were having issues to any transporting
19  officers.  Is that right?
20      A.   No.  It been -- yeah, you could say --
21  it been a -- it been a lot of times I went up and
22  down that ramp.
23      Q.   Okay.
24      A.   It been a lot of times.
25      Q.   And do you recall on the ramps under
```

Page 26

```
 1  the RTU that you've used, either the Cermak ramp,
 2  the RTU ramp, do you recall there being handrails
 3  on those ramps?
 4      A.   Yeah.  Yeah.  But they don't -- they
 5  don't work.  They don't work all the way down to
 6  the end.  They work like close to the end.
 7      Q.   What do you mean they work close to
 8  the end?
 9      A.   They don't work all the way down to
10  the end, like, as far as, like, at the end part.
11  They work close to the end.  They don't work to
12  the -- they don't work -- they don't work to the
13  end like how they supposed to.  So like when I'm
14  coming down the ramp, at the end I'm still coming
15  down the ramp, there's not no railing right at the
16  end part.
17      Q.   Okay.
18      A.   So I'm just coming down.  No railing
19  right there and I'm still on the ramp.  No railing
20  right there and I'm still on the ramp.
21      Q.   And so --
22      A.   So that could cause me to run into the
23  door.
24      Q.   Oh, okay.
25      A.   That could cause me to run into the
```

Page 27

```
 1  door.
 2      Q.   And did you ever complain to anyone
 3  about either the fact that you could -- you could
 4  have run into the door with how the current setup
 5  is or about the fact --
 6      A.   Yes.
 7      Q.   -- there are no rails --
 8      A.   Yes.  Yes.  But I don't remember when.
 9      Q.   When you've used those Cermak and RTU
10  ramps, did you ever have any -- did you ever
11  ultimately get held back from getting to where you
12  needed to go or did you make it to your appoint-
13  ment?
14      A.   I made it to my appointment.
15      Q.   So you've never -- you've never
16  actually been held back from, you know, access to
17  any appointments or services or treatment --
18      A.   Oh yeah.
19      Q.   -- at the jail?
20      A.   Yeah.  Yeah.  Yeah.  You was saying
21  that I can't go due to the wheelchair accessible,
22  that I can't go 'cuz I'm in a wheelchair?  Is that
23  what you're saying?  Like, have I been held back
24  from places I can't go because I'm in a wheel-
25  chair?  Is that what you're saying?
```

Page 28

```
 1      Q.   So I'll ask the question again.  Let
 2  me -- just let me finish, and then you should
 3  respond at that point.
 4           So have you ever been held back or
 5  kept from accessing any of your appointments,
 6  treatment, or services at the jail on the basis of
 7  your wheelchair because you couldn't ambulate the
 8  features of the facilities of the jail, like the
 9  ramp?
10      A.   Yes.  But I don't remember.
11      Q.   But at least specifically in relation
12  to the Cermak and RTU ramps and getting to Cermak
13  and back, have you ever been stopped from getting
14  to an appointment as a result of your struggles
15  using the ramp?
16      A.   No.
17      Q.   What has happened in circumstances
18  where you've struggled using the ramp and unable
19  to continue?  What have the officers done?
20      A.   Sometime they try to -- they'll push
21  -- they will push -- push a little bit, if that's
22  the case.  But, other than that, I don't want no
23  one.  Push on my own.  I got to get strong.  I got
24  to --
25      Q.   So --
```

Exhibit 7 Page 7

Page 29

1     A.   -- get strong.
2     Q.   So even if you're -- if you're
3  struggling to get up a ramp here and, you know,
4  the slope of the ramp is too steep that you're
5  struggling to ambulate yourself up, you still
6  don't want an officer to touch your wheelchair and
7  assist you?
8     A.   Yeah.  Sometime.  I don't know.  It
9  depends.  Sometime.  I probably -- they don't want
10 to.  They don't want to.  They don't -- what you
11 ask me?  They don't want to.
12    Q.   And have you ever refused them
13 attempting or offering to push you?
14    A.   They don't want to.  If they don't
15 want to, I ain't going to force them.
16    Q.   Okay.  I understand.  But have you
17 ever -- have you ever refused to allow an officer
18 to push your chair when they have asked or offered
19 or insisted?
20    A.   Probably.  It's a possibility.  I
21 probably said that "No.  I got it."
22    Q.   And what would have happened if you
23 would have refused an officer in the middle of
24 something like the ramp that we're discussing?
25    A.   If I refuse?

Page 30

1     Q.   Yeah.  You're struggling up the ramp
2  and --
3     A.   Nothing.  I just -- nothing.  Just I
4  just do it myself.
5          I need to take a break.
6     Q.   Do you need a break now?
7     A.   Yeah.  I'm going to take a break now.
8          MR. T. MORRISSEY:  How much time do
9  you need, Mr. McClain?
10         THE WITNESS:  Like, how long -- how
11 long -- how long do -- how long is this session?
12         MR. T. MORRISSEY:  Zach, how much
13 longer do you have?
14         MR. STILLMAN:  I've probably got like
15 another 30 minutes or 40 minutes.
16         THE WITNESS:  30, 40 minutes?
17         MR. T. MORRISSEY:  Do you need to take
18 a break?
19         THE WITNESS:  Yeah.  I'm going to take
20 a break.
21         MR. T. MORRISSEY:  All right.  Do you
22 want to take -- take five minutes?  Is that okay?
23         THE WITNESS:  Yeah.  Five minutes.
24         MR. T. MORRISSEY:  All right.  Why
25 don't we do that, take a break.  And we'll come

Page 31

1  back in -- it's 10:01 right now.  We'll come back
2  at 10:06.  Okay?
3          THE WITNESS:  All right.
4          MR. T. MORRISSEY:  Thanks,
5  Mr. McClain.
6               (A break was taken from
7                10:02 a.m. until
8                10:08 a.m.)
9  BY MR. STILLMAN:
10    Q.   Are you good, Mr. McClain, to start
11 again?
12    A.   Yes.
13    Q.   Okay.  All right.  So I'm going to
14 show you a photo that we're going to -- I'm going
15 to be marking Exhibit 1.
16              (McClain Deposition
17               Exhibit 1 was marked.)
18 BY MR. STILLMAN:
19    Q.   Do you see that photo?
20    A.   Yeah.
21    Q.   Do you recognize the ramp pictured?
22    A.   Yes.
23    Q.   Where is this ramp in the jail?
24    A.   Is this the RTU?
25    Q.   Yes.  And these are those handrails

Page 32

1  that you were talking about before?
2     A.   Yeah.
3     Q.   And can you explain what makes them so
4  problematic?
5          MR. T. MORRISSEY:  I'm going to
6  object.  The photograph Exhibit 1 doesn't depict
7  the entire RTU ramp because it doesn't show the
8  doorway that Mr. McClain testified he ran into.
9          But you can answer.  You can
10 answer, Mr. McClain.
11         THE WITNESS:  Yeah.  Yeah, I agree.
12 BY MR. STILLMAN:
13    Q.   Okay.  So can you -- can you tell me
14 what the problem with the handrails as far as your
15 use of them?
16    A.   I can't really see it.  I can't really
17 see it like that.  I can't really see it.
18    Q.   Because we're looking -- is it because
19 we're looking in from the door that we're talking
20 about in this image?
21    A.   I can't really see it.
22    Q.   And this is also -- this ramp is also
23 one of the ones that you've said is too steep to
24 use.  Right?
25    A.   Yeah.  But I can't see it.

Exhibit 7 Page 8

Page 33

1  Q.  You can't see the ramp or that -- the
2  steepness?  What?
3  A.  I can see the door -- I'm trying to
4  see the whole visual.  I can't see the whole
5  visual.  I can't see it.
6  Q.  So the way this image is -- the way
7  this image is pictured, it's looking in from the
8  opposite side, so you're not going to be able to
9  see the door in this one.  But let me see if I can
10 find -- I don't know if I have another one.
11     So you -- just to confirm, you have
12 had difficulties with this ramp.  Yes?
13 A.  Yes.
14 Q.  And this is the ramp specifically
15 where you ran into the door that we -- as
16 discussed?  We know it's not entirely pictured in
17 this image, yes.
18 A.  Yes.  It's close -- it look like -- it
19 look like it, but it's not -- it's -- this -- this
20 the RTU ramp.
21 Q.  So that was the Cermak ramp where you
22 ran into the door?
23 A.  Yeah.  Both of them -- both of them
24 the same.  Both.  At the end both of them.
25     But I can't really see this one,

Page 34

1  though.  I'm trying to get a visual of this one.
2  I can't really see what's going on.  During the
3  start, during the start, I'm looking at the start,
4  I can't really see -- yeah.  I can't see the
5  visual of the beginning.
6  Q.  Okay.  Have you ever asked -- I think
7  I might have asked you this already.  But just
8  generally I know you don't like other inmates
9  pushing you, but have you ever asked another
10 inmate to push your chair?
11 A.  No.  Another inmate --
12     MR. T. MORRISSEY:  I'm going to object
13 to the form.  Is that at any point in his
14 incarceration or specific to the ramp?
15     MR. STILLMAN:  At any point, any point
16 in his incarceration.  I'll clarify.
17     THE WITNESS:  Now, what did you just
18 ask me, sir?
19 BY MR. STILLMAN:
20 Q.  So has anyone ever -- have you ever
21 asked another detainee --
22 A.  No.  They push me on their own.
23 Q.  They -- sorry?  What was that?
24 A.  They'll push me on their own.
25 Q.  Okay.  But you've never -- have you

Page 35

1  asked another inmate before to push you, though?
2  A.  No.  They push me on their own.
3  Q.  How often would that occur?
4  A.  Not too often.  Don't nobody push me.
5  I push myself, sir.  You asked me that.  I push
6  myself.
7  Q.  Because you've got to get strong.
8  Right?
9  A.  Yeah.  I got to get strong.
10 Q.  So let's take this down.
11     And you're -- what kind of mobility
12 abilities do you have outside of the wheelchair?
13     MR. T. MORRISSEY:  I'm going to object
14 to the form of the question.
15 BY MR. STILLMAN:
16 Q.  How mobile are you?  How able to move
17 around are you without your chair?
18 A.  I'm paralyzed, sir.
19 Q.  And you -- you're paralyzed, so you
20 stay in your wheelchair all the time?
21 A.  No.  I try to -- I try to best -- I
22 try to move around the best way I knew how.  Go to
23 the bed, wheelchair, bed, try to stand.  You know,
24 I try to get stronger, but, you know.
25 Q.  And how much stronger would you say

Page 36

1  you are now as opposed to maybe in February of
2  2023?
3  A.  February 2023?  I was -- I could say I
4  could transfer over to the bed.  Back then, I used
5  to need help.
6  Q.  So you needed help back then to get
7  out of your chair?
8  A.  Yeah.  Sometime.
9  Q.  So I'm going to put an exhibit up.
10 We'll call this Exhibit 2.
11     (McClain Deposition
12     Exhibit 2 was marked.)
13 BY MR. STILLMAN:
14 Q.  This is a -- do you know what this
15 document is?
16 A.  Is this a grievance?
17 Q.  No.  So this is a disciplinary report,
18 as it says right here.
19     Do you -- do you recall anything
20 you might have gotten disciplined for on the 16th
21 of February 2023?
22 A.  What it say?
23     MR. T. MORRISSEY:  I'm going to object
24 to the --
25     / / /

```
                                            Page 37
 1              (Unreportable simultaneous
 2              speaking.)
 3         MR. T. MORRISSEY:  Mr. McClain, let me
 4    put an objection in.
 5              I'm going to object to the
 6    proportionality of this exhibit.  This case
 7    doesn't involve anything in regards to Mr. McClain
 8    being disciplined for something other than going
 9    up and down the ramp, which he's never been
10    disciplined for.
11         MR. STILLMAN:  All right.  It's
12    acknowledged.  We're going to keep going through
13    this, so.
14    BY MR. STILLMAN:
15         Q.   It says right here, Mr. McClain, that
16    you -- on review of the cameras, you were seen
17    standing up on your own.  Isn't that right?
18         A.   No.
19         Q.   Does it -- am I reading that correct,
20    though, that upon further review IIC --
21         A.   They lying.  They lying.  They lying.
22    They lying.
23         Q.   Okay.  So I understand you might --
24    you might doubt the accuracy of the document.  But
25    can you tell me, am I reading it correctly that it
```

```
                                            Page 38
 1    says:  Upon further review, IIC is seen him
 2    standing up on his own?
 3         A.   I don't know nothing about.  I don't
 4    recall.
 5         Q.   But can you tell me yes?  It's a
 6    yes-or-no question, Deangelo.  Does it say --
 7         A.   I don't remember that.  I don't
 8    remember.  I don't remember.  I don't remember.
 9         Q.   But you don't need to remember,
10    Deangelo.  It's right in front of you.  I'm asking
11    you a yes-or-no question.  Does it say --
12         A.   No, I don't recall.  I don't recall.
13    They lying on me.  They lying.  They lying.  They
14    lying.  They lying.
15         Q.   So I understand your testimony is that
16    they're lying.  And, again, this is a yes-or-no
17    question.  Either it says what I am asking you or
18    not.  Can you just confirm that what it says --
19         A.   It says that.  Yeah, it says that.
20         MR. T. MORRISSEY:  I'm going to
21    object.
22              Mr. McClain, I'm going to object.
23              The document speaks for itself.
24    Whether it's truthful or not isn't the issue in
25    this case.  You can acknowledge that the document
```

```
                                            Page 39
 1    says that.  It doesn't mean it's truthful or not.
 2         MR. STILLMAN:  Yeah.  Your client is
 3    not acknowledging that it says that.  We're just
 4    trying to get past that part of this.
 5    BY MR. STILLMAN:
 6         Q.   And then it says you were laying on
 7    top of the day room table and placed yourself on
 8    the other side of the table.  Isn't that right?
 9         A.   I don't recall.
10         Q.   And this would be your response to
11    this disciplinary report, correct, the inmate's
12    statement regarding the infraction?
13         A.   What?
14         Q.   Do you know this -- this would be your
15    statement in response to the disciplinary report.
16    Is that right?
17         A.   What it say?
18         Q.   Inmate's statement regarding
19    infraction.
20         A.   I rolled off the table.
21         Q.   Oh, your statement says:  I just
22    rolled off the table.  They didn't give me
23    medical.  I self-harmed.
24         A.   Yeah.  But what is this?  Why you
25    talking about me?  Why you talking about something
```

```
                                            Page 40
 1    -- this right here?  We -- this is about the ramp.
 2    Why you going into disciplinary and all this and
 3    that?
 4         Q.   I'm just asking if --
 5         A.   This is --
 6         Q.   -- you acknowledge that it says that
 7    you were standing on your own accord.
 8         A.   I don't want to talk, no, I don't want
 9    to talk about that.  I don't want to talk about
10    this no more because this is -- this is -- they
11    lying.  That's a fairytale.  They --
12         Q.   Okay.  So your testimony is that the
13    sheet says what it says but they are -- they are
14    lying.  Is that right?
15         A.   Yeah.  They lying.
16         Q.   Great.  Thank you.  We can move on
17    from that now.
18              And so you've filed -- or do you
19    know how many grievances you filed regarding the
20    ramps at the jail?
21         A.   I don't remember.
22         Q.   Do you know if it's more than one?
23         A.   Yeah, I don't remember, sir.
24         Q.   Do you know that if you have filed
25    any?
```

Page 41

1    A.   Yeah, I don't remember.
2    Q.   You don't remember if you have filed
3  any?
4    A.   Yeah, I know I did. I just don't
5  remember. I got a lot of things on my mind. I
6  don't know --
7    Q.   So, Deangelo, the question is, do you
8  remember if you filed at least one grievance?
9    A.   Yeah. Yeah, I did.
10   Q.   So, yes, you do remember that.
11 Correct?
12   A.   Yeah. Yeah, I did. Yeah, I did.
13 Yeah.
14   Q.   Okay. And do you have any
15 recollection of what the date of that grievance
16 might have been?
17   A.   I filed one in like '22. I think it
18 was '22. Two years ago.
19   Q.   So I'm going to put on the screen now
20 Exhibit 3.
21              (McClain Deposition
22              Exhibit 3 was marked.)
23   MR. T. MORRISSEY: Are you able to
24 read that, Mr. McClain?
25   MR. STILLMAN: Pardon?

Page 42

1    MR. T. MORRISSEY: I'm asking the
2  witness if he needs to have it enlarged.
3  BY MR. STILLMAN:
4    Q.   Yeah, Mr. --
5    A.   I need it enlarged, yeah.
6    Q.   Well, we'll look at it by section. We
7  can zoom in pretty well.
8              Is that visible? That's a little
9  too much here.
10   A.   Yeah, that's readable.
11   Q.   Okay. So does this grievance look
12 familiar to you?
13   A.   Yes.
14   Q.   And is this your handwriting in the
15 grievance?
16   A.   Yes, that is.
17   Q.   This is your grievance that you
18 drafted about the ramps?
19   A.   Yes.
20   Q.   So can you tell me who the name of the
21 grieved party was on this grievance?
22   A.   What? Who wrote the grievance?
23   Q.   No. So the name of the accused.
24   A.   Cermak.
25   Q.   And then you list the location as

Page 43

1  Cermak as well. Right?
2    A.   Yeah.
3    Q.   And so just to -- we don't need to go
4  through this word for word, but just let me just
5  kind of look through it.
6              So your -- your testimony here is
7  essentially that you were taken -- you were taken
8  to Cermak from Stroger Hospital and, upon
9  arriving, there were no handrails required by law
10 for wheelchair-bound inmates. Right?
11   A.   Yes.
12   Q.   And then you say: The ramp is a
13 struggle going up and down. Requesting that the
14 ramp is placed with rails. Also, when I am
15 taking [sic] to Cermak because there are no rails,
16 requesting that I bypass the ramp to get to
17 Cermak. [As read.]
18              Is that right?
19   A.   Yes.
20   Q.   Now, you're only really complaining
21 about the rails here in this grievance. Right?
22   A.   Yes.
23   Q.   Do you mention in this grievance at
24 all that you struggled in any other way with the
25 ramp?

Page 44

1    MR. T. MORRISSEY: I object. The
2  document speaks for itself.
3  BY MR. STILLMAN:
4    Q.   Okay. So, Deangelo, you never -- you
5  never say anything in your grievance about the
6  fact that you struggled with the steepness of the
7  ramp. Right?
8    MR. T. MORRISSEY: I'm going to object
9  to the form. It says the ramp is -- struggled
10 going up and down.
11   MR. STILLMAN: He said that in
12 relation to the handrails.
13 BY MR. STILLMAN:
14   Q.   Deangelo, just do you -- do you
15 testify at all in this -- or do you write in this
16 grievance at all that that struggle is at all
17 related to the steepness of the ramp or does it
18 only mention the railings, the handrails?
19   A.   Did I say -- I don't recall. I recall
20 that I -- yeah, I wrote -- you say did I put
21 anything about the ramp?
22   Q.   I say, so you wrote here that the ramp
23 is a struggle going up and down. But that is only
24 in reference to the fact that there are no hand-
25 rails. Is that right?

Exhibit 7 Page 11

Page 45

```
 1    A.   Yes.
 2    Q.   You don't mention in this grievance
 3  anywhere that there's any issue with the steepness
 4  or anything else with this ramp?
 5    A.   I said the ramp is a struggle.
 6    Q.   That doesn't --
 7    A.   The ramp is a struggle.
 8    Q.   Do you say that the ramp is too steep?
 9    A.   I'm saying the ramp and the railings.
10  I state the ramp and the railings.  Right or
11  wrong, I stated the ramp and the rails.  I said
12  the ramp is a struggle and the railings, they have
13  no rails.
14    Q.   And -- okay.  So you don't -- you
15  don't mention the steepness of the ramp, though,
16  or any -- or any non -- or any required landing
17  that might not be there here.  Right?
18    A.   I think that's in my other -- I think
19  that's -- I think not in this grievance.
20    Q.   And you remember doing another
21  grievance, though?
22    A.   Yeah.  You should have another
23  grievance.  You should have some more grievances
24  for it.
25    Q.   This would be the date that the jail
```

Page 46

```
 1  received your grievance.  Right?
 2    A.   Yeah.
 3    Q.   And that was on 10/21/22?
 4    A.   Yeah.
 5    Q.   Who's the staff member that it says
 6  responded to your grievance?
 7    A.   Who, what, the staff member?
 8    Q.   That is right here.  Yep.
 9    A.   Susan.  I didn't -- who -- you talking
10  about the counselor who --
11    Q.   It says right there that Susan Shebel
12  responded to your grievance on 11/15/22.  Right?
13    A.   Yeah.
14    Q.   Okay.  And then she said in her
15  response that:  Thank you for bringing this
16  concern to our attention.  Cermak does not manage
17  movement --
18           And I don't quite know what she
19  wrote here.
20           But she writes that Cermak does not
21  manage movement and you need to file a separate
22  grievance.  Correct?
23    A.   Yeah.
24    Q.   And then she says -- actually, I don't
25  know what she says.  I can barely read it.
```

Page 47

```
 1    A.   Right.
 2    Q.   But she wrote -- her response to you
 3  is essentially that Cermak does not handle because
 4  you -- as we talked, you named Cermak as the
 5  accused here.  Right?  Is that yes?
 6    A.   Yeah.  I guess, yeah.
 7    Q.   And her response was that it was the
 8  improper party.  Correct?
 9    A.   Yeah.  That was a -- yeah.  That was
10  a -- yeah, that's what her response was.
11    Q.   And then you appealed it on
12  November 17, 2022.  Right?
13    A.   Yep.
14    Q.   And on 12/22/22 they said refer to
15  their original response.  That was their response.
16  Correct?
17    A.   Yeah.
18    Q.   Okay.  Do you know if you -- so you're
19  certain you filed another grievance relating to
20  the ramp?
21    A.   Yeah, I think so.
22    Q.   Do you know if it was -- if it was
23  assigned a control number?
24    A.   No, I don't know.  I don't remember.
25    Q.   I am almost done.  Just let me find
```

Page 48

```
 1  something real quick.
 2           Okay.  Yeah, no further questions.
 3                    EXAMINATION
 4                BY MR. T. MORRISSEY
 5    Q.   I have one question.
 6           Mr. McClain, you mentioned that the
 7  last day or so you went to Cermak and you went up
 8  and down the RTU ramp.  Correct?
 9    A.   Yes.
10    Q.   Do you recall what time of the day
11  that you went over to Cermak?
12    A.   When I went yesterday?
13    Q.   So it was Thursday that you went over
14  there?
15    A.   Yeah.  It was yesterday in the -- like
16  around 2:30, 1:00, 1:00, 2:00.
17    Q.   Was it after -- were you able to look
18  at your watch to see what time -- you don't have a
19  watch, but did you see a clock on the wall that
20  told you what time it was that you went over to
21  Cermak?
22    A.   Yeah.  It was about -- about --
23  yesterday at about 1:00, 2:00.
24           MR. T. MORRISSEY:  I have no --
25           MR. STILLMAN:  Would that have --
```

Page 49

```
 1       MR. T. MORRISSEY:  I have no further
 2  questions.
 3              RE-EXAMINATION
 4             BY MR. STILLMAN
 5    Q.   Would that have been 1 or 2 o'clock
 6  when you left for Cermak or when you were at
 7  Cermak?
 8    A.   Was when I left, I went to Cermak,
 9  around that time.
10              RE-EXAMINATION
11           BY MR. T. MORRISSEY
12    Q.   How long were you at Cermak yesterday?
13    A.   24 hours.
14    Q.   Pardon?
15    A.   24 hours.
16    Q.   So you stayed over at Cermak for --
17  for a whole day?
18    A.   Yeah.  They had me over there in the
19  bullpen for 24 hours.
20    Q.   What time did you leave the RTU to get
21  over to Cermak?  Was it on Thursday or was it on
22  Wednesday?
23    A.   It was Thursday.  It was Thursday.  On
24  Wednesday and I came back Thursday.
25    Q.   So about what time on Wednesday did
```

Page 50

```
 1  you go over to Cermak?
 2    A.   Like 2 o'clock.
 3    Q.   And yesterday did they bring you back
 4  to -- to the RTU?
 5    A.   Yeah, they brung me back to RTU.
 6    Q.   What time yesterday did you come back
 7  to the RTU?
 8    A.   At about 12 o'clock.
 9    Q.   In the afternoon?
10    A.   Yeah.  12:00, 1 o'clock.  Yeah, like
11  12:00.
12    Q.   All right.  I have nothing further.
13  Thanks.  Thanks a lot for your time this morning.
14       MR. STILLMAN:  Thank you for your
15  time, Mr. McClain.
16       THE WITNESS:  All right.  Thank you.
17       MR. T. MORRISSEY:  We'll talk to you.
18  Have a good day.
19       THE WITNESS:  All right.  You, too,
20  sir.
21       THE COURT REPORTER:  Do you want me to
22  write it, Zach?
23       MR. STILLMAN:  Pardon?
24       THE COURT REPORTER:  Do you want me to
25  write it?
```

Page 51

```
 1       MR. STILLMAN:  Yeah.
 2       THE COURT REPORTER:  Copy,
 3  Mr. Morrissey?
 4       MR. T. MORRISSEY:  We're not going to
 5  order a copy at this time.  Thanks for your time
 6  today.
 7       MR. STILLMAN:  And we will order a
 8  copy.  Sure.
 9                (The deposition was
10                 concluded at 10:33 a.m.)
11                (Signature was waived.)
12                --oo0oo--
```

Page 52

```
 1                  CERTIFICATE
 2                      OF
 3           CERTIFIED SHORTHAND REPORTER
 4
 5     I, DEBRA L. KLESZYK, a Certified Shorthand
 6  Reporter of the State of Illinois, CSR License
 7  084-002981, do hereby certify:
 8     That previous to the commencement of the
 9  examination of the aforesaid witness, the witness
10  was duly sworn by me to testify the whole truth
11  concerning the matters herein;
12     That the foregoing deposition transcript
13  was stenographically reported by me and was there-
14  after reduced to typewriting under my personal
15  direction and constitutes, to the best of my
16  ability, a true and accurate record of the
17  testimony given and the proceedings had at the
18  aforesaid deposition;
19     That the said deposition was taken before
20  me remotely via videoconference at the time and
21  place specified;
22     That I am not a relative or employee or
23  attorney or counsel for any of the parties herein,
24  nor a relative or employee of such attorney or
25  counsel for any of the parties hereto, nor am I
```

Exhibit 7 Page 13

Page 53

```
 1  interested directly or indirectly in the outcome
 2  of this action.
 3          IN WITNESS WHEREOF, I do hereunto set my
 4  verified digital signature this 8th day of May,
 5  2024.
 6
 7
 8                          DEBRA L. KLESZYK
 9                       Certified Shorthand Reporter
                         License No. 084-002981
10
...
25
```

---

# [01851 - approaching]    Page 1

| 0 | 2023 36:2,3,21 | 7 | 46:24 |
|---|---|---|---|
| **01851** 1:6 | **2024** 1:18 | **773** 2:5 | **ada** 10:16 |
| **084-002981** | 14:18 53:5 | **8** | **administered** |
| 52:7 53:9 | **22** 41:17,18 | **8th** 53:4 | 4:11 |
| **1** | **230** 2:11,11 | **9** | **aforesaid** 52:9 |
| **1** 3:11 31:15,17 | **233-7900** 2:5 | **9:26** 1:18 | 52:18 |
| 32:6 49:5 | **24** 10:5 49:13 | **a** | **afternoon** 50:9 |
| 50:10 | 49:15,19 | **a.m.** 1:18 31:7 | **ago** 16:13 19:7 |
| **10/15/1992** 7:5 | **26** 1:18 | 31:8 51:10 | 41:18 |
| **10/21/22** 46:3 | **2700** 1:21 | **abilities** 35:12 | **agree** 32:11 |
| **10257** 2:4 | **2:00** 48:16,23 | **ability** 52:16 | **ain't** 20:6 22:14 |
| **10:01** 31:1 | **2:30** 48:16 | **able** 20:5,6 | 29:15 |
| **10:02** 31:7 | **3** | 33:8 35:16 | **allow** 29:17 |
| **10:06** 31:2 | **3** 3:13 41:20,22 | 41:23 48:17 | **ambulate** 28:7 |
| **10:08** 31:8 | **30** 16:15 30:15 | **above** 1:14 | 29:5 |
| **10:33** 51:10 | 30:16 | **access** 27:16 | **answer** 5:20,25 |
| **11/15/22** 46:12 | **300-4479** 2:12 | **accessible** | 6:8 12:19 |
| **12** 50:8 | **31** 3:11 16:14 | 27:21 | 13:23 21:11 |
| **12/22/22** 47:14 | 16:15 | **accessing** 28:5 | 32:9,10 |
| **12:00** 50:10,11 | **312** 2:12 | **accord** 40:7 | **answered** |
| **16th** 36:20 | **36** 3:12 | **accuracy** 37:24 | 13:21 |
| **17** 47:12 | **4** | **accurate** 52:16 | **answering** 5:21 |
| **1875** 53:8 | **4** 14:12 | **accused** 42:23 | 7:25 |
| **1:00** 48:16,16 | **40** 30:15,16 | 47:5 | **appealed** 47:11 |
| 48:23 | **41** 3:13 | **acknowledge** | **appeared** 2:7 |
| **1:23** 1:6 | **48** 3:6 | 4:5 38:25 40:6 | 2:14 |
| **2** | **49** 3:5,6 | **acknowledged** | **appoint** 27:12 |
| **2** 3:12 10:3 | **5** | 37:12 | **appointment** |
| 36:10,12 49:5 | **5** 3:5 | **acknowledging** | 15:6,7 27:14 |
| 50:2 | **6** | 39:3 | 28:14 |
| **2020** 14:12 | **60606** 2:12 | **action** 53:2 | **appointments** |
| 16:14 | **60643** 2:5 | **actually** 19:8 | 15:10,19 19:5 |
| **2022** 47:12 | | 22:25 23:13 | 27:17 28:5 |
| | | 25:17 27:16 | **approaching** |
| | | | 14:16 |

---

# [april - clue]    Page 2

| **april** 1:18 | **b** | **brung** 50:5 | **certain** 47:19 |
|---|---|---|---|
| **areas** 18:19,24 | **back** 7:12 | **bullpen** 49:19 | **certificate** 52:1 |
| 18:25 19:3 | 12:14 21:4 | **burn** 20:16,20 | **certified** 1:15 |
| **arms** 23:9,10 | 25:1 27:11,16 | **burning** 20:15 | 4:2 52:3,5 53:9 |
| 25:1 | 27:23 28:4,13 | 22:20 | **certify** 52:7 |
| **arriving** 43:9 | 31:1,1 36:4,6 | **bypass** 43:16 | **chair** 17:9,10 |
| **asked** 17:13 | 49:24 50:3,5,6 | **c** | 17:11,13,14,15 |
| 23:2,12 29:18 | **barely** 20:7 | **c** 2:1 5:14,14 | 17:18,23 18:2 |
| 34:6,7,9,21 | 46:25 | **california** 1:21 | 18:5,9,11,12,12 |
| 35:1,5 | **basement** 16:2 | **call** 6:23,25 | 18:13,16 20:25 |
| **asking** 5:19 | **basically** 18:21 | 36:10 | 27:25 29:18 |
| 11:24 14:7 | 24:9 | **called** 4:24 | 34:10 35:17 |
| 24:14 38:10,17 | **basis** 28:6 | **camera** 9:18 | 36:7 |
| 40:4 42:1 | **bathroom** | **cameras** 37:16 | **charged** 14:13 |
| **asleep** 12:13 | 19:19,22 | **case** 1:15 4:18 | **check** 15:13 |
| **assessments** | **bed** 35:23,23 | 11:24 12:2,21 | **checkups** 15:11 |
| 9:12 | 36:4 | 13:1,6,16 | **chicago** 1:21 |
| **assigned** 47:23 | **beginning** | 28:22 37:6 | 2:5,12 |
| **assist** 23:12 | 12:18 34:5 | 38:25 | **circumstances** |
| 29:7 | **behalf** 1:14 2:7 | **cause** 26:22,25 | 28:17 |
| **assistance** 23:3 | 2:14 | **center** 1:21 | **civil** 1:19 |
| 23:7 24:15 | **best** 5:21 35:21 | **cermak** 10:3,4 | **claim** 12:2,21 |
| **assume** 6:8 9:7 | 35:22 52:15 | 11:1,3 15:1,3 | **claims** 13:1 |
| **attempting** | **birth** 7:4 | 15:18,18,20,23 | **clarify** 34:16 |
| 29:13 | **bit** 19:7 21:3 | 18:25 24:7,11 | **class** 1:4 |
| **attention** 46:16 | 28:21 | 24:13 26:1 | **clean** 5:23 |
| **attorney** 4:12 | **booked** 16:17 | 27:9 28:12,12 | **clear** 6:2 25:15 |
| 52:23,24 | **booking** 14:11 | 33:21 42:24 | **clearer** 5:24 |
| **attorneys** 8:2 | **bound** 43:10 | 43:1,8,15,17 | **client** 39:2 |
| 8:22 | **break** 6:14 30:5 | 46:16,20 47:3 | **clinic** 15:14 |
| **automatically** | 30:6,7,18,20,25 | 47:4 48:7,11 | **clock** 48:19 |
| 24:11 | 31:6 | 48:21 49:6,7,8 | **close** 26:6,7,11 |
| **avenue** 1:21 2:4 | **bring** 50:3 | 49:12,16,21 | 33:18 |
| **aware** 17:16,21 | **bringing** 46:15 | 50:1 | **clue** 12:3 |
| 17:25 | | | |

---

# [come - documents]    Page 3

| **come** 20:12 | 37:19 39:11 | 50:18 53:4 | **different** 6:7 |
|---|---|---|---|
| 30:25 31:1 | 41:11 46:22 | **days** 16:25 17:2 | **difficult** 20:11 |
| 50:6 | 47:8,16 48:8 | 17:3 | **difficulties** |
| **comes** 18:23 | **correctional** | **deangelo** 1:13 | 13:11,13,15 |
| **coming** 26:14 | 1:20 | 3:3 4:23 5:13 | 23:6 24:1,13 |
| 26:14,18 | **correctly** 37:25 | 7:2 21:12 25:4 | 33:12 |
| **commencem...** | **counsel** 4:8 | 38:6,10 41:7 | **difficulty** 23:22 |
| 52:8 | 52:23,25 | 44:4,14 | **digital** 53:4 |
| **commencing** | **counselor** | **debbie** 4:2 | **direction** 52:15 |
| 1:18 | 46:10 | **debra** 1:15 52:5 | **directly** 53:1 |
| **complain** 27:2 | **county** 1:8,8,20 | 53:8 | **disciplinary** |
| **complained** | 10:17 14:11 | **defendants** 1:9 | 3:12 36:17 |
| 22:24 | 16:17 | 1:14 2:14 4:14 | 39:11,15 40:2 |
| **complaining** | **couple** 5:10 | **depends** 29:9 | **disciplined** |
| 43:20 | 16:25 17:2,3 | **depict** 32:6 | 36:20 37:8,10 |
| **concern** 46:16 | **court** 1:1 4:1 | **deposed** 11:14 | **discovery** 9:3,4 |
| **concerning** | 5:15 50:21,24 | 11:25 | 9:16 |
| 52:11 | 51:2 | **deposition** 1:13 | **discussed** 33:16 |
| **concluded** | **crimes** 14:3 | 4:5,7,19 5:5 | **discussing** |
| 51:10 | **csr** 52:6 | 7:15 8:16 | 18:18 29:24 |
| **confirm** 33:11 | **current** 14:11 | 31:16 36:11 | **discussion** 7:10 |
| 38:18 | 27:4 | 41:21 51:9 | **dislocated** |
| **consent** 4:18 | **cuz** 15:14 16:15 | 52:12,18,19 | 21:23 22:21 |
| **constitutes** | 18:7 20:12,15 | **description** | **dislocation** |
| 52:15 | 21:22 23:17 | 3:10 | 21:25 |
| **contact** 13:22 | 27:22 | **details** 11:13 | **district** 1:1,1 |
| **continue** 28:19 | **cv** 1:6 | 11:16,24 12:2 | **division** 1:2 |
| **control** 47:23 | **d** | 12:20 13:1,6 | **document** |
| **convicted** 14:3 | **d** 3:1 5:13 7:3 | **detainee** 17:22 | 36:15 37:24 |
| **cook** 1:7,8,20 | **dart** 1:7 | 18:5 34:21 | 38:23,25 44:2 |
| 10:17 14:10 | **date** 7:4 10:6 | **devore** 2:10 | **documentation** |
| 16:17 | 41:15 45:25 | 4:14 | 9:11 |
| **copy** 51:2,5,8 | **day** 15:2,3 19:9 | **devoreraduns...** | **documents** |
| **correct** 16:7 | 24:7 39:7 48:7 | 2:13 | 8:25 |
| 18:20 19:5 | 48:10 49:17 | | |

[doing - going]                                                                 Page 4

| | | | |
|---|---|---|---|
| doing 45:20 | eugene 1:4 | features 28:8 | front 38:10 |
| door 20:13,22 26:23 27:1,4 32:19 33:3,9 33:15,22 | 10:22,24 11:4 11:6,8 13:22 | february 36:1,3 36:21 | full 5:11 fully 19:14 further 37:20 38:1 48:2 49:1 50:12 |
| doorway 32:8 | examination 3:4 5:2 48:3 49:3,10 52:9 | federal 1:19 figure 6:16 file 22:11 46:21 | |
| doubt 37:24 | | | g |
| drafted 42:18 | examined 4:25 | filed 22:14,14 22:16 40:18,19 40:24 41:2,8 41:17 47:19 | g 2:3,3 5:13 |
| due 15:15 21:2 27:21 | exercise 23:10 | | generally 34:8 |
| duly 4:21,25 52:10 | exhibit 3:10,11 3:12,13 31:15 31:17 32:6 36:9,10,12 37:6 41:20,22 | find 33:10 47:25 | gesturing 6:2 getting 18:8,8 22:20 27:11 28:12,13 |
| e | | fine 6:12 12:4 12:19 | |
| e 2:1,1 3:1 5:13 5:13 | exhibits 3:9 | finish 21:11 28:2 | give 12:3 39:22 given 5:5 52:17 |
| easier 5:17 | experiences 11:23 | finished 5:20 5:22 | giving 12:6 |
| easily 20:6 | explain 16:9 32:3 | first 4:25 5:11 5:15 | go 5:10 6:21 7:1 12:14 15:1 15:6,8,8,13,14 15:18,20,24 19:17,24 20:6 20:14 24:7,11 24:22 27:12,21 27:22,24 35:22 43:3 50:1 |
| eastern 1:2 | express 25:17 | | |
| eight 16:12 | expressed 23:22,25 | five 30:22,23 | |
| either 18:25 20:2,9 22:19 26:1 27:3 38:17 | f | flip 20:14 follows 5:1 | |
| | facilities 28:8 | footage 9:20,22 10:7 | |
| employee 52:22 52:24 | fact 18:24 27:3 27:5 44:6,24 | force 29:15 | |
| energy 19:18 | fairytale 40:11 | foregoing 52:12 | going 5:10,18 6:8 9:17,19 11:20 12:5 13:9,11 14:14 14:14 20:2,7,8 20:9,10,15,17 21:16 22:5,15 23:15 24:10,13 25:10,10,12 29:15 30:7,19 |
| enlarged 42:2,5 | familiar 10:21 18:18,21 19:3 19:6 42:12 | forgot 21:22 | |
| entered 16:20 16:22 | | form 34:13 35:14 44:9 | |
| entire 32:7 | familiarity 18:23 | four 14:19 24:3 24:4,6 | |
| entirely 33:16 | far 11:16 26:10 32:14 | friends 13:17 | |
| entitled 1:14 | | | |
| essentially 43:7 47:3 | fast 20:14,15 | | |

[going - know]                                                                  Page 5

| | | | |
|---|---|---|---|
| 31:13,14,14 32:5 33:8 34:2 34:12 35:13 36:9,23 37:5,8 37:12,12 38:20 38:22 40:2 41:19 43:13 44:8,10,23 51:4 | halloween 16:14 | hours 10:5 49:13,15,19 | involve 37:7 |
| | hand 44:24 | housed 14:21 | issue 38:24 45:3 |
| | handle 47:3 | i | issues 11:23 15:5 19:16 23:2 25:18 |
| | handrails 26:2 31:25 32:14 43:9 44:12,18 | identify 4:8 | |
| | | iic 37:20 38:1 | j |
| | hands 20:15,16 20:20,25 21:15 22:20 | illinois 1:1,8,17 1:22 2:5,12 4:2 52:6 | jail 6:24,25 10:17,19 14:11 15:24 16:17,20 16:22,25 17:6 17:8,17 19:1,4 27:19 28:6,8 31:23 40:20 45:25 |
| good 6:18 31:10 50:18 | | image 32:20 33:6,7,17 | |
| gotten 36:20 | handwriting 42:14 | improper 47:8 | |
| great 40:16 | happen 22:8 | incarceration 34:14,16 | |
| grievance 3:13 7:16,17,19,20 7:22,24,24 8:3 22:15,17,19,24 36:16 41:8,15 42:11,15,17,21 42:22 43:21,23 44:5,16 45:2 45:19,21,23 46:1,6,12,22 47:19 | happened 28:17 29:22 | index 3:9 | journey 16:4 |
| | hard 11:19 13:10,10 22:15 25:10,12 | indicate 4:9 indirectly 53:1 individually 1:4 | k |
| | harmed 39:23 | infraction 39:12,19 | keep 5:23 37:12 kept 28:5 |
| | hear 12:11 19:2 | injured 22:19 | kind 6:1 9:12 16:20 20:24 35:11 43:5 |
| | heard 11:9 | injuries 20:24 21:14 | |
| | held 7:10 27:11 27:16,23 28:4 | injury 16:10 22:12 | kinda 12:12,13 12:13 |
| grievances 9:7 9:9 22:11 40:19 45:23 | help 18:10 24:22 36:5,6 | inmate 34:10 34:11 35:1 | kleszyk 1:15 4:2 52:5 53:8 |
| grieved 42:21 | hereto 52:25 | inmate's 39:11 39:18 | knew 35:22 |
| guess 6:11 12:5 14:18 47:6 | hereunto 53:3 hesitate 6:6 | inmates 10:18 34:8 43:10 | know 6:6,15 10:6 11:2,13 11:16,17,18,24 12:1,4,9,19,20 12:25 13:5,14 24:17,21 25:2 25:5,7,9 27:16 |
| guys 7:22 | hints 12:6 | insisted 29:19 | |
| h | history 16:10 | interested 53:1 | |
| half 10:14 14:16 | hit 20:13,22 | | |
| | hole 15:13 | | |
| | hospital 43:8 | | |
| | hour 10:14 | | |

[know - need]                                                                   Page 6

| | | | |
|---|---|---|---|
| 29:3,8 33:10 33:16 34:8 35:23,24 36:14 38:3 39:14 40:19,22,24 41:4,6 46:18 46:25 47:18,22 47:24 | 30:13 | 36:11 37:3,7 37:15 38:22 41:21,24 48:6 50:15 | monroe 2:11 |
| | look 9:11,14 33:18,19 42:6 42:11 43:5 48:17 | | month 15:6,7,9 morning 50:13 morrissey 2:3,3 2:4 3:6 4:16,17 13:20 30:8,12 30:17,21,24 31:4 32:5 34:12 35:13 36:23 37:3 38:20 41:23 42:1 44:1,8 48:4,24 49:1 49:11 50:17 51:3,4 |
| | | mean 6:22 7:25 9:5 12:5 13:5 23:11 26:7 39:1 | |
| | looking 9:9 14:15 32:18,19 33:7 34:3 | | |
| l | | measurements 9:12 12:23 | |
| l 1:15 5:13,14 52:5 53:8 | looks 8:13 | medical 10:10 15:5 16:10 20:24 39:23 | |
| | lot 15:5,15 24:4 25:21,24 41:5 50:13 | meet 8:17,20 | |
| landing 45:16 | | member 46:5,7 | |
| law 43:9 | lying 37:21,21 37:21,22 38:13 38:13,13,14,14 38:16 40:11,14 40:15 | ment 27:13 | morriseylaw... 2:6,6 |
| lawsuit 11:14 | | mention 22:18 43:23 44:18 45:2,15 | |
| laying 39:6 | | | move 35:16,22 40:16 |
| lazy 24:17,18 24:20 | | mentioned 8:5 8:5,6 11:17 48:6 | |
| leave 49:20 | m | | movement 46:17,21 |
| left 49:6,8 | m 5:14 | met 8:24 10:13 | moving 17:8 |
| license 52:6 53:9 | made 27:14 | methocarbamol 21:2 | muscle 21:2 |
| | make 5:16 16:4 19:19,21 27:12 | | n |
| list 42:25 | makes 32:3 | middle 29:23 | n 2:1 3:1 5:13 5:14 |
| little 7:3 16:9 19:7,24 21:3 28:21 42:8 | manage 46:16 46:21 | mind 18:10 41:5 | name 4:1,16 5:12,14 11:9 42:20,23 |
| llc 2:10 | marked 31:17 36:12 41:22 | minute 7:9 18:6 22:4,5,6 | |
| located 1:20 | marking 31:15 | minutes 30:15 30:15,16,22,23 | named 47:4 |
| location 17:19 42:25 | married 7:6 | | names 6:20 7:1 |
| long 10:4,15 12:15 16:13 18:7 30:10,11 30:11,11 49:12 | matter 13:8,9 | mobile 35:16 | need 6:14 23:10 24:25 30:5,6,9 30:17 36:5 38:9 42:5 43:7 |
| | matters 52:11 | mobility 35:11 | |
| | mcclain 1:13 3:3 4:23 5:4,13 30:9 31:5,10 31:16 32:8,10 | | |
| longer 10:14 14:17 17:3 | | | |

[need - possibility]                                                            Page 7

| | | | |
|---|---|---|---|
| 46:21 | objections 4:10 | opposed 36:1 | people 13:9,10 13:15 18:8 24:20 |
| needed 27:12 36:6 | occasions 15:17 25:17 | opposite 33:8 | |
| needs 42:2 | occur 16:13 22:3 35:3 | order 51:5,7 | period 22:16 |
| neither 22:6 23:20 | | original 47:15 | person 11:1,2 11:11 13:6 |
| never 11:9 27:15,15 34:25 37:9 44:4,5 | occurred 22:12 | outcome 53:1 | |
| | october 16:14 16:15,15 | outside 35:12 | personal 52:14 |
| | offered 29:18 | own 10:10 17:10,15 18:11 18:11,12,13 28:23 34:22,24 35:2 37:17 38:2 40:7 | personally 13:14 |
| new 7:17,18,19 7:20,22,24 8:3 | offering 29:13 | | photo 3:11 31:14,19 |
| nighttime 16:15 | officer 18:5 29:6,17,23 | | photograph 32:6 |
| non 45:16 | officers 16:5,6 18:1 23:2 24:1 25:19 28:19 | p | physical 23:17 |
| north 10:3 | | p 2:1,1 | physically 4:5 |
| northern 1:1 | oh 12:7,7,11 14:18 26:24 27:18 39:21 | page 3:4,10 | pictured 31:21 33:7,16 |
| noticing 4:11 | | pain 15:14 | place 8:14 52:21 |
| november 14:12 47:12 | okay 5:9 6:15 6:20 8:9 12:8,8 13:12 14:21 18:14 21:5 25:23 26:17,24 29:16 30:22 31:2,13 32:13 34:6,25 37:23 40:12 41:14 42:11 44:4 45:14 46:14 47:18 48:2 | pains 15:15 | |
| | | paralyzed 23:16 35:18,19 | placed 39:7 43:14 |
| | | pardon 41:25 49:14 50:23 | |
| number 14:11 47:23 | | | places 27:24 |
| numerous 19:19 | | part 26:10,16 39:4 | plaintiff 1:5 2:8 13:18 |
| | | participating 4:4 | |
| o | | particular 20:1 | plaintiff's 12:2 12:21 13:1 |
| o 5:13 | | parties 4:4 52:23,25 | |
| o'clock 49:5 50:2,8,10 | | parts 15:24 | please 5:25 6:5 |
| oath 4:10 | | party 42:21 47:8 | point 28:3 34:13,15,15 |
| object 13:20 32:6 34:12 35:13 36:23 37:5 38:21,22 44:1,8 | | past 39:4 | pointing 6:2 |
| | old 7:24 | pat 8:17,20 | policies 10:17 17:16,21,25 |
| | ones 24:18 32:23 | patrick 2:4 | popped 22:1,2 |
| objection 4:15 37:4 | oo0oo 51:12 | | possibility 29:20 |

## [preparation - refrain] — Page 8

| | | | |
|---|---|---|---|
| **preparation** 8:16 | **pushed** 18:5 | 9:5,13,16,18,19 9:21,23,24 | **rather** 24:24 |
| **prepare** 7:14 | **pushes** 17:9 | 10:1,8 11:17 | **reaction** 23:5 |
| **present** 4:6 | **pushing** 17:18 17:23 18:2,9 | 11:18,20,21,23 12:1,23,25 | **read** 41:24 43:17 46:25 |
| **pretty** 42:7 | 18:15 34:9 | 13:8,9,11,13,15 | **readable** 42:10 |
| **preventing** 17:22 18:1 | **put** 7:16,17,19 7:20 36:9 37:4 | 15:9 19:9,12 19:12,14,17,25 | **reading** 37:19 37:25 |
| **previous** 52:8 | 41:19 44:20 | 20:2,6,8,8,10 | **real** 48:1 |
| **probably** 24:3 24:4 29:9,20 29:21 30:14 | **pwm** 2:6 | 20:10,13,14,16 20:18 21:16 | **really** 12:15 20:7 23:14 |
| **problem** 15:4 32:14 | **q** | 22:9,13,16,16 23:25 24:14 | 32:16,16,17,21 33:25 34:2,4 |
| **problematic** 32:4 | **quantify** 9:15 **question** 6:5,9 14:8 21:5,11 | 25:10,11,12,22 26:1,2,14,15,19 | 43:20 |
| **problems** 11:20 | 28:1 35:14 | 26:20 28:9,15 | **recall** 6:11,12 8:18 11:11 |
| **procedure** 1:19 | 38:6,11,17 41:7 48:5 | 28:18 29:3,4 29:24 30:1 | 13:21 25:25 26:2 36:19 |
| **procedures** 10:18 17:17,22 18:1 | **questions** 5:19 5:25 8:1 48:2 49:2 | 31:21,23 32:7 32:22 33:1,12 33:14,20,21 | 38:4,12,12 39:9 44:19,19 48:10 |
| **proceedings** 52:17 | **quick** 48:1 **quite** 46:18 | 34:14 37:9 40:1 43:12,14 | **received** 21:14 46:1 |
| **processed** 14:10 16:25 | **r** | 43:16,25 44:7 44:9,17,21,22 | **recognize** 31:21 |
| **proportionality** 37:6 | **r** 2:1 **radunsky** 2:10 4:14 | 45:4,5,7,8,9,10 45:11,12,15 | **recollection** 41:15 |
| **pursuant** 1:18 | **railing** 26:15 26:18,19 | 47:20 48:8 **ramps** 18:19 | **record** 5:12,23 6:3 7:8,11,12 52:16 |
| **push** 17:10,11 17:12,13,15 18:18,11,11 28:20 | **railings** 44:18 45:9,10,12 | 23:2 25:25 26:3 27:10 | **records** 10:11 **reduced** 52:14 |
| 28:21,21,23 29:13,18 34:10 | **rails** 27:7 43:14 43:15,21 44:25 | 28:12 40:20 42:18 | **refer** 47:14 **reference** 44:24 |
| 34:22,24 35:1 35:2,4,5,5 | 45:11,13 **ramp** 8:7,7,8 8:10,11,13 9:3 | **ran** 32:8 33:15 33:22 | **refrain** 6:1 |

## [refuse - shot] — Page 9

| | | | |
|---|---|---|---|
| **refuse** 29:25 | **report** 3:12 36:17 39:11,15 | 26:20 30:21,24 31:1,3,13 | 38:18,19,19 39:1,3,6,21 |
| **refused** 29:12 29:17,23 | **reported** 52:13 | 32:24 35:8 | 40:6,13,13 |
| **regarding** 10:18 17:17 39:12,18 40:19 | **reporter** 1:16 4:1,3 5:16 50:21,24 51:2 52:3,6 53:9 | 36:18 37:11,15 37:17 38:10 39:8,16 40:1 40:14 43:1,10 | 44:9 46:5,11 46:24,25 **science** 25:14 **screen** 41:19 |
| **regards** 37:7 | **reporting** 4:7 | 43:18,21 44:7 | **second** 21:10 21:10 |
| **regular** 19:4 | **represent** 4:17 | 44:25 45:10,17 | **section** 42:6 |
| **rehabilitate** 25:3 | **representing** 4:14 | 46:1,8,11,12 47:1,5,12 | **see** 5:16 12:8 25:10,11,13,14 |
| **related** 9:16 11:18 44:17 | **requesting** 43:13,16 | 50:12,16,19 **rocket** 25:14 | 31:19 32:16,17 32:17,21,25 |
| **relates** 11:25 12:25 | **required** 43:9 45:16 | **roll** 15:20,21 **rolled** 39:20,22 | 33:1,3,4,4,5,9,9 33:25 34:2,4,4 |
| **relating** 47:19 | **respond** 28:3 | **room** 4:6 39:7 | 48:18,19 |
| **relation** 11:14 28:11 44:12 | **responded** 46:6 46:12 | **rtu** 14:22,24 16:2 18:19 | **seen** 37:16 38:1 **self** 39:23 |
| **relative** 52:22 52:24 | **response** 39:10 39:15 46:15 | 26:1,2 27:9 28:12 31:24 | **separate** 46:21 **seriously** 24:10 |
| **relaxers** 21:2 | 47:2,7,10,15,15 | 32:7 33:20 | **services** 27:17 |
| **remember** 11:12 12:18 21:21,21 22:5 | **result** 28:14 **resulted** 16:10 | 48:8 49:20 50:4,5,7 | 28:6 **session** 30:11 |
| 22:23 27:8 28:10 38:7,8,8 | **resulting** 20:24 **review** 8:25 9:2 | **rules** 1:19 17:17,22 18:1 | **set** 53:3 **setup** 27:4 |
| 38:8,9 40:21 40:23 41:1,2,5 | 10:10 37:16,20 38:1 | **run** 26:22,25 27:4 | **shebel** 46:11 **sheet** 40:13 |
| 41:8,10 45:20 47:24 | **reviewed** 10:16 **right** 5:4,15 8:1 | **s** | **sheriff** 1:7 **short** 10:15 |
| **remote** 4:18 | 8:7,12,13 9:8 | **s** 2:1 **saying** 8:6 | **shorter** 10:14 **shorthand** 1:16 |
| **remotely** 1:17 4:7,11,20 52:20 | 11:1 12:3,7,7,7 14:16,18 16:20 17:1 19:1,10 | 21:25 22:15 25:2 27:20,23 27:25 45:9 | 4:3 52:3,5 53:9 **shot** 16:12,23 |
| **rephrase** 6:7 | 22:21 24:8 25:19 26:15,19 | **says** 36:18 37:15 38:1,17 | 16:24 |

## [shoulders - talking] — Page 10

| | | | |
|---|---|---|---|
| **shoulders** 21:3 | **standards** 10:17 | 51:1,7 | **sure** 11:21,21 51:8 |
| **show** 31:14 32:7 | **standing** 37:17 38:2 40:7 | **stipulation** 4:9 **stop** 20:25 21:15 | **susan** 46:9,11 **swearing** 4:18 |
| **sic** 20:14 43:15 **side** 33:8 39:8 | **start** 5:9 31:10 34:3,3,3 | **stopped** 28:13 **street** 2:11 | **sworn** 4:22,25 52:10 |
| **signature** 51:11 53:4,8 | **started** 16:19 **starting** 4:11 | **strength** 19:23 19:24,24 | **t** |
| **simultaneous** 37:1 | **state** 1:16 5:11 45:10 52:6 | **strike** 22:25 23:23 | **t** 3:6 4:16 13:20 30:8,12,17,21 |
| **sir** 19:15 34:18 35:5,18 40:23 50:20 | **stated** 45:11 **statement** 39:12,15,18,21 | **stroger** 15:6,8 43:8 **strong** 23:9,9 | 30:24 31:4 32:5 34:12 35:13 36:23 37:3 38:20 |
| **sitting** 15:12 **situations** 24:19 | **states** 1:1 **stating** 22:12 | 23:15,17 24:25 24:25 28:23 29:1 35:7,9 | 41:23 42:1 44:1,8 48:4,24 49:1,11 50:17 |
| **sleep** 12:15 **slope** 29:4 | **stay** 35:20 **stayed** 49:16 | **stronger** 35:24 35:25 | 51:4 **table** 39:7,8,20 |
| **slow** 20:17 **slowing** 20:21 | **steep** 29:4 32:23 45:8 | **struggle** 19:13 20:2 43:13 | 39:22 **take** 6:14 19:17 |
| **sorry** 14:19 24:23 34:23 | **steepness** 33:2 44:6,17 45:3 45:15 | 44:16,23 45:5 45:7,12 | 19:18,18 21:1 21:1,2 30:5,7 |
| **south** 1:21 2:4 **speaking** 37:2 | **stenographic...** 52:13 | **struggled** 28:18 43:24 44:6,9 | 30:17,19,22,22 30:25 35:10 |
| **speaks** 38:23 44:2 | **stillman** 2:11 3:5 4:13,13 5:3 | **struggles** 28:14 **struggling** 9:18 | **taken** 1:13,17 4:19 18:24 |
| **specific** 12:1,25 34:14 | 7:8,12,13 14:1 30:14 31:9,18 | 25:5,7,16 29:3 29:5 30:1 | 31:6 43:7,7 52:19 |
| **specifically** 13:18 21:8,14 | 32:12 34:15,19 35:15 36:13 | **suing** 13:7 **suit** 13:5 | **talk** 5:18 8:10 8:11,12 14:5 |
| 28:11 33:14 **specified** 52:21 | 37:11,14 39:2 39:5 41:25 | **suite** 2:11 **support** 20:5,5 | 17:4 40:8,9,9 50:17 |
| **spell** 5:12 **staff** 46:5,7 | 42:3 44:3,11 44:13 48:25 | 20:7,7 **supposed** 26:13 | **talked** 47:4 **talking** 8:1,9 |
| **stand** 35:23 | 49:4 50:14,23 | | 11:10 14:4 |

## [talking - usual] — Page 11

| | | | |
|---|---|---|---|
| 32:1,19 39:25 39:25 46:9 | 22:1,1,20 **thursday** 48:13 | **transporting** 23:3 24:1 | **typewriting** 52:14 |
| **tell** 24:24 32:13 37:25 38:5 | 49:21,23,23,24 25:18 | 25:18 **transports** 19:4 | **u** |
| 42:20 **ten** 14:2 | **time** 4:8 6:13 6:15 13:10,10 | **trauma** 15:15 **travel** 15:23 | **ulcer** 15:11,13 **ultimately** |
| **testified** 5:1 32:8 | 18:4,7 25:12 30:8 35:20 | **traverse** 19:14 **traversing** 10:7 | 27:11 **unable** 28:18 |
| **testify** 44:15 52:10 | 48:10,18,20 49:9,20,25 | 23:25 **treated** 20:23 | **under** 14:11 18:19 25:25 |
| **testimony** 25:15 38:15 | 50:6,13,15 51:5,5 52:20 | 21:7,9,13,20 **treatment** | 52:14 **underneath** |
| 40:12 43:6 52:17 | **times** 15:7,9 16:12 19:20 | 21:24 27:17 28:6 | 16:1 **understand** 6:4 |
| **tgm** 2:6 **thank** 40:16 | 23:21,24 24:5 24:6,12 25:8 | **true** 23:16 52:16 | 6:17 11:22 29:16 37:23 |
| 46:15 50:14,16 **thanks** 31:4 | 25:21,24 **today** 6:5 7:15 | **truth** 52:10 **truthful** 38:24 | 38:15 **understood** 6:8 |
| 50:13,13 51:5 **therapy** 23:18 | 8:17 12:16 51:6 **together** 25:1 | 39:1 **try** 5:18 6:6 | **united** 1:1 **unreportable** |
| **things** 5:10,17 41:5 | **told** 48:20 **tom** 6:13 8:17 | 23:16 25:2 28:20 35:21,21 | 37:1 **use** 9:20 10:1 |
| **think** 7:21 11:10 19:10 | 8:20 **top** 39:7 | 35:22,23,24 **trying** 20:16,21 | 16:11 19:19,21 19:23 32:15,24 |
| 34:6 41:17 45:18,18,19 | **totally** 6:15 12:19 | 33:3 34:1 39:4 **tunnel** 15:25 | **used** 9:24 16:22 23:1 26:1 27:9 |
| 47:21 **third** 6:4 | **touch** 29:6 **transcript** 5:23 | 16:1 **tunnels** 18:18 | 36:4 **using** 9:23 |
| **thomas** 1:7 2:3 2:3 4:17 | 6:3 52:12 **transfer** 36:4 | 19:9 **two** 14:16 15:7 | 16:19,21,22 20:25 21:14 |
| **three** 14:15 24:3,4,6 25:8 | **transfers** 18:25 **transportation** | 15:9,9 20:8 24:9 25:8,16 | 22:8,13 28:15 28:18 |
| 25:16 **thumb** 21:22 | 10:18 **transported** | 41:18 **type** 21:1 | **usual** 23:5 |
| 21:22,23,25 | 15:19 17:19 | | |

Exhibit 7 Page 16

[v - zstillman] Page 12

| v | | | |
|---|---|---|---|
| **v** 1:6 | 25:21 48:7,7 | 26:9,11,11,12 | 40:15,23 41:1 |
| **validity** 4:10 | 48:11,12,13,20 | 26:12 | 41:4,9,9,12,12 |
| **verbally** 6:1 | 49:8 | **worry** 14:9 | 41:12,13 42:4 |
| 25:17 | **west** 2:11 | **write** 44:15 | 42:5,10 43:2 |
| **verified** 53:4 | **western** 2:4 | 50:22,25 | 44:20 45:22 |
| **videoconfe...** | **westmoreland** | **writes** 46:20 | 46:2,4,13,23 |
| 1:17 2:7,14 | 1:4 10:22,24 | **wrong** 11:11 | 47:6,6,9,9,10 |
| 52:20 | 11:7,8 13:22 | 45:11 | 47:17,21 48:2 |
| **visible** 42:8 | **whatnot** 19:5 | **wrote** 42:22 | 48:15,22 49:18 |
| **visual** 33:4,5 | **wheel** 18:12,15 | 44:20,22 46:19 | 50:5,10,10 |
| 34:1,5 | 27:24 | 47:2 | 51:1 |
| | **wheelchair** | | **year** 14:19 |
| **w** | 15:12,21,23 | **x** | **years** 14:2,15 |
| **w** 2:4 | 16:7,11,19,21 | **x** 3:1 | 14:19 18:13 |
| **wait** 5:20,21 | 16:22 17:6 | | 41:18 |
| **waive** 4:9,15 | 18:15 20:16,17 | **y** | **yep** 46:8 47:13 |
| **waived** 51:11 | 21:15 27:21,22 | **yeah** 7:19,19,20 | **yesterday** 9:25 |
| **wall** 48:19 | 28:7 29:6 | 7:20 8:9,15 9:9 | 10:2 19:9,11 |
| **want** 8:10,10 | 35:12,20,23 | 9:22,22 11:5 | 19:16 48:12,15 |
| 8:12 14:5,5 | 43:10 | 12:11 13:5 | 48:23 49:12 |
| 24:21,21 28:22 | **wheeling** 18:12 | 14:20,23,23,25 | 50:3,6 |
| 29:6,9,10,11,14 | **wheels** 21:15 | 15:4,5 16:6,18 | |
| 29:15 30:22 | **whereof** 53:3 | 18:21,21 19:6 | **z** |
| 40:8,8,9 50:21 | **witness** 1:20 | 19:6,6,11 20:4 | **zach** 30:12 |
| 50:24 | 3:3 4:6,17,19 | 20:21 21:17,17 | 50:22 |
| **watch** 48:18,19 | 4:21,24 13:24 | 21:17,18 22:1 | **zachary** 2:11 |
| **watched** 10:7 | 30:10,16,19,23 | 22:10,10 24:4 | 4:13 |
| **way** 6:7 20:2 | 31:3 32:11 | 24:9,20 25:20 | **zoom** 42:7 |
| 23:17 25:11,13 | 34:17 42:2 | 26:4,4 27:18 | **zstillman** 2:13 |
| 26:5,9 33:6,6 | 50:16,19 52:9 | 27:20,20,20 | |
| 35:22 43:24 | 52:9 53:3 | 29:8 30:1,7,19 | |
| **wednesday** | **woke** 12:9,12 | 30:23 31:20 | |
| 49:22,24,25 | **word** 43:4,4 | 32:2,11,11,25 | |
| **went** 9:20 10:3 | **work** 23:8,10 | 33:23 34:4 | |
| 10:3 19:12 | 25:1 26:5,5,6,7 | 35:9 36:8 | |
| | | 38:19 39:2,24 | |

Veritext Legal Solutions
www.veritext.com 888-391-3376

Federal Rules of Civil Procedure
Rule 30

(e) Review By the Witness; Changes.
(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:
(A) to review the transcript or recording; and
(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.
(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

Exhibit 7 Page 17